IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VERDUZCO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>B. JAO, et al.,<br><br>　　　　Defendants. | No. 2:22-CV-0569-TLN-DMC-P<br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, See ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner currently housed at the California Health Care Facility (CHCF), located in Stockton, California. See ECF. No. 1, pg. 1. Plaintiff brings suit against the following defendants: (1) B. Jao, Psychiatric Technician; (2) L. Areja, Certified Nurse Assistant; (3) Z. Mohammed, Psychiatric Technician; (4) A. Ojagwu, Registered Nurse; (5) Doe I; (6) Doe II; (7) L. Taylor, Registered Nurse; (8) R. Morashige, Psychologist; (9) A. Ferrera, Respiratory Therapist; (10) Z. Rasool-Vali, Doctor of Medicine; (11) K Sill, Registered Nurse; (12) N. Pensanti, Registered Nurse; (13) M. Folorunso, Registered Nurse; (14) J. Trinidad, Registered Nurse; (15) M. Sandy, Registered Nurse; (16) J. Rosenof, Respiratory Therapist; (17) J. Tran, Registered Nurse; (18) M. Taye, Registered Nurse; (19) R. Recarey, Chief Executive Officer; (20) C. Bidad, Psychiatric Technician; (21) B. Housain, Registered Nurse; (22) M. Lowe, Registered Nurse; and (23) A. Prasad, Registered Nurse. Id. at 1-2.

Plaintiff alleges the violation of his Eighth Amendment rights in the following three claims.

First Claim

Plaintiff's first claim alleges the violation of his Eighth Amendment rights because he was not properly supervised during Suicide Watch, which led to self-harm and the amputation of his finger. See ECF No. 1, pg. 6. On October 1, 2019, Plaintiff was in an Interdisciplinary Treatment Team (IDTT) hearing. Id. at 5. IDTT hearings occur to receive input from the patient and update treatment as needed. Plaintiff stated that he had the urge to cut off his finger and requested to be placed on Suicide Watch. See ECF No. 1, pg. 5. Within two hours, Plaintiff was able to cut away the tissue of his fingertip with a staple and snapped his finger bone. Id. Plaintiff

2

alleges that Defendant Doe I failed to ensure his safety because a magazine was left in his room. Id. Plaintiff was able to deconstruct the magazine and use the staples from the magazine to injure himself. Id. Furthermore, Plaintiff alleges Defendant Jao did not ensure proper supervision because he was pre-occupied browsing his computer instead. Id. Plaintiff alleges that the actions of Defendants Doe I and Jao violated his Eighth Amendment rights because they should have ensured no harm was inflicted upon himself during the Suicide Watch. Id.

### Second Claim

Plaintiff's second claim alleges the violation of his Eighth Amendment rights because of the deliberate indifference towards his medical and mental needs. See ECF No. 1, pg. 6. According to Plaintiff, on October 17, the Inspector General notified CHCF staff that Plaintiff intended to cut off his finger again due to severe anxiety and paranoia. Id. Plaintiff was placed on an increased level of Suicide Watch. Id. At approximately 4 a.m., Plaintiff began to cut off his finger again. Id. Plaintiff alleges that Defendant Areja failed to properly supervise him because Defendant Areja was drifting to sleep. Id. Somehow, the facts are unclear, but Plaintiff obtained a razor blade while placed on Suicide Watch and began cutting off his finger. Id. When Defendant Areja was relieved from their shift, Defendant Mohammed was assigned to supervise Plaintiff. Id. Plaintiff claims that despite being placed on Suicide Watch, he did not receive the necessary care. Id. According to Plaintiff, Defendant Ojagwu, a CHCF registered nurse, was aware of Plaintiff's condition but did nothing to assist his bleeding finger. Id. Plaintiff continued to cut his finger while Defendant Mohammed drifted on and off to sleep. Id.

Plaintiff alleges he requested medical assistance from Defendants Mohammed and Ojagwu, but Defendant Ojagwu only slid gauze underneath Plaintiff's door. Id. Defendant Ojagwu stated to Plaintiff that he would be examined by a physician around 8 a.m. Id. At 6:30 a.m., Defendant Mohammed called "custody" because Plaintiff stated that he was in immense pain and his finger would not stop bleeding. Id. Plaintiff finally received medical assistance from an unidentified female who wrapped Plaintiff's finger, but the bleeding continued. Id.

///

///

At approximately 10 a.m., Plaintiff was finally seen by a physician. Id. at 7. When the physician removed the gauze, Plaintiff's finger began profusely bleeding which caused a pool of blood on the floor. Id. Plaintiff was sent to the onsite hospital and given 23 stitches on his index finger. Id. However, within a couple of days, the finger had turned black from gangrene. Id. Plaintiff had to undergo a partial amputation on his index finger. Id. Plaintiff alleges that Defendant Ojagwu's delayed response led to this partial amputation. Id. Plaintiff alleges that the actions of Defendants Areja, Mohammed, and Ojagwu violated his Eighth Amendment rights because he suffered unnecessary pain and suffering, which led to gangrene and partial amputation. Id.

Third Claim

In his third claim, Plaintiff alleges the violation of Eighth Amendment rights because of the blatant disregard for his medical and mental health needs. Id. at 8. On February 20, 2020, Plaintiff's mental health declined as he became severely depressed and withdrawn. Id. On March 4, Plaintiff was notified by California Department of Corrections and Rehabilitation (CDCR) that they did not find Plaintiff was sexually abused by an unidentified psychologist. Id. The sexual abuse has been allegedly occurring since 2017. Id. As a result, Plaintiff's self-harm ideations persisted heavily. Id. Plaintiff wrote to Defendant Rasool-Vali, "I'm depressed, withdrawn, and have completely isolated myself. I have not been medication compliant in 2 weeks. I'm not okay." ECF No. 1, pg. 5. Plaintiff also wrote to Defendant Morashige regarding his depression. Id. Somehow, Plaintiff cut off the tip of his index finger again on April 12. Id. at 8. The facts do not assert if Plaintiff was on Suicide Watch again or how he was able to cut off his finger. Plaintiff repeatedly writes about his severe depression and suicidal ideations to Defendants Ferrera, Morashige, Folorunso, Rosenof, Trinidad, Rasool-Vali, and Housain. See ECF No. 1, pg. 9-10.

In May 2020, Plaintiff attempted to report nurse misconduct regarding an inmate, named Lomeli (#K-28928). Id. at 10. Plaintiff described to Defendant Sill that he has witnessed Inmate Lomeli tell Defendant Sandy about his suicidal ideations, but Defendant Sandy simply walked away. Id. Defendant Sill stated that Plaintiff needed to report his complaint to someone

1  else because she is not Defendant Sandy's supervisor. Id.  Plaintiff urged that Defendant Sill has a
2  duty to intervene or report this to Defendant Sandy's supervisor. Id.  However, Defendant Sill
3  stated she had no duty to Inmate Lomeli. Id.  She is not worried about inmates reporting her. Id.
4  Lastly, according to Plaintiff, Defendant Pensanti disclosed to him that she was instructed to
5  place Plaintiff's documentations of depression and suicidal ideations onto a "special folder" that
6  should not be scanned. Id.  It is unclear why Plaintiff's documents need to be scanned.  Plaintiff
7  told Defendant Pensanti that her misconduct was illegal. See ECF No. 1, pg. 9.  However,
8  Defendant Pensanti did not want to disobey her directives. Id.

9        The following day, Plaintiff reported to Defendant Recarey that Defendant Sill is
10 indifferent about Inmate Lomeli's severe depression and suicidal ideations. Id. at 12.
11 Furthermore, Plaintiff also reported about Defendant Pensanti's misconduct to stop scanning his
12 documents called "CDCR 7225". Id.  On May 10, Plaintiff sent a health care grievance along with
13 other forms of documentations describing his severe depression and suicidal ideations. Id. at 13.
14 Plaintiff states that 14 years of solitary confinement has heavily impacted his mental health. Id. at
15 14.  On May 22nd, Plaintiff was placed on Suicide Watch again. Id. at 15.  Plaintiff refused meals
16 for days. Id.  Plaintiff wore his cut-off finger as a necklace but later decided to mail his finger to
17 the Law Office of Rosen, Bien, Galvan, and Grunfeld, LLP. Id.

18        On May 28, Plaintiff cut off the tip of his middle finger and broke the bone as
19 well. Id.  Plaintiff mailed his middle finger along with a letter to the Office of the Inspector
20 General. Id. at 16.  As a result, the Inspector General sent one of their staff to perform a wellness
21 check on Plaintiff on June 1. Id.  Overall, Plaintiff alleges that the listed defendants' actions
22 violated his Eighth Amendment rights because he suffered unnecessary pain and suffering along
23 with the amputation of his two fingers. Id. at 8.  Plaintiff is seeking compensatory and punitive
24 damages of $200,000 from each listed defendant along with the appointment of counsel for relief.
25 Id. at 17.
26 / / /
27 / / /
28 / / /

## II. DISCUSSION

The Court finds that Plaintiff has failed to state cognizable claims for the violation of his Eighth Amendment rights. Plaintiff asserts the violation of his Eighth Amendment rights in three claims. On his first claim, the Court finds that he has not stated a cognizable claim against Defendants Doe I and Jao due to the lack of supervision during his Suicide Watch because they lacked a sufficiently culpable mind. Following the same reasoning, Plaintiff has failed to assert a cognizable claim against Defendant Areja for the same allegations in his second claim. In Plaintiff's second claim, he has failed to state a cognizable claim against Defendants Mohammed and Ojagwu for the alleged delay of medical assistance. Lastly, in his third claim, Plaintiff has failed to state a cognizable claim against Defendants Ferrera, Morashige, Folorunso, Rosenof, Trinidad, Rasool-Vali, Housain, Sill, Sandy, Recarey, and Pesanti, based on the vague and conclusory allegations against those Defendants.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." Id.

///
///

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from harm. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

### A.   **Defendants Doe I and Jao**

The Court finds that Plaintiff has not stated a cognizable Eighth Amendment claim against Defendants Doe I and Jao. Plaintiff has failed to show that these defendants' actions led to the denial of his personal safety. Plaintiff was placed on Suicide Watch upon his request when he stated that he had the urge to cut off his finger, thus showing that reasonable steps were taken to respond to the risk of self-harm. Unfortunately, Plaintiff was able to inflict harm onto himself with a magazine's staple, but there are not sufficient facts to show that Defendants Doe I and Jao had the purpose of inflicting harm onto him by leaving the magazine. Plaintiff asserts the same allegations in his second claim against Defendant Areja for the failure to supervise him on Suicide Watch. Following the same reasoning discussed, Defendant Areja lacked a sufficiently culpable mind. Therefore, Plaintiff is unable to meet the requirements of an Eighth Amendment claim against Defendants Doe I and Jao. Plaintiff will have the opportunity to amend or stand on the original complaint.

///

### B.      Defendants Mohammed and Ojagwu

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Delay of, or interference with, medical treatment can also amount to deliberate indifference. See Jett, 439 F.3d at 1096; Clement, 298 F.3d at 905; Hallett, 296 F.3d at 744; Lopez, 203 F.3d at 1131; Jackson, 90 F.3d at 332; McGuckin, 974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. See Hallett, 296 F.3d at 745-46; McGuckin, 974 F.2d at 1060; Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Plaintiff states that Defendants Mohammed and Ojagwu delayed medical treatment which caused Plaintiff to develop gangrene.  However, Defendant Ojagwu advised Plaintiff that a physician would visit him later during the day, thereby, showing no deliberate indifference.  Furthermore, Defendant Ojagwu provided Plaintiff gauze in the meantime and when the injury worsened, Defendant Mohammed sought medical assistance.  As Plaintiff stated, an unidentified female wrapped his bleeding finger while waiting for the physician to visit him.  Therefore, there are multiple instances to show that Plaintiff received medical assistance, thereby, showing a lack of deliberate indifference towards him by Defendants Mohammed and Ojagwu.  In conclusion, Plaintiff has failed to establish that the delay of medical assistance constituted a violation of his Eighth Amendment rights.  Plaintiff will nonetheless be provided leave to amend as to Defendants Mohammed and Ojagwu.

8

### C. Defendants Ferrera, Morashige, Folorunso, Rosenof, Trinidad, Rasool-Vali, Housain, Sill, Sandy, Recarey, Pesanti, Doe II, Taylor, Than, Taye, Bidad, Lowe, and Phasab

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff has provided vague and conclusory allegations against the multiple remaining defendants. The Court is sympathetic towards Plaintiff's repeated outreach to Defendants Ferrera, Morashige, Folorunso, Rosenof, Trinidad, Rasool-Vali, and Housain. However, the Court cannot ascertain the named defendants' actual connection or link to Plaintiff nor if they are official personnel. Therefore, Plaintiff will have the opportunity to amend or stand on the original complaint.

Plaintiff further alleges the deprivation of his Eight Amendment rights against Defendants Sill, Sandy, Recarey, and Pesanti. Plaintiff's claim is insufficient because Defendant Sandy did not cause the deprivation of a constitutional right against Plaintiff. However, Defendant Sandy may have caused a deprivation against Inmate Lomeli. The Court clarifies that, while deliberate indifference towards Inmate Lomeli may rise to a cognizable claim for the deprivation of his constitutional rights, it is not Plaintiff's claim to make. The same reasoning applies to Defendants Sill and Recarey. Plaintiff has also failed to state a cognizable claim against Defendant Pesanti. The Court cannot determine how Defendant Pesanti's actions to place his documents in a "special folder" leads to the violation of his Eight Amendment rights.

Lastly, Plaintiff further alleges a claim against Defendants Doe II, Taylor, Than, Taye, Bidad, Lowe, and Phasab. Again, Plaintiff fails to provide a causal or affirmative link and simply names them as defendants. Plaintiff's claim is insufficient to provide fair notice of the claim and the ground upon which it rests. Plaintiff will be provided an opportunity to amend or to stand on the original complaint against the named defendants.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated: November 18, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE