In the United States Of California

For the Northern District Of California

**FILED**

Daniel Vanderee , Plaintiff

Case N.: 2:22-CV-0569-TLN-DMC-P

V.

FEB 22 2023

B. Jao, et. al., Defendants

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

First Amended Complaint U.S.C. § 1983

Judge: Dennis M. Cota , U.S. Magistrate Judge

Claims

1. Pl. Contends that Employees At (CHCF) Were On Notice that During Suicide Watch Of Pl. Staff Would Browse On the Lap Top On their Pl. To Ensure In Self Harm Versus Adhering to Suicide Watch Mandates Suicide Lines That Required the One On One Observer To Maintain A Constant Line Of Sight Of Pl. To Prevent Self Harm. Pl. Filed Complaints That During Suicide Watch the Observer Would Refuse To Intervene And Allow Pl. to Harm Himself. These Appeals Put Staff On Notice Of Failures During Suicide Watch Of Plaintiff. No Corrective Action Was Taken Which Would Have Prevented Loss Of Multiple Fingers Months Later Due to the Continued Indifference Of Plaintiff Serious Medical/Mental Health Needs. (CHCF) Is A Camera Facility And Lap Top Leave A Digital Finger Print That Will Prove Suicide Watch Observers Were Pre Occupied Browsing On the Computer As Pl. Cut Himself Or Amputated Fingers In Plain Sight. Suicide Watch Does Not Allow the Observer to Take Their Eyes Off the Patient. Video Does Not Lie, Forensic Lap Top History On State Issued Lap tops Don't Lie. "Prisoner Must Be Protected From Suicide And Self-Inflict," lee V. Downs, 641 F. 2d 117 (4th Cir. 1981)   Failure to Adhere to Suicide Watch Procedures Are Actionable Under the 8th Amend.

2. Despite Notice With Ample Time And Opportunity To Correct Failures During Suicide Watch No Action Was Taken And Employees At CHCF Continued to Act With Deliberate Indifference towards Pl's Serious Mental Health Needs In Violation Of the 8th Amend. Resulting In Multiple Injuries, Stitches, (3)

1

1  Acts- Amputations. He Cut Off (3) Fingers. (1) Was Medically Amputated After Deny The Care For A Loss

2  Of (4) Fingers Partial Fingers. He Was Treated Like Garbage For Reporting Sexual Abuse By A CDCR

3  Psychologist That Manipulated Him To Cut Off A Finger To Prove He Loves Her. That Claim Is

4  Not Raised Herein but it Mentioned To Set The Foundation Of The Claims Herein. He Has

5  Severe Psychological Problems That Includes Including Cutting His Tongue In (2) Complete Halves, Attempting

6  Suicide By Consuming Pills, Cutting Off A Finger For The CDCR Psychologist That Was Treating Him

7  And Sexually Abusing Him. Cutting His Tongue And Writing In Blood All Over His Walls. The

8  Suicide Attempt And Self Harm Listed On Line 4 - 7 Of This Page Occured Before The Claims Raised

9  Herein. (CHCF) Staff Were Fully On Notice Of He: History Of Succumbing To Suicide Ideation Or Self Harm

10  Ideation. On March 16, 2023 He Will Appear Before A Administrative Law Judge Because Mental Health

11  Professions Have Determined He Is A Danger To Himself And At Imminent Risk. See 8602 Petition

12  Ex. A-001 Thru Ex. A-004. Which Prove that He Performed Several Self Amputations.

13

14  No. 3 (CHCF) Is A Mental Health Facility Meaning Patients Are Entitled To A Constitutionally

15  Standard Of Mental Health Care. He Was In Acute During All Injuries And Amputations. Acute Is

16  The Highest Level Of Care At (CHCF) Which He Should Have Received Instead He Cut Off Finger

17  After Finger And Remained Invisible Despite Reporting His Amputation's

18

19  No. 4 He Contends That In Addition To Deliberate Indifference He Has Been Retaliated

20  By (CHCF) For Reporting Misconduct, Constitutional Violations, And Concealment Or Deprivations O

21  Those Rights. He's Appeals Deposited In The Locked In Appeal Box Has Destroyed To Chill His 1st

22  Amend Rights, Plz's Legal Mail With Appeals Is Destroyed With Appeal In Retaliation And To C

23  He: 1st Amend. Investigations Into The Destroyed Legal Mail And Appeals Was Falsified to Retali

24  And Chill He's First Amend Rights. He Can Prove Destruction Of Legal Mail With Appeals With 100

25  Certainty Because Video Footage And Legal Mail Log Don't Lie. Hence, He Can Proves With 100%

26  Certainty the Investigations To Conceal it Were Falsified. He Filed A Grievance For The Retal

27  Cover Up And Was Issued A False Disciplinary Infraction. Video Footage Does Not Lie He Can

28  The RUR Was Falsified And Approved By The Sgt. That Falsified The Legal Mail That Was

2

1   5. Plaintiff Contends His Claims Are Cognizable Constitutional Violations Of 1st Amend
2   Retaliation, 8th Amend. Deliberate Indifference Violations, 14th Amend Violations Of the Equal
3   Protection Clause. Pl. Mental Health & Deteriorating & Pl. Pleads With This Court To
4   Consider Pl.'s Evidence Attached To Pl. Mt. For Injuctive Relief Attached As Exhibit B Hereto.
5   Pl. Could Barely Focuse & If Ratled Fails To Articulate Claims In A Cognizable Manner Pl.'s
6   Plead. to Be Permitted To Amend At A Later Date And Consider The 2602 Petition In Favor
7   Of That Request Which Would Constitute As Exceptional Circumstances. Pl. Is Only Writing This
8   Amended Complaint Because Pl. Does Not Want to Offend The Court By Not Meeting The Feb. 21,
9   2023 Deadline. Pl. Would Prefer To Post Pond This Matter Until The 2602 Hearing But Pl. Does
10  Not Want to Be Accused Of Delaying Proceeding. So As Initial Screening Pl. Has The Court
11  To Please Give Pl. Benefit Of The Doubt And Consider Claims/Evidence In Ex. B Hereto As
12  Inclusive Constitutional Violations Raised In This First Amend Complaint. Pl. Apologizes To This Court
13  For Muddled Draftsmanship Hereto. Pl. Tries His Best And Has No Law Training But Cannot Focus Due
14  To Mental Health Issues & Pl. Lacks The Capacity To Write As Well As Had Like.

                        Statement Of Facts

16  6. An CDCR Staff Receive Suicide Prevention Training Including How To Respond To
17  Suicide Or Self-Injurious Behavior, See Ex. A-005.; A-006. An Staff That Perform One On One
18  Suicide Watch Are Trained And Must Document Behavioral Checks Every (15) Minutes, See Ex.A-007.
19  The Assigned Observer Shall Assume Continous direct Visual Observation With the Patient, Including When
20  The 1m Uses the Shower, Sink, Or Toilet, (MH3SD3) Suicide Prevention And Response, Ch. 10, Pg. 12/10/17,
21  See Ex. A-008. Suicide Watch Procedures At (CHCF) Require That the Observer Check Fingers, Extremedies,
22  At (15) Minute Charted Behavior i.e., Specifically Examitate Extremedies. Direct Continous Observation Means
23  The Observer Cannot Take Their Eyes Off Patient During Suicide Watch Not Even If In Shower. Self-
24  Injurious Behavior Or Physical Self-Injury Are Medical Emergencis That Require Immediate And Appropriate
25  Responses, "Response To Self-Injury Behavior", (MH3SD3) Suicide Prevention And Response, Ch. 10 Pg. 12-10-21,
26  Ex. A-009. "Deliberate Indifference To Mental Health (Suicide Prevention) Procedures Are Actionable Under the
27  8th Amend. Conbrorder V. City Of Los Angeles. 864 F. 2d. At 1460-62.

28
                              3

7. Prior to the Deliberate Indifference Claims Raised Herein P. Had A Significant History Of Recounted Suicide Attempts And Self Harm, Incl. For 9682 Petition Section "C", Ex. A-001. Before The Claims Raised Herein P. Filed Multiple Appeals At (CHCF) Complaining Of Deliberate Indifference During Suicide Watch i.e, Observer's Falling Asleep, Not Declaring Medical Emergencies As P. Was Harming Themselves, Browsing On The State Issued Lap Top During Suicide Watch Throughout The Shift Instead Of Maintaining Direct Continuous Observation Of P. At All Times As Mandated By Constitutionally Established Suicide Prevention Guidelines by Coleman V. Wilson. Prior To The Deliberate Indifference Raised Herein No Action Was Taken To Correct Failures Despite P.'s Appeals, No Staff Wore Discipline, And Constitutional 8th Amend. During Suicide Watch Continued. (CHCF) Staff Were On Notice. Prior To Deliberate Indifference Raised Herein P. Was Repeatedly Unconstitutionally Sexually Abused By A (CDCR) Psychologist That Manipulated And Convinced P. To Act Off This Finger To Prove P. Loves His Psychologist, See Ex. C-018 thru C-024 Of P. Mtl. For Preliminary Induction Attached Hereto As Ex. "B" The Unconstitutional Sexual Abuse And Deliberate Indifference Of Manipulating A Patient To Mutilate His Body Was Covered Up By (CHCF) And (PRSP) (ISU) Sexual Abuse Investigators Specifically Trained to Investigate Sexual Abuse. The Cover Ups Permitted P. And Significantly Contributed To A Deterioration Into the Mental Health And Psychological Decline Withdrawn, No Self Worth, Suicide Ideation, And Amputation Of Digits.

8. P. Endeavored to Act Off Fingers At (CHCF) Not Raised Herein but P. Exhausted Appeals On These Claims Identifying Failures And blatant Deliberate Indifference During Suicide Watch let Persist to Notice it Continued.

9. In August 2019 P. Was On Suicide Watch (RN) J. Traw Was P.'s Suicide Watch Observer Which Mandated That Nurse R. Traw Adhere to Constitutionally Standard Of Suicide Watch Identified In Paragraph 6 And 7 Of the First Amended Complaint. P. Succumbed To Self Harm Thoughts Set On This Occan And Started Having To Act Off this finger In P. Sight Of J. Traw In Longeta. J. Traw Was Browsing On The lap Top That Was Internet Access, That's State Issued, And Designed to Curat Suicide Watch Of Patient Not Surf the Internet. (CHCF) Is A Camera Facility And Nurse J. Traw Cannot Delete His Browser History. Simply Placing P. On Suicide Watch Does Not Satisfy A

4

1  Constitutionally Standard Or Mental Health Care If the Suicide Procedures / Protocols Are Disregarded. J. Thams

2  Trainined Made Him Known Of The Risk Of Harm To The Patient By Disregarding Suicide Protocals. Jour

3  Indure he Deemed A Medical Emergency, Ex-A-009. Pl. Jour Reported to behavious to A Different Staff Due

4  To Thams Indifference. Pl. Injuries Required (7) Stitches to A Finger, Pain, Suffering. And No Due

5  Worth Because than did Nothing As Pl. Was On Suicide Watch Cutting Himself In Pain Sight.

6

7  10. On October 01, 2019 Pl. Attended A Mental Health Committee And Was At The Acute Level

8  Of Care. Meaning Pl. Has Ponsived Several Psychological Decline Mandating Immediate Mental Health

9  Intervention And Psychiatrist Care. Pl. Notified (MH) Committee Pl. Was Urge to Cut Off A Finger

10 The IDTT Was Immediately Determinated Because Pl. Had Already Cut Off A Finger Previously After Encouraged

11 To Do it by (CDCR) Psychologist Unknown E. Bush . IDTT Committee Knew The Likelihood Given Pl.'s History.

12 Pl. Was Immediately Put On One On One Suicide Watch. Prevention/psyct Technicion Was Pl.'s Observer Within (10)

13 Hours Of Being Placed On Suicide Watch For Expressing Urges to Cut Off A Finger. Pl. Cut Off A Finger

14 And Snapped The Bone Himself In Plain Sight Of (PT) B. Jao. (PT) B. Jao Was Required And

15 Mandated to Adhere to An Suicide Watch Protocols In Paragraph (b) (6) And (7) Of the First

16 Amended Complaint. As Pl. Was Cutting Off his finger his plain sight Of B. Jao, Pl. Was

17 Bleeding profusely, Causing In Pain, And it Went On Well Hour One Hour. Maybe 2 OR 3.

18 (PT) B. Jao Was Surfing the Internet On the State Issued Lap Top Provided To Chart Suicide

19 Watch Behavior. (CDHCF) In A Camera facility And (PT) B. Jao Cannot Delete his Browser History.

20 Once Pl. Snapped The Bone And Had blood the Over himself. Pl. Banged On The Door To Get

21 The Attention Of Staff Walking By As (PT) B. Jao Continued To Surf this Internet. Pl. Put the

22 Missing Finger Against the Window Which Completely Shocked the Employee Who Went And Called

23 Staff. Pl. Later Learned That That Employee Was Traumatized By The Incident. I.E. A Mental Health

24 Patient Calling Them to The Door And Placing A Severed Finger Against the Window On Suicide

25 Watch. Simply Placing Pl. On Suicide Watch Does Not Satisfy The Constitutionally Standard Of

26 Mental Health Care If An Suicide Watch Procedures Protocols Are Disregarded. (PT) J. Bao

27 Was trained In Suicide Watch Prevention, Procedures, And Knew the Risk Of Harm to the

28 Patient By Disregarding Suicide Watch Protocols. In Addition to keeping An Eye On Pl. At all time

1   B. Jao and to Periodically check he's finger every 15 minutes and record it. Then who ample time

2   and opportunity to detect and prevent a complete auto amputation with no anesthesia...it was

3   extremely painful sometimes he __ could not conceal the he grunted and moaned.

4   Watch Officers Poe 1 and Poe 2 knew the risk of preventing their training to Suicide Prevention

5   and Preventing Suicide Watch Protocols to remove all objects from a patients room that can

6   be used to commit suicide or engage in self-harm. The he's room was not searched

7   a maintaining with staple was left. He made a tool with the staples to cut through all

8   soft tissue in a full circumference, ripping and ripping, through nerves, tendons,

9   blood vessels. He knew when he cut through nerves, the pain radiated to his elbow. The

10  tendons were like a rubber band and different to cut, blood vessel cut wound release

11  spouts of blood with pulses of he's heartbeat. He had to brind the bone on the stainless

12  steel in the room that alone took like 30 minutes. He kept grinding the bone which created

13  a groove intentation to snap the bone. He kept trying to snap the bone and could not which was

14  excruciating because he would twist & bend it to snap, it would not budge. So he started

15  grinding it on stainless steel which was equally painful and would bend it to snap.

16  it would not so he continued grinding until the groove was so deep into the bone it finally

17  snapped. (PT) B. Jao and Poe 1 and Doe 12 \Were Deliberately Indifferent and knew the risk

18  despite (CHCF) being a Mental Facility. Pl. was in acute or suicide watch.

19  (CHCF) is under court monitoring in Coleman V. Nesom regarding Mental Health Care. Coleman

20  attorneys put (CHCF) on Notice of this Incident in a letter to (CDCR) January        , 2020,

21  see Ex. A-010 thru A-012. He did not know of the letter until months later.

22

23      10.  On October 17, 2019 the Office of Inspector General Contacted (CHCF) that he wrote the (OIG)

24  expressing desire to cut off fingers. Is a result he was placed on Suicide Watch within 13 hours

25  He started cutting off his last ring finger. He's Suicide Watch Observers were (CNA) L. Areda and (PT)

26  Z. Mohammed. (CNA) L. Areda and (PT) Z. Mohammed were mandatory required to adhere to

27  suicide watch protocols in Paragraph (6)(7) of this First Amended Complaint which is the constitution

28  standard of Mental Health Care in Suicide Watch. At 4:00 A.M. He began to cut off his finger

                                    6

1. With A Razor blade As (CDNA) L. Areda Resisted In And Out Asleep. (CHLF) Is A Camera Facility.

2. L. Areda Was Required To Notify Staff Bout She Was Unfit (Exhausted) To Perform Suicide Watch. L.

3. Areda Was Required To Check P.'s Fingers Even 15 Minutes. P. Hooked Arm At His Finger In Pain

4. Right For Over One Hour, bleeding And Counting In Pain. At About 5:00 P.M. (CNA) L. Areda Was

5. Relieved By (PT) Muhammed, (PT) 2 Muhammed Also Resisted In And Out Of Sleep While P.

6. Was Cutting Off His Finger. At Some Point, P. Could Not Tolerate The Pain Showed His Blood

7. Finger To (PT) Muhammed Which Was Severely Cut, its Several Debate That Muhammed Knew Pl. Was

8. Injuring Himself. Which Required Muhammed To Activate Non Alarm And Declare A Medical Emergency

9. See Ex. AXXXX A-009. This Would Have Authorized Staff To Enter The Room And Remove Foreign Objects

10. Being Used For Self Mutilation. Prior To 4:00 A.M. P. Did Some Cutting And Blood Was Seen On

11. Him. So the (PT) Before (CNA) L. Areda Knew P. Was bleeding but Took No Action (Doe 3) (PT).

12. (PT) Muhammed Told Nurse A. OJacwu That P. Has Injuries/Harming Himself And Is Actively

13. bleeding. The Nurse Did Not Declare A Medical Emergency Consistant With Suicide Bene Inform Protocol

14. Ex. A-009. Nurse O. Jacwu Did Not Inform Staff To Remove The blade/Foreign Object Pl. Is Using

15. To Mutilate Himself On Suicide Watch. Instead, Nurse O. Jacwu Slid Pl. Cause Under The Book

16. To Patch Himself Which Was Futile Because Pl. Was Trying To Cut The Finger Off. Giving P. Cause

17. Served No Medical Purpose. Pl. Was On Suicide Watch For That Specific Reason. Pl. Was lost To His

18. Own Detriment In Psuchologicel Deterioration With A Razor blade And Told His Be Seen At

19. 8:00 a.m. i.e. (3) hrs Later. Prisoners Must be Protected From Suicide And Self-Injury, See V.

20. Youm, 641 F. 2d. 1117 (4th Cir. 1981). Delay In Intervening Is Equivalent To Denial Under Deliberate

21. Indifference Standard Under 8th Amend. Pl. Continued Cutting His Finger As (PT) 2.

22. Muhammed Continued to Resist In And Out Of Sleep. Pl. Was bleed Profusely, Counting In Pain,

23. Cut Through Tissue, Nerves, Tendon's, blood Vessels, Till Crate To The Bone Hooked At

24. The Bone With The Razor but it Was Ineffective To Snap it. Pl. Could Not Endure the

25. Pain On Grinding The Bone On Stainless Steel So Aborted That After (10) Minutes.

26. Blood Was All Over P. And His blankets And Floor. This Refusal To Not Permit that the

27. Continued Cutting Of the Nerves, Tendons, blood Vessel etc... The blade Was Not Taken And

28. Zero XXXXXX Efforts Were Made To Take it.

11.   11. Finger Would Not Stop bleeding it Was leaking like A Fountain Still. 2. Mohammed

Did Nothing. Eventually Realizing that The blood Loss Might Kill Pl. 2. Mohammed told

Staff the bleeding Won't Stop. This Of Course, Cannot Undue the Harm Done that Was

Preventable Had (PT) Mohammed Taken Action His Aeo. (PT) 2. Mohammed Even told Staff

"Why Arent We Taking Him to SEMS" i.e. The Institution Hospital. Plic Finger Was Bleeding

So bad it took Over 80 Unds. Of Gauze Wrapped Around The Finger For the blood to

Stop being Noticeable. After 10 Unds Of Gause Wrapped Around Plic Hand the blood Would

Still leak Immediately. Pl. Was Simply Put back In His Room. (4) hours later At 10:00 A.M.

A Doctor Showed Up to Plic Door And told Pl. to Remove the (80) Unds. Of Guaze As Pl. DiD

The blood Shot Out In Puddles On Plic Floor blood Was Just Pouring Out The Wound. Pl.

Was Finally taken to SEMS (30) Minutes Later And Got Over (83) Stitches. (5) Hrs After

2. Mohammed And Nurse A. Ojagno Knew With 100% Certainty Pl. Was Cutting Off His Finger. The

Stitches Were Futile Because the Delay In Care Created Irreversable Damage. The blood Vessel Were

Death Detiaened too Long And The Decomposation Process Commenced. Pl. Finger Turned Black

Within Days. That Same Day it Was Visibally Grey. Pl. Had to Go A Medical Partial Amputation.

Simarly Placing Pl. On Suicide Watch Per A Call From (OIG) Does Not Satisfy A Constitutionally

Standard Of Mental Health Care In Suicide Watch Prossecures/Protocols Are Disearded. (CMA)

1. Aaeda, (PT) 2. Mohammed, And Nurse A. Ojagno Knowing Made them Known As the Risk to

The Patient By Disregarding Suicide Watch Protocols.

CLEARED

12.   On March 04. 2020 Pl. Who Notified that (CDCR) Presndecist thawwith E. Burt Who fully Cleared

Of All Unconstitutional Sexual Abuse, Manipulations Being Patent Pl. to Cut Off His Finger. (OHCF) Rehearsal

Pl. the News, it Was CHCF (ISU) A. Ali. Pl. Now Knows CHCF (ISU) A. Ali And Others Falsified Records

to Conceal The Constitutional Violation By Burt And Others. This However Sent Pl. Into Psychological Decline

Pl. Shut Down And Stopped Jumming, Showering, Refused to Exit His Cell And Exhibited All the

Obivious Signs Of Mental Health Deteriaon Ation/Decline. Pl. Was Still In The ACUTE land Of Care.

Instead Of Mandliax Therapy Sessions Pl. Would Submit Written Reports Describing His Psychological

Plight. Pl.'s Suicidility Revolved Had Pl. Coued Not Process How A Sexual Victim Who. How Connect

1   Have His Abuser Held Accountable With The Mountain Of Evidence Available to Investigators i.e. Letters

2   In Bush's Possession, Recorded Phone Calls, And Video Footage Of Each Seperate Hearing Pl. Bush's Own

3   Inmate Turned Her In to. (CDCR). He Found Letters Inside Bush's Lock Box, Called The Police, And The

4   Police Instructed Bush's Fiancee to Relinquish The Evidence to (CDCR) Officials, He Did And it Was

5   Covered Up to Protect Bush. The Bush Claims Are Not Raised Herein but Are The Nexis to Claims

6   Herein.

7

8       12.  Following The Psyundro.cal Decline Upon Learning Bush Was Cleared Pl. Succumbed to Thoughts

9   Of SIB And Cut Off His Finger On April 12. 2020.  Pl. Made No Effort to Conceal it, it

10  Took Hours Including Severing All tissue, Tendons, blood Vessels, And Nerves, Grinding Through The

11  Bone And Snapping The bone.  Pl. Was Not In His Right Mind.  Pl. And Already Cut Off One Finger

12  And On April 13, 2020 tried The (RT) Rob (4) to Various Attore to Have Mueller Arise I Will

13  Engage In Self. Harm. On April 15 2020 Pl. told (RT) A. Ferrera " I'm Not Stable".  On

14  April 23, 2020, Pl. Told (RT) A. Ferrera," to Document that Pl. Is Going to Act On Self. Harm ".

15

16      14  On April 28 29, 2020 Pl. Told (RT) J. Rosenof Pl. Is Going to Act On Thoughts Of

17  Self-Harm. Pl.: Stated Was Never Increased to Suicide Precaution Or Suicide Watch Since Severing Down

18  An Of March 2020 And Cutting Off His Finger On April 12, 2020. On May 02, 20 20 Pl. Was We Sent

19  In Distressed And Covered An this Windows And Started Reporting Nurse Misconduct by Nurses to

20  Senior Nurse C. Sill. Pl. Eventually Stood/ Showed His Hand to C. Sill With A Missing

21  Digit that Was Visibally Not Fully Healed And Called How Does SHE like this Happen In

22  Acute Setting.  C. Sill Showed No Emotion And Said She has to leave. And Quickly Walked

23  Away.  C. Sill Took No Action to Prevent Or Report The Missing Finger.  Pl. Still Had The

24  Decomposing Digit On The Corner On the Floor Of His Room. On May 03, 2020 Pl. Mailed The

25  CEO R. ReClarey (2) CDCR 22 Forms In Legal Mail Reporting Nurse C. Sill About The Finger.

26  On May 05, 2022 Pl. Submitted A Health Care Appeal Stating On May 02, 2020 Pl. Tried C. Sill

27  that Pl. Cut Off His Finger In April, Showed C. Sill And Sill Did Not Care. The Appeal Literally

28  Says I told C. Sill When I Cut Off My Finger In April, She Showed No Reaction Or

9

1  Concern. He's Appeal Was Assigned Log # CHCF-HC-20001191 And Nurse A. Prasad Reviewed it And
2  Determined it Was Not Urgent i.e. No Emergency. Thus. No 7219 Injury Assessment Was Done To Document
3  The Missing Digit, No Cell Search Was Done To Retrieve The Decomposing Finger, And He's Level Of Observation
4  Was Not Elevated To Suicide Watch No Action Was Taken To Show Plant Deliberate Indifference Of A Mental
5  Health Patient In Acute. In Violation Of Constitutionally Standard Of Mental Health Care. Pl. Was Left
6  To His Own Detriment In A Psychological State Of Deterioration. He Cell Was Not Even Searched to Remove
7  Objects He Can Use to Continue Mutilating His body. Self Harm Is A Medical Emergency, See Ex. A-009.
8
9  15.   On April 10, 2020 Pl. Filed A Second Health Care Injury His Invisible Has Faded Into the
10  background Explained In Specific Detail How He Surrendered to Self Injurious behavior thoughts,
11  Cut Off His Finger On April 12, 2020 And Snapped the bone, That Health Care Appeal Was Assigned
12  Log # CHCF HC 20001234 And On May 13, 2020 Nurse M. Lowe Reviewed it And Determined its
13  Not Urgent i.e. Not An Emergency. Self Harm Is A Medical Emergency, See Ex. A-009. Since M. Lowe
14  Claimed its Not Urgent No 7219 Injury Assessment Was Done To Document The Amputated Digit,
15  No Cell Search Was Done To Retrieve The Decomposing Finger, And He's Level Of Observation Was Not
16  Elevated To Suicide Watch. No Cell Search Was Done To Remove Objects He Can Continue to Use
17  To Mutilate his body. This Is Not A Constitutional Standard Of Mental Health Care For A Mentally
18  Disabled Mental Health Patient In Acute. Pl. Was Left to His Own Detriment In Psychological Deterioration
19  And Decline. See Log # CHCF-HC- 20001234, Ex. A-013; A-014.
20
21  16.   On May 11, 2020 Pl. Told The (RT) To Think Of Hurting Myself Daily And To Never Feel
22  Safe. Pl. Felt So Invisible He Eventually Drilled A Hole Through The Decomposing Finger, Made A
23  Stink Necklace And Wore The Rotting Finger Like A Necklace. On May 18, 2020 Pl. Told (RT)
24  A. Ferrara, "I Never Feel Safe". Ferrara Asked Pl. Do Ph Have Anything He Can Harm Himself
25  With. Pl. Said, Yes, I Have Something To Can Harm Myself With". Ferrara Told Pl. When Was Pl
26  Can Have Another Chance Property, Pl. Said, I Don't Know. No Action Was Taken. On May 25, 2020 Pl.
27  Mailed Out The Necklace With Decomposing Finger Out In "Legal Mail" Which Was Processed By Staff
28  At Pl.'s Room. On May 28, 2020 Pl. Succumbed to Overwhelming thoughts Of Despair And

10

1  Cut Off Another Finger And Made No Attempt to Hide it. Pl. Cut. Through Tissue, Nerves, Blood
2  Vessells etc.. Grinded The Bone And Snapped it. The Finger bled And bled At Some Point
3  Pl. Had to tie it Off to Stop The Bleeding That Would Squint Profusely With Pl.s
4  Pulse. That Same Day Pl. Mailed The Newly Amputated Digit Out to (016) In "Legal Mail"
5  Begging for Help. it Was Covered In Pl.'s blood. The "Legal Mail" Was Processed by Staff At
6  Pl.'s Door. The MCSA Finger Arrived On June 01, 2020 to (016) That, When A 7219 Injury
7  Assessment Was Done because (016) Ordered it And Pl. Had (6) Missing Fingers Not (1).
8  To Conceal The Unconstitutional Deliberate Indifference (CHCF) Falsified Records Saying Pl. Was
9  Receiving Wound Care In May 2020 And Reopened That Injury In June 2020 And Cut Off The Finger
10 In June 2020, See 2602 Petition Under Oath Sec. C, Ex. A-001. This Is False And Impossible Both
11 Fingers Were Mailed Out In May 2020. Pl. Received No Care Despite Putting In 2 Appeals May 05, 2020 And
12 May 10, 2020 Saying He Cut Off CONTRARY The Index Finger. If Pl. Was Getting Wound Care for
13 Injury to The Middle Finger In May 2020, The Missing Finger Next to it Would Have Been Noticed.
14 June 01, 2020 Is When The First Finger Arrived, it's Impossible that Pl. Cut Off The Middle Finger In June
15 2020 When it was Arrived to (016) June 01, 2020. If No Deliberate Indifference Occured Why Are Medical
16 Records Falsified to Conceal it. Pl. Had No Idea Medical Files Was Falsified Until Receiving The
17 2602 Petition On Feb. 14, 2023. "Evidence Of Falsification Of Medical Records Showed Deliberate
18 Action" Given V. Branson, 180 F. 3d 1296 (10ᵗʰ Cir. 1997).
19
20    17.  Pl. E-Filed This Case On March 30, 2022 Requiring Penitentiary to Send Via Non-Confidential
21 Mail. Thus, it Can Be Read By Staff. The Retaliation that Ensued Was Immediate And Swift.
22 On April 18, 2022 Sgt. J. Brunner Whom Had Never Met Or Interacted With Pl. Before Was Called to
23 Pl.'s Door W/o Provocation Sgt. J. Brunner Started Berating Pl. "I Don't Give A Fück Is Ur Cut Claw
24 Ur Fingers Off". "I Don't Give A Fück Is Ur Cut Claw Hand Off And Mail it Out". Pl. Made
25 No Threats Of Self Harm, Period. Sgt. J. Brunner Had to Learn About The E-Filing. J. Brunner
26 Denied The Statements, Over (10) People Heard it. Only One Officer Said The Truth Which Passed Pl.
27 Did Not Lie Or Exaggerate. That Officer Was Called A Snitch By Other Guards. A Guard Told
28 Pl. Guards Never Side With The Truth For A Inmate but Chow Lucky W/ D. Lang Said The Truth

11

1  But Everyone Thinks He's A Snitch Now. On Mar 24, 2022 A Guard Approached Pc. And

2  Told Pc. Sgt. J. Brunner Is Asking Staff To Lie About The April 18, 2022 Incident. Pre-The

3  Investigation. On May 25, 2022 Pc. Submitted A Grievance Against Sgt. J. Brunner For Promoting

4  The Code Of Silence And Retaliation. Pc. Put The Complaint Into The RGA Locked Up

5  Appeals Box Which Is On Camera And Has To Be Documented By The Office Technician (O.T.)

6  That Retrieves Appeal. The O.T. On The ½ Appeal Office Had To Bulk Destroy It & First

7  Amend. Retaliation. It Was Never Processed Or Issued A Log #.

8

9  18  On June 22, 2022 Pc. Put Another Identical Complaint Against Sgt. J. Brunner For Retaliation And

10  Promoting The Code Of Silence By Asking Guard To Lie. Pc. Put The Grievance Into The ½

11  Appeals Box Which Is Locked, its On Camera. Once The O.T. Has The Key And Has To Record

12  Appeals. The O.T. On Inmate Appeals Staff Had to Destroy it As First Amend. Retaliation

13  it Was Never Processed Or Issued A Log #.

14

15  19  On June 28, 2022 Pc. Filed A Grievance After Discovering Evidence That (CHCF) Staff And

16  (CPRSP) Staff Covered Up The Unconstitutional Sexual Abuse. The Retaliate Against Pc. And Chill His

17  First Amend. Rights it Was Committed To Health Care Assigned Health Care Log # CHCF.HC-22001253

18  And Redacted. Then, Staff Falsified Log indexes To Show its A Health Care Appeal Against A Dr's

19  Nurse But Records That Can Be Viewed By The (OIG). The Grievance Identifies CHCF (ISU) A.

20  Ali: A. Criminally Corrupt And Identified No Nurse. See Pc. & Thru 5 Of Ex. "B" Attached.

21  The Staff That Converted it To Medical And The Staff That Falsified The Log index Effectively Chilled

22  Pc.s First Amend Rights As Retaliation.

23

24  20  On June 30, 2022 Pc. Filed A Staff Complaint In Legal Mail At (CHCF), Identifying (CHCF)

25  In The Prem Cover Up. Signed legal Mail Log's, Electronic Log's, And Video footage from it. To

26  Retaliate The legal Mail With the Grievance Was Destroyed by CHCF Inmate Appeals Staff. No

27  Log # From CHCF Was Issued Or On Record. Destruction Of Legal Mail With Appeals Is Unconstitutional

28  And Criminal, U.S. Consti. 1st Amend., Tit. 18 U.S. C. § 1708.

12

21. On Jun 01, 2022 Pl. Filed A Staff Complaint Identifying (CHCF) In The Prison Cover Up.

Pl. Approached The Officer Station, Had A Officer Sign A CDCR 22 Form With The Appeal, Pl. Removed His Signed Copy, Walked to The Locked In Appeals Box And Deposited The Appeal With The Signed 22 From its On Camera. The O.T. On The Appeal Office Destroyed it To Retaliate And Chill Pl.'s First Amend. Rights. its Was Never Processed Or Issued A Log #.

22 On July 05, 2022 Pl's Family E. Mailed Headquarters Complaining About Missing Appeals. Pl. Surmised Were Being Destroyed Since He Was Issued No Log #'s. Headquarter E. Mailed (CHCF) Instructing CHCF to Sent Staff to Pl's Door, Retrieve The Grievance, And Take it To In Appeals For Processing. At 2:00 p.m. On Jun 05, 2022 (ISU) E. Martinez Approached Pl's Door Retrieved The Grievance And Told Pl. He Will Get A Log # And Return. After He Filed With Inmate Appeals. Instead, (ISU) E. Martinez Took it To (ISU) Officer's, Read it, And Realized it Identified Multiple Corrupt (ISU) Including At (CHCF). Eight Days Later On July 13, 2022 Martinez Gave The Appeal To Pl's Floor Staff To Return to Pl. And Never Took it To Be Filed Despite Being Designated By Headquarters to be Just That. Martinez Retaliated To Chill Pl's First Amend. Rights Since The Complaint Identified (ISU) From (CHCF). Martinez Knew If Pl. Submitted The Appeal In The Appeal Box Or Local Mail Appeals Staff Would Destroy it In The Furtherance Of A Cover Up.

22 On July 13, 2022 Pl. Filed A Copy Of The Complaint Into The BSA Locked Appeals Box. Officer Have Signed A CDCR 22 From With The Grievance. Video Footage Will Show Pl. Deposit The CDCR 22 From Above And Appeal Into The Appeal Box. Only The O.T. Or Inmate Appeals Staff Could Destroy it to Retaliate To Chill Pl's First Amend Rights. it Was Never Processed Or Issued A Log #.

23. On Angust 25, 2022 Pl. Resubmitted CHCF-HC-22001255 to CHCF Appeals In Legal Mail, Signed Copy's, Electronic Copy's, Camera Footage Prove it. The Legal Mail With Log # CHCF-HC-22001253 Was Destroyed by CHCF In Appeals Staff To Retaliate And Chill Pl's First Amend. Rights. Destruction Of Legal Mail With Appeals Is Unconstitutional /Criminal.

13

24. On August 23, 2022 Re. Filed A Grievance In Legal Mail For Missing / Destroyed Appeali- Signed Legal Mail Logs, Electronic Logs, And Video Footage Prove it. To Retaliate Against Re. And Chill His First Amend. Rights. it Was Destroyed. No Log # Was Issued And it Was Never Processed. Destruction Of Legal Mail With Appeals Is Unconstitutional / Criminal. 1st Amend U.S. Const:. ; Tit. 18. U.S.C. §1702.

25. On August 29, 2022 Re. Filed A Grievance In Legal Mail Against (ISU) E. Martinez And (ISU) B. Pinneo At (CHCF) For Retaliation By Refusing To Process The Grievance Mention In Paragraph N.. 22 Hereto. Signed Legal Mail Logs, Electronic Logs, And Video Footage Prove it. To Retaliate Against Re. And Chill His First Amend. Rights thru His Appeals Office Destroyed this Legal Mail With Appeal; its Unconstitutional / Criminal. 1st Amend. U.S. Const.t.;Tit. 18 U.S.C. § 1702.

26. On Sep. 01, 2022 Re. Resubmitted CHCF-HC-2200 1253 To CHCF In Appeals In Legal Mail. Signed Logs, Electronic Logs, Camera Footage Prove it. The Legal Mail With Log # CHCF-HC-2200 1253 Was Destroyed By CHCF In Appeals Staff To Retaliate And Chill Re.:s First Amend. Rights. Destruction Of Legal Mail With Appeals Is Unconstitutional/Criminal.

27. On Sep. 20. 2022 Re. Submitted A Grievance In Legal Mail For Destroyed / Missing Appeal. Legal Mail Logs, Electronic Log, Video Prove it. The Legal Mail Was Destroyed With this Appeal To Retaliate And Chill Re.:s First Amend. Rights. it Was Restored By CHCF Appeals Staff, Destruction Of Legal Mail With Appeals Is Unconstitutional / Criminal, 1st Amend. U.S. Constitution; Tit. 18. U.S.C. § 1702.

28. On Oct. 10, 2022 Re.s Filed A Grievance In Legal Mail Against CHCF Warden Gena Jones For Adверse Constitutional Violations by (CHCF) Staff. Signed Legal Mail Logs, Electronic Logs And Video Prove it. The Legal Mail With Appeal Was Restored By CHCF Appeals Staff To Retaliate Against Re. And Chill Re.:s First Amend. Rights. Destruction Of Legal Mail With Appeals Is Unconstitutional/Criminal, 1st Amend. U.S. Constitu. ; Tit. 18. U.S.C. §1702.

29. On Oct. 13, 2022 Pt. Filed A Grievance In Local Mail To CHCF Appeals Against CHCF (ISU) SGT. C. Burns For Following Investigation Findings To Conceal Deprivation Of Constitutional Rights. CHCF Appeal Staff Destroyed The Local Mail With Appeal To Retaliate And Chill Pt.'s First Amend. Rights. Destruction Of Local Mail With Appeals Is Unconstitutional Criminal, 1st Amend. U.S. Const. Tit. 18. U.S.C. § 1702.

30. Since Pt. Knew Local Mail With Appeals Would Be Destroyed By (CHCF) Staff To Retaliate And Chill Pt.'s First Amend. Rights. Pt. Would Mail Copies Of Appeals To Another Prison. In Local Mail. CHCF Had No Idea Pt. Was Doing This. The Other Prison Redirected (8) Appeals To CHCF Regarding Destruction Of Local Mail. Loc. # 303558 And 301219. However To Retaliate Against Pt. CHCF Warden Benn Jones Allowed CHCF Warden J. Schultz, SGT. J. Postie, And R. Singh. To Cover Up The Destruction Of Local Mail With Appeals. SGT. J. Postie And SGT. R Singh Were Assigned to Investigate. SGT. J. Postie And SGT. R. Singh Cannot Investigate Superior Staff. Appeal Staff Out Rank A SGT. Appeals Coordinator's Were The Staff Destroying The Local Mail With Appeals. Additionally, Destroying Appeals to Prevent Reporting Of Misconduct Is The Code Of Silence. The Lowest Ranking Staff That Can Investigate The Code Of Silence Is A Lieutenant. SGT. R. Singh Or J. Postie Are Not Lieutenants. Local Mail Logs And Video Footage Prove The Local Mail Was Submitted And Issued No Log # Or Even Processed. Yet Postie And Singh Falsely Reported No Legal Mail Was Destroyed. SGT. R Singh Went Further And Said Pt. Never Put A Appeal Into The Locked Appeal Box On July 01, 2022 When There Is Video Footage Of Staff Staring A COLR 22 Form And Pt. Then Dropping it Into The Appeals Box. J. Schultz Said There Is No Evidence Of Misconduct At (CHCF) Staff Misconduct Is Any Violation Of Law Or Policy, Tit. 15 § 3480 (a)(A). That's A Contradiction Considering Shute Allowed SGT. R. Singh And SGT. J. Postie To Investigate Supervisors And The Code Of Silence In Violation Of Dept. Policy. The Falsified Findings Is Unconstitutional And Criminal To Retaliate Against Pt. And Chill Pt.'s 1st Amend Rights.

31. On Dec. 03. 2022 To Retaliate Against Pt. SGT. R. Singh Approved A False Rules Violation Report Against Pt. Video Footage Will Prove The RVR Is Falsified. P. blumenthal

1  Prepared the false RUR which involves Sgt. P. Singh, the chosen will prove the report is false

2  And proves P. Singh knew it was false because wants to the report view several. The camera

3  proves it. P. reported Singh for falsifying Loc # 301819. The false RUR is Retaliation.

4

5  32.  P. has not waive amendment against unnamed Defendants. P. will seek amendment

6  As more evidence surfaces. P. has been at CHCF 3½ years. Appeals and legal mail with

7  Appeals did not start being retrieved until the E. filing of this case on March 30, 2022.

8  Prior to March 30, 2022 not once was a grievance retrieved or lost. legal mail was retrieved

9  by (ISU) but it continued evidence not appeals. And that was in March of 2020. On (2) occasions.

10  the retraction of appeals in the appeal box and in legal mail coincide with E. filing this case.

11

12  32.  P. contends there has violate constitutional violations of the 1st, 8th, and 14th Amend.

13  P. can prove with 100% certainty that appeals on legal mail with appeals were retrieved a

14  minimum of (13) times and twice investigations were falsified to conceal some of those unconstitutional

15  violations.  P. believes it occurs at least (14) times but for now can prove (12).

16

17  33.  P. is mentally disabled. See Argument II and III of Ex. B. Attached.

18                                    Prayer for Relief

19  Grant that P. Declaration that Acts Hereto Violated His Rights Under the U.S.

20  Constitution.

21

22  Granting P. Compensatory Damages in the Amount Of (1) Million Dollars Against

23  Each Defendant, Jointly And Severally,

24

25  Plaintiff Seeks Punitive Damages in the Amount Of (1) Million Dollars Against Each

26  Defendant, Jointly And Severally,

27

28  Plaintiff Seeks Injuction Relief Requested In Exhibit "B" Hereto.

16

1   K. Seeks Recovery Of Cost Of Suit, And Any Additional Relief This Court Deems

2   Just, Proper, And Equitable,

3

4   L. Such Appointment Of Counsel To Defend His Civil Rights.

5

6                                        Self Verification

7   I Declare Under Penalty Of Perjury that The Foregoing Is True And Correct. If Called Upon

8   To Do So To Can Testify To These Matters. This Declaration Was Executed On The 20th

9   Day Of February 2023 At Stockton Cal. 95913.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA
DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION
CDCR MH-7363-2 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 3
Instructions: Page 4

## Declaration in Support of Initial Involuntary Medication

| Patient Name (Last): Verduzco | (First): Daniel | CDCR #: T45537 | PID #: |
|---|---|---|---|

Date: Feb 03, 2023     Institution: CHCF-STOCKTON     Bed/Cell/Dorm: B6A-126

Age: 42     Gender: ☒Male ☐Female     Interpreter: ☐Yes ☒No     Language: English

1. I am a licensed psychiatrist employed by the State of California to treat patients sentenced to imprisonment or housed in a California state prison, including facilities operated by the Department of State Hospitals to treat California Department of Corrections and Rehabilitation patients.

2. In my professional opinion, the patient listed above exhibits symptoms of a serious mental illness requiring psychiatric medication.

3. Based on my interaction with the patient and my review of the chart and materials gathered by the clinical team, I have made a working psychiatric diagnosis of: Major Depressive Disorder, Adjustment reaction with anxious mood, Adjustment disorder with disturbance of conduct, Borderline (BPD)

4. The basis for the above diagnosis is as follows:

a. What are the general (textbook) symptoms of the serious mental illness in the diagnosis?

Major Depression is a disorder characterized by feelings of worthlessness, hopelessness or guilt, fixating on past failures or self-blame, trouble thinking, concentrating, making decisions and remembering things, irritability, poor impulse control. Frequent or recurrent thoughts of death and suicidal thoughts.

b. Which of these symptoms or behaviors have clinical staff observed in the patient, and when?

Mr. Verduzco has been at CHCF since 11/18/2020, ever since clinical staff have observed "on and off" symptoms of Mood lability/instability, depression, agitation, anxiety, impulsivity, threats of self injurious behaviour, occasional paranoid beliefs (often about custody), impaired frustration tolerance, poor coping skills, non-compliance with treatment, poor insight. These symptoms have worsened since he stopped taking his meds regularly on Dec 21,2022

c. Did you rely upon historical information supporting the above diagnosis for this patient?  If so, please specify what you relied upon (first onset, historical course of mental disorder, prior hospitalizations, prior medication history, etc.):

This is 42 years old Hispanic Male with Psychiatric history Major Depressive Disorder, Adjustment reaction with anxious mood, Adjustment disorder with disturbance of conduct, Borderline (BPD). with prior hospitalizations, Acute on 9/13/16-11/8/16, 7/19/19-10/7/19, 10/29/19-1/14/20, 2/13/20-11/18/20. PIP level of care at CHCF since 7/19/19, starting at Acute and now at ICF since 11/18/2020. He was initially referred for attempting to cut off a finger, as well as on-going threats to engage in SIB. Mr. Verduzco has long history of self-injurious behavior (self-amputation cut tongue in half 4/2016, OD on sleeping pills 4/2017, bit tongue 4/2017, lacerations X two 5/2017 of left fifth finger, necrosis and partial amputation, pulled out sutures 5/2017, laceration to left 4th finger 7/2019, 10/2019 over several acts cut off left 4th finger, cut off tip of left second finger 4/2020, laceration 5/2020 reopened wounds and cut tip off left middle finger 6/2020). On Dec 2022 patient reported recurrent threats to staff that he was going to amputate another finger in the month of January 2023, he did not engage in SIB however continues to report that it is a matter of time to next self-injurious behavior, Since Dec, 2022 he has been refusing most psych meds, regularly fails to comply with safety checks of his extremities requiring enhanced observation either Q 11 or SW from Dec 29, 2022- Feb 01,2023.

1. Disability Code:
☐ TABE score ≤ 4.0
☐ DPH     ☐ DPV
☐ DPS     ☐ DNH     ☐ LD
☐ DNS     ☐ DDP
☒ Not Applicable

2. Accommodations:
☒ Additional Time
☐ Equipment     ☐ SLI
☐ Louder     ☒ Slower
☒ Basic     ☐ Transcribe.
☐ Other*

3. Effective Communication:
☒ Patient asked questions
☒ Patient summed Information

Please check one:
☐ Not Reached*     ☒ Reached
*See chrononotes

| | |
|---|---|
| CDCR #: | T45537 |
| Last Name: Verduzco | MI: |
| First Name: Daniel | |
| DOB: | 07/25/1980 |

4. Comments:

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

DISTRIBUTION: Original: Health Records  Copy: MCA
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other: 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT A-001

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION                                    Form: Page 2 of 3
CDCR MH-7363-2 (03/17)                                                                      Instructions: Page 4

d.  What did the patient do or say as a result of their serious mental illness that supports your assertion that the patient is a danger to self, a danger to others, or gravely disabled?

Danger to self:
MHPC note 11/25/2022: IP reported he had an increase of suicidal ideation last week.
MHPC note 11/25/2022-12/06/2022: IP reported that cutting a finger is still on the table and a desire to engage in self-injurious behavior.
MHMD note 12/07/2022 IP reported " I'm not going to hurt myself at the moment but I can't guarantee that something could happen in the near future".
MHPC RVR assessment 12/10/2022: IP verduzco boarded up twice on 12/03/2022.
MHPC note 12/29/2022:  IP has made several statements that he is planning to cut off his finger sometime in January.
MHMD note 01/31/2023 IP said I'm not saying that I couldn't hurt myself at some point "

5.  Based on my knowledge of the patient and their medical records, I believe that as the result of a serious mental illness, the patient is (mark all that apply):

☒ Danger to self          ☐ Danger to others          ☐ Gravely disabled and lacking capacity to accept or refuse medications

6.  Please articulate how the patient's mental health history and the acts and behaviors in questions 3, 4, and 5 (above), are a result of the patient's serious mental illness (i.e., how the acts or behaviors align with the diagnosis, etc.).

Patient has shown symptoms  of mood lability/instability, depression, agitation, anxiety, impulsivity, threaths of self injurious behaviour (several times) he has strong history of SIB (self amputation), occasional paranoid beliefs (often about custody), impaired frustration tolerance, poor coping skills, non-compliance with treatment, refusing medicaton for mental health,  poor insight. All contributing to high risk of danger to self,

7.  On   02/03/2023        ,  I have recommended to the patient one or more psychiatric medications for the treatment of the patient's serious mental illness, have considered the risks, benefits, and treatment alternatives to involuntary medication, and have determined that the treatment alternatives to involuntary medication are unlikely to meet the needs of the patient.

8.  I have advised the patient of the risks and benefits, and treatment alternatives to involuntary medication. The patient refused, does not have the capacity, or could not accept psychiatric medications.

9.  The expected benefits of this medication to the patient are:

Use of psychotropics medication can be used as first line treatment of chronic depression, and to reflief associated symptoms by reducing depressed/labile mood, anxiety, poor self-control, paranoid thinking, promote sleep and also can reduce impulses to self harm.

| | |
|---|---|
| Declaration in Support of Initial Involuntary Medication<br>CDCR MH-7363-2 (03/17) | CDCR #:   T45537<br><br>Last Name:   Verduzco                          MI:<br><br>First Name:   Daniel<br><br>DOB:   07/25/1980 |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

DISTRIBUTION: Original: Health Records  Copy: MOA
eUHR SCANNING LOCATION: MH Chrono/Misc-Legal/Other: 7363 Notice of Certification for Involuntary Medication          EXHIBIT A-002
EHRS LOCATION: Mental Health Documentation > Legal

STATE OF CALIFORNIA
DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION
CDCR MH-7363-2 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 3 of 3
Instructions: Page 4

10. Potential risks and side effects of providing this medication to the patient are:

The Psychotropic medications may have following side effects with second and first generations anti Psychotics:
Weight gain,
EPS, dystonia, tremors, shakes, muscle stiffness, rigidity.
Metabolic syndrome: Weight gain, Hyperglycemia, High Cholesterol, Dyslipidemia increase in waist measurement. increase BMI,
Neuroleptic Malignant syndrome (NMS).
Sedation, tiredness.

11. Based on the facts and diagnosis indicated above, as well as my review of documents both in the treatment team profile of this patient and in the chart, it is my opinion the patient requires psychiatric medication to treat their illness. Without medication, the patient would present as an elevated chronic risk, an imminent risk, or both.

12. If this petition is based on a threat of harm to self or others, please state upon what basis you believe the threat is credible.

Mr. Verduzco has strong history of self injurious behaviour (self amputation multiple times- see above.) and poor impulse control
He has repeatedly declined medications when offered since Dec 21, 2022, ever since his symptoms have gradually worsened including- mood lability, poor impulse control, poor engagement with clinicians, fragmented sleep, isolation, poor tolerance to stress.

Without the medication, he is likely to deteriorate further and possibly to engage in self injurious behavior.

13. In my opinion there is no less restrictive alternative than to seek a court order to administer psychiatric medication.

14. I am initiating this matter on the following basis:

☒ Non-emergency (no medications prior to Administrative Law Judge hearing)     ☐ Emergency (ex-parte application for medication attached)

I declare under penalty of perjury that the foregoing is true and correct.

Date: 02/03/2023      , in the City of Stockton      , California, in the County of San Joaquin

Print Name and Title: Edgar Andres Chica, MD, Psychiatrist      Signature:

| Declaration in Support of Initial Involuntary Medication CDCR MH-7363-2 (03/17) | CDCR #: T45537 |
| | Last Name: Verduzco     MI: |
| | First Name: Daniel |
| | DOB: 07/25/1980 |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.
DISTRIBUTION: Original: Health Records  Copy: MCA
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other; 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT A-003

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INVOLUNTARY MEDICATION PETITION (PENAL CODE 2602)
Form: Page 1 of 1
CDCR MH-7363-1 (03/17)
Instructions: Page 2

## Involuntary Medication Petition

| | | | |
|---|---|---|---|
| Patient Name: (Last) VERDUZCO | (First) DANIEL | CDCR #: T45537 | PID #: |

| | |
|---|---|
| Date: February 14, 2023   Institution: CHCF-Stockton | Bed/Cell/Dorm: CHCF B 306A1-126001L |

| | | | |
|---|---|---|---|
| Age: 42 | Gender: ☒Male ☐Female | Interpreter: ☐Yes ☒No | Language: English |

### NOTICE OF INTENT TO SEEK INVOLUNTARY MEDICATION

The clinical staff at the institution shown above alleges that you have a serious mental illness and are unwilling or unable to take psychiatric medication necessary to treat your condition. As a result, you are a danger to self, a danger to others, or gravely disabled. A hearing has been scheduled in front of an Administrative Law Judge, who will decide if you must take psychiatric medication. You have a right to attend.

HEARING TYPE (Choose one):

☒ NON-EMERGENCY (Hearing within 21-30 days of this notice, no interim medications allowed)

☐ EMERGENCY (Hearing within 21 days of this notice, interim medications allowed)

Date and Time Medication Started: _____

| | |
|---|---|
| Hearing Date and Time:  March 16, 2023 @ 0900 | Hearing Institution:  CHCF |

Initiating Psychiatrist:
Name and Title (Print):    E. CHICA, MD

### ATTORNEY

If the Department is seeking an emergency petition, you or your attorney have two business days from the date you were served to file a response with the Office of Administrative Hearings. You have been appointed an attorney who has been given a copy of this paperwork. The attorney information is as follows:

| | |
|---|---|
| Attorney Name:  Rodney Simmons | Attorney Address:  10824 Olson Drive, Ste. C126 |
| Attorney Phone:  916-591-1784 | Rancho Cordova, Ca 95670 |

### SERVICE

I declare under penalty of perjury that I delivered a copy of this notice, a copy of the form CDCR MH-7366 "Inmate Rights to Notice - Involuntary Medication", and any related paperwork to the attorney listed above and to the inmate named in this document on the date shown below. In the event of an emergency petition, I further declare that the inmate and Office of Administrative Hearings were served with this notice within 72 hours of the start of involuntary medication.

Person Delivering Petition:
Name and Title (Print):  S. Mora, MCA          Signature: _____   Date: 02/14/2023

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score < 4.0 | ☐ Additional Time | ☐ Patient asked questions | CDCR #:  T45537 |
| ☐ DPH  ☐ DPV  ☐ LD | ☐ Equipment  ☐ SLI | ☐ Patient summed information | Last Name:  VERDUZCO   MI: |
| ☐ DPS  ☐ DNH | ☐ Louder  ☐ Slower | | First Name:  DANIEL |
| ☐ DNS  ☐ DDP | ☐ Basic  ☐ Transcribe | Please check one: | |
| ☒ Not Applicable | ☐ Other* | ☐ Not Reached  ☐ Reached | DOB:  07/25/1980 |
| | | *See chrono/notes | |

4. Comments:  TABE: N/A; NDD

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

DISTRIBUTION: Original: Health Records   Copies: Patient, MCA, patient's attorney, OLA, OAH
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other: 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT A-004

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Response training shall be part of the new employee orientation provided by mental health staff in collaboration with the IST unit at each local institution. New correctional officers shall receive this training at the Basic Correctional Officer Academy.

The suicide prevention and response training shall include the following elements:

- Suicide risk assessment
- Suicide methods awareness
- Interventions for suicidal ideation, threats, gestures, and attempts
- Suicide reporting and reviews
- Mental health evaluations for rules violation reports

Clinical and custody staff shall receive specialized training with respect to their particular roles in responding to self-injurious behaviors, suicide attempts, and suicides.

### D. CLINICAL CARE SERVICES

This subsection addresses the various clinical care services for inmates regarding suicide prevention and response. Included are the assessment of risk for suicide, the utilization of a form for documenting the risk factors, and clinical interventions such as procedures for Suicide Precaution and Suicide Watch, and responses to suicide attempts and to suicide.

Education regarding the methods utilized by inmates when attempting suicide shall be taught as part of the suicide prevention and response training.

Employee strategies for maintaining a safe environment, and for ensuring that other policies and procedures relative to suicide prevention and response, such as regarding medication distribution and inmate-patient compliance, are detailed in the relevant chapters and sections of the complete Inmate Medical Services Program Policies & Procedures.

**Any CDCR employee who becomes aware of an inmate's current suicidal ideation, threats, gestures, self-injurious behaviors or suicide attempts shall immediately notify a member of the health care staff. The inmate shall be placed under direct observation, per local custody operating procedure, until a clinician trained to perform a suicide risk assessment (psychiatrist, psychologist, clinical social worker, primary care physician, nurse practitioner, or RN) conducts a face-to-face evaluation.**

1. **Suicide Risk Assessment**

   All inmates are observed for suicide risk. Suicide risk assessment is critical to successful suicide prevention. Inmate-patients enrolled in the MHSDS shall be regularly monitored

EXHIBIT A - 005

Fire Captains shall be trained in accordance with DOM 52090.6. Training shall include:

- The requirements of PC 832 and chemical agents training as provided at the Academy within 90 days of appointment and prior to performing peace officer duties.
- The CPOAP (3600 work process hours and 24 qualifying months).

**Medical Technical Assistant (MTA)**

MTAs shall complete:

- The requirements of PC 832 and chemical agents training as provided at the Academy within 90 days of appointment and prior to performing peace officer duties.
- The CPOAP (3600 work process hours and 24 qualifying months).

**Officers**

Officers shall complete:

- The Basic Correctional Officer Academy prior to assignment as an Officer.
- The CPOAP (3600 work process hours and 24 qualifying months).

**Youth Correctional Officer, Youth Correctional Counselor, Parole Agent I/Casework Specialist (CWS) shall complete:**

- Basic Correctional Juvenile Academy.
- The CPOAP (3600 work process hours and 24 qualifying months).

**32010.14       Non-Custody Staff Required Annual Training**

**Institutional/Facility Non-Custody Employees**

All institution non-custody employees, at a minimum, shall receive annual training as follows:

- California Public Records Act (CPRA)
- Communicable Disease Prevention
- Court Compliance Training
- EEO/Sexual Harassment Prevention
- Emergency Operations
- Escape Prevention
- Fire and Life Safety
- Information Practices Act (IPA)
- Information Security Awareness (ISA)
- Injury Illness Prevention Program (IIPP)
- Prison Rape Elimination Act (PREA)
- Use of Force
- Other subjects as deemed appropriate by the Associate Director, hiring authority or designee, or any other legal mandates.

**All Headquarters Non-Custody Employees**

All headquarters non-custody employees, at a minimum, shall receive annual training as follows:

- California Public Records Act (CPRA)
- EEO/Sexual Harassment Prevention
- Emergency Operations
- Information Practices Act (IPA)
- Information Security Awareness (ISA)
- Injury Illness Prevention Program (IIPP)
- Other subjects as deemed appropriate by the Associate Director, hiring authority or designee, or any other legal mandates.

**32010.15       Officer, Sergeant, Lieutenant, CCI, Fire Chief, Fire Captain and MTA Required Annual Training**

For the purpose of this section, peace officers include the following classifications: Officer, Sergeant, Lieutenant, CCI, Fire Chief, Fire Captain and MTA.

Peace officer employees shall be provided a minimum of 52 hours of annual training pursuant to the current annual training schedule, approved by the Associate Director, POSED, or designee.

Annual training shall be the primary delivery system for peace officers to maintain compliance with PC 832 and other mandated training or applicable contract language.

Peace officer classifications shall receive annual training as follows:

- Alarm response

- California Public Records Act (CPRA)
- Chemical Agents
- Communicable Disease Prevention
- Court Compliance Training
- EEO/Sexual Harassment Prevention
- Emergency Operations
- Escape Prevention
- Expandable Baton Annual Training (not mandatory for CCI, Fire Chief/Captain, or MTA)
- Fire and Life Safety
- Firearms Requalification (see Section 32010.19.3 Requalification Chart)
- Heat Related Pathologies
- Information Practices Act (IPA)
- Information Security Awareness (ISA)
- Injury Illness Prevention Program (IIPP)
- Lethal Electrified Fence (if applicable)
- Prison Rape Elimination Act (PREA)
- Suicide Prevention
- Tuberculosis Testing/Quiz (TB)
- Use of Force
- Other subjects as deemed appropriate by the Warden, hiring authority or designee, or any other legal mandates.

**DAPO**

All DAPO peace officer classifications, at a minimum, shall receive annual training as follows:

- California Public Records Act (CPRA)
- Cardiopulmonary Resuscitation & First Aid Recertification (CPR/FA)
- Chemical Agents
- Communicable Disease Prevention
- EEO/Sexual Harassment Prevention
- Emergency Operations
- Expandable Baton Annual Training
- Fire and Life Safety
- Firearms Requalification
- Information Practices Act (IPA)
- Information Security Awareness (ISA)
- Injury Illness Prevention Program (IIPP)
- Tuberculosis Testing/Quiz (TB)
- Use of Force
- Other subjects as deemed appropriate by the Director, hiring authority or designee, or any other legal mandates.

All Parole agents assigned to DAPO shall comply with weapons requalification as stated in current DAPO firearms policy. In addition, those who are armed shall fire a diminished light course annually for familiarization and training (not qualification).

All Parole agents assigned to DAPO shall receive training in Parole Agent Safety and Tactics (PAST), in accordance with Bargaining Unit 6, MOU.

**DJJ**

All DJJ peace officer classifications, at a minimum, shall receive annual training as follows:

- Alarm Response
- California Public Records Act (CPRA)
- Cardiopulmonary Resuscitation & First Aid Recertification (CPR/FA)
- Chemical Agents
- Communicable Disease Prevention
- Court Compliance Training
- EEO/Sexual Harassment Prevention
- Emergency Operations
- Escape Prevention
- Expandable Baton Annual Training

*EXHIBIT A-006*

209

| Suicide Prevention and Response | Mental Health Services Delivery System |

involuntary overtime of the medical classifications on the list above, prior to filling these positions with a Correctional Officer.

DEF.'s
(COULD WORK WAS TRAINED) → The employee assigned to provide direct observation shall be appropriately trained regarding this post and the performance of duties related to Suicide Watch.

Observation Documentation

The custody and/or health care staff employee assigned to provide continuous observation during Suicide Watch shall document such observation every 15 minutes on a log sheet.

Custody and health care staff shall document behaviors and activities on a CDCR 114A, *Detention/Segregation Record.*

SHALL MEANS MANDATORY → Nursing staff shall document behavioral checks and the inmate-patients' affect at least every 15 minutes during both Suicide Precaution and Suicide Watch. Nursing checks shall always include visual observation and, when the inmate-patient is awake, shall also include verbal interaction. Nursing staff shall document using CDCR 7212, *Nursing Care Record* (for non-acute care settings), or CDCR 7212A, *Nursing Care Record-Acute Hospital,* (for acute care settings) in the UHR.

Leaving a Post Assignment

• The observer assigned to Suicide Watch shall only vacate the post if immediate attention or assistance is needed in a life-threatening situation, and no other alternative exists.

• A life-threatening situation is defined as a situation in which staff's failure to immediately respond will likely result in serious morbidity or mortality.

• In the event of a life-threatening situation, the staff shall activate a personal alarm in order to summon additional staff to the MHCB area.

• If it becomes necessary for staff assigned to Suicide Watch to leave their post due to a life-threatening situation, they shall request other staff in the vicinity, whenever possible, to provide direct observation coverage of the inmate-patients while away. If no other staff is available, and there is sufficient time, the officer shall contact the Watch Office before responding to the life-threatening situation.

• Any vacating of the post under these circumstances shall be for the minimal time necessary. Once the life-threatening situation has been contained, or there is sufficient staff at the scene to handle the situation, the officer shall immediately return to the Suicide Watch post.

EXHIBIT A-007

| Suicide Prevention and Response | Mental Health Services Delivery System |
|---|---|

Guidelines for clinician-ordered Suicide Watch:

| STATUS | CLOTHING | FURNITURE AND OTHER MATERIALS | BEHAVIORAL CHECKS |
|---|---|---|---|
| SUICIDE WATCH | Safety (no-tear) smock/gown, no ID band on wrist | Remove all furniture. Safety (no-tear) mattress, safety (no-tear) blanket | Continuous observation 15 minute nursing checks |

All institutions shall conduct Suicide Watch observation by direct visual observation. The staff member shall be stationed at the cell door with direct line-of-sight from the observer to the patient. One observer may be responsible for observation of two inmate-patients on Suicide Watch when the staff member can maintain direct line-of-sight observation of both inmate-patients. The staff-observer to inmate-patient ratio shall not exceed one-to-two. Video-monitoring shall never be used as the sole method for observation of any inmate-patient housed on Suicide Watch status, but may be used to supplement direct visual observation.

Some institutions have been approved via memoranda signed by the Directors of the Division of Adult Institutions (DAI) and the DCHCS, to provide one-on-two direct cell-front observation of inmate-patients on Suicide Watch, when the staff member can maintain direct line-of-sight observation of both inmate-patients, unless one-on-one monitoring is ordered by the psychiatrist or psychologist. All other institutions shall provide one-on-one direct cell-front observation.

The assigned observer shall assume a position where continuous direct visual contact with the inmate-patient can be maintained, including when the inmate uses the shower, sink, or toilet.

Suicide Watch posts will be filled using the following order of job classifications:

1. Hospital Aide
2. Certified Nursing Assistant
3. Licensed Psychiatric Technician
4. Licensed Vocational Nurse
5. RN
6. Correctional Officer

It is the responsibility of the Health Care Manager and Warden to ensure that all hiring efforts be exhausted, including offering voluntary overtime and assigning

EXHIBIT A-008

| Suicide Prevention and Response | Mental Health Services Delivery System |

after a second evaluation, mental health clinical staff feel additional hourly checks are required, the inmate shall be readmitted to the MHCB for further stabilization. Custody staff shall maintain a log on CDCR 114A, *Detention/Segregation Record,* of rounds on inmate-patients.

• The local SPR FIT shall regularly audit compliance with the 5-day clinical follow-up and custody wellness check procedure. Audit findings shall be forwarded monthly to the Local MHP Subcommittee.

c.  **Response to Self-Injurious Behaviors and Suicide Attempts**

Self-injurious behaviors cause, or are likely to cause, physical self-injury. A suicide attempt is an intentional act that is deliberately designed to end one's own life. Both are medical emergencies that require immediate and appropriate responses.

Custody Protocol

**In medical emergencies, the primary objective is to preserve life.** All peace officers who respond to a medical emergency are mandated, pursuant to court order, to provide immediate life support, if trained to do so, until medical staff arrives to continue life support measures. All peace officers must carry a personal CPR mouth shield at all times.

The officer must assess and ensure it is reasonably safe to perform life support by effecting the following actions:

• Sound an alarm (a personal alarm or, if one is not issued, an alarm based on local procedures must be used) to summon necessary personnel and/or additional custody personnel.
• Determine and respond appropriately to any exposed bloodborne pathogens.
• Determine and neutralize any significant security threats to self or others including any circumstances causing harm to the involved inmate.
• Initiate life saving measures consistent with training.

The responding peace officer will be required to articulate the decision made regarding immediate life support and actions taken or not taken, including cases where life support is not initiated consistent with training and/or situations which pose a significant threat to the officer or others.

Exhibit A-009



**ROSEN BIEN**
**GALVAN & GRUNFELD** LLP

█████████
San Francisco, California 94105-1738
T: (415) 433-6830 • F: (415) 433-7104
www.rbgg.com

Jessica Winter
Email: █████████

January 29, 2020

<u>VIA ELECTRONIC MAIL ONLY</u>

| PRIVILEGED AND CONFIDENTIAL |
| :---: |
| SUBJECT TO PROTECTIVE ORDERS |

█████████          █████████

CDCR Office of Legal Affairs

Re:   *Coleman v. Newsom*: Plaintiffs' Concerns Regarding Suicide Watch in the
      Inpatient Program at CHCF-Stockton
      Our File No. 0489-03

Dear All:

Plaintiffs have ongoing concerns regarding the performance of suicide watch at the inpatient program at CHCF-Stockton. Recently, Plaintiffs learned that Daniel Verduzco, T45537, was able to amputate a portion of his left ring finger while on suicide watch.

On October 1, 2019, Mr. Verduzco, then a patient at the acute level of care, was on one-to-one suicide watch in the CHCF PIP. *See* Exhibit A, Progress Note-Nurse dated October 2, 2019. During his IDTT earlier that day, Mr. Verduzco informed staff that he "felt like cutting off his finger" and requested that he be placed on suicide watch. *See* Exhibit B, Acute ICF Master Treatment Plan dated October 1, 2019. In response, staff immediately terminated the IDTT, noting that his risk of self-harm was high. *See id.*; Exhibit C, MHPC Inpatient Progress Note dated October 2, 2019. Despite this, Mr. Verduzco states that he was able to, over the course of two hours, cut away the soft tissue of his fingertip with a piece of stapler and snap the bone to remove the digit. His efforts

EXHIBIT A-010

**PRIVILEGED AND CONFIDENTIAL**
███████, et al.
January 29, 2020
Page 2

caused him to moan in pain and went unnoticed by his assigned observer who was reportedly browsing on the computer instead of maintaining a proper line of sight.

This incident represents a continuation of deficiencies with suicide watch at the CHCF PIP. During the Special Masters' tour of the facility in September 2019, a nurse was found asleep while on suicide watch. During the same tour, class members reported, and staff acknowledged, that suicide watch was often performed at a distance from the PIP cells that created a blind spot; class members could take advantage of the blind spot to self-harm undetected. Mr. Verduzco's successful auto-amputation indicates that suicide watch failures continue to be a serious issue at the CHCF PIP. Accordingly, Plaintiffs request an update regarding Defendants' efforts to improve suicide watch at the CHCF PIP.

Was this matter reviewed as a sentinel event? If not, why not? If so, what were the results of the review? Was corrective action taken? If so, what was it? If not, why not? Mr. Verduzco reports that his injury was documented by a member of the Investigative Services Unit (ISU). Have Defendants launched any formal or informal investigations of this incident? Has a root cause analysis been performed? If so, please provide any findings once complete. Was the failure in one-on-one observation otherwise formally or informally addressed? If so, how? If not, why not?

Further, what remedial measures were implemented to improve suicide watch following the incidents described above? Have staff as a whole been formally informed of these incidents and as to why they are unacceptable and inadequate? Were any staff retrained following this incident? Have there been any additional instances of patients self-harming while on suicide watch? If so, please provide a description of the incident(s) and any steps taken to remediate the(ir) cause(s).

/ / /

/ / /

/ / /

/ / /

EXHIBIT A-011

/ / /

/ / /

[3492666.1]

**PRIVILEGED AND CONFIDENTIAL**
█████████, et al.
January 29, 2020
Page 3


We appreciate and look forward to your anticipated prompt response.


Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Jessica Winter*

By:   Jessica Winter

~~JLW:MVL~~
Attachments: Exhibits A-C
cc:      *Coleman* Special Master Team

         CDCR OLA Mailbox
         *Coleman* Co-counsel



EXHIBIT A-012


[3492666.1]

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2
CDCR 602 HC (Rev. 10/18)  DEEMED NON-URGENT ON 05/13/2020 ; I MAILED OUT THE FIRST DIGIT ON 05/25/2020 .

| STAFF USE ONLY | Expedited? ☐ Yes ☑ No | Tracking #: | CHCF HC 20001234 |
|---|---|---|---|

**M. LOWE, RN**

Staff Name and Title (Print)     Signature     5/13/2020  Date

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 4, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): VERDUZCO , D | CDCR #: T-45537 | Unit/Cell #: A2A 105 |
|---|---|---|

| SECTION A: | Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy: |
|---|---|

IN LATE FEBRUARY 2020 , MY DEPRESSION BEGAN TO DECLINE AND I ISOLATED MYSELF . I STOPPED

PARTICIPATING IN THERAPY SESSIONS AND ALL ACTIVITY OUTSIDE MY CELL . ON MARCH 04, 2020, I

RECEIVED SOME UNSETTLING NEWS REGARDING A STAFF COMPLAINT I HAD PENDING AT PBSP. I WAS

NOTIFIED THAT MY ALLEGATIONS AGAINST THE EMPLOYEE IN THAT COMPLAINT COULD NOT BE SUBSTANTIATED

WHICH DEVASTATED ME BECAUSE IT FELT LIKE I DID NOT MATTER . MY DEPRESSION SPIRALED AND I JUST

STOPPED CARING , THIS MANIFESTED INTO LOW SELF-ESTEEM AND NO SELF-WORTH . I BEGAN TO

EXPERIENCE INTENSE THOUGHTS OF SELF-HARM WHICH I WAS ABLE TO SUPPRESS ON MOST DAYS , I FELT

INVISIBLE , ON SUNDAY APRIL 12. 2020 , I FINALLY COULD NOT TAKE IT NO MORE AND I CUT THE TIP

OF MY FINGER OFF BELOW THE NAIL , SNAPPING THE BONE MYSELF . I MADE NO EFFORT TO HIDE MYSELF ,

I DID NOT CARE WHO SEEN ME . I ACTUALLY DON'T EVEN REMEMBER THE EXACT TIME , I JUST KNOW IT

WAS EASTER SUNDAY . THE PAIN WAS SO INTENSE THAT IT'S ALL I REALLY REMEMBER FROM THAT

Supporting Documents Attached. Refer to CCR 3999.227  ☐ Yes ☑ No

| Grievant Signature: | Date Submitted: MAY 10 , 2020 |
|---|---|

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

| SECTION B: | HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☑ Yes ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):  Date: _____  Date: _____

☐ Withdrawn (see section E)

☑ Accepted    Assigned To: MH    Title: CMH    Date Assigned: 7/10/2020   Date Due: 7/16/2020

Interview Conducted? ☑ Yes ☐ No   Date of Interview: 7/10/2020   Interview Location: ON the UNIT

Interviewer Name and Title (print): H. PEARSON, PSYD, Supervisor  Sr. Psychologist  Signature: _____ Date: 7/16/20

Reviewing Authority Name and Title (print): S. AYCE, MD, MPH, CCHP, PEHS, CEO  Signature: _____  Y · Rao Date: 7/15/20

| Disposition: See attached letter | ☐ Intervention | ☑ No Intervention |
|---|---|---|

HCGO Use Only: Date closed and mailed/delivered to grievant:  JUL 16 2020

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check on: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments: _____

RECEIVED CHCF MAY 1 2 2020   COMPLETED CHCF STAFF USE ONLY  RECEIVED CHCF JUL 16 2020   AUG 0 3 2020  HCGO   HCGO   STAFF USE ONLY   COMPLETED HCGO OCT 13 2020

EXHIBIT A-014

---

**STAFF USE ONLY**

Tracking #:

CHCF HC 20001234

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| VERDUZCO, D | T-45537 | A2A 105 |

**SECTION A** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

DAY.  THIS WAS A FORESEEABLE INCIDENT BECAUSE I HAD COMPLETELY SHUT DOWN. I STOPPED

SHAVING, I WAS NOT MED COMPLIANT ON AND OFF, AND VERY DEPRESSED. ALL THE SIGNS WERE

OBVIOUS.  HOW CAN SOMEONE JUST FADE INTO THE BACKGROUND IN AN ACUTE SETTING. THE SYSTEM

IS FLAWED AND NEEDS TO CHANGE.  THE FAILURE TO HOLD STAFF ACCOUNTABLE, SETS THE TONE, AND

STAFF FEEL BEYOND REPROACH.  SUPERVISORS DON'T CARE EITHER, ON MAY 02. 2020, I

ADDRESSED THIS INCIDENT WITH (SRN) C. SEAL AND I TOLD HER HOW DOES SHIT LIKE THIS

HAPPEN IN AN ACUTE ACUTE SETTING, SHE SHOWED NO CONCERN.

ACTION REQUESTED; FOR FULL COMPLIANCE OF CCR. 3391 (a), 3271, 3004 (a), 3265, MHSDS VOL12 CH.10

PAGES  7, 10, 21, 18.  A JURY TRIAL SHOULD THIS NOT BE RESOLVED ADMINISTRATIVELY.

Grievant Signature: _____                                    Date Submitted: MAY 10, 2020

**SECTION B** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name (Print): _____         Signature: _____         Date: _____

RECEIVED
CHCF
MAY 12 2020
HCGO

COMPLETED
CHCF
JUL 16 2020
HCGO

RECEIVED
HCCAB
AUG 03 2020
OCT 13 2020

STAFF USE ONLY         EXHIBIT A-015

EXHIBIT B

PL.S MOT. FOR PRELIMINARY INJUNCTION

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL VERDUZCO,                                    CASE No. 2:22-CV-0569-TLN-DMC-P

      PLAINTIFF

vs.                                                 PL. SEEKS A 7-DAY EXTENSION OF TIME TO FILE THE FIRST AMEND. COMPL.

B. JAO., ET. AL.,                                   "FAC". PL. SEEKS A PRELIMINARY INJUNCTION TO CEASE UNCONSTITUTIONAL

      RETALIATION THATS PSYCHOLOGICAL TORTURE AIMED AT DRIVING PL. TO SUICH

      OR SELF-HARM TO SILENCE PL.

      RULE 6 & 65, F.R.C.P. & LOCAL RULE 144

      JUDGE: DENNIS M. COTA, U.S. MAGISTRATE JUDGE

### STATEMENT OF FACTS

1.   ON NOV. 18, 2022 THE DISTRICT COURT SUA SPONTE GRANTED LEAVE TO FILE PL'S FIRST AMENDED COMPLAINT "FAC". ON DEC. 15, 2022 PL. MOVED FOR A (90) DAY EXTENSION OF TIME, ECF No. 13. THE REQUEST WAS GRANTED IN PART AND THE ORDER WAS SIGNED DEC. 23, 2022, ECF No. 14. MOVING THE DEADLINE TO FEB. 21, 2023. PL. INTENDS TO MEET THAT DEADLINE BY GIVING PL'S "FAC" TO PRISON STAFF ON FEB. 20, 2023 FOR MAILING IN "LEGAL MAIL" BUT DUE TO UNFORESEEN CIRCUMSTANCES IN ARGUMENT III PL. HAS ASKED IT BE EXTENDED TO FEB. 28, 2023.

2.   "PRO SE PLEADINGS DEEMED FILED ON THE DATE PLACED IN 'LEGAL MAILBOX' NOT DATE OF RECEIPT BY CT. CLERK", DILS V. SMALL, 260 F. 3d. 984 (9ᵗʰ CIR. 2001). "PRISON MAILBOX RULE, APPLIES TO PRO SE §1983 CLAIMS", SULIK V. TANEY COUNTY, 316 F. 3d. 813 (8ᵗʰ CIR. 2003). CERTAIN CIRCUMSTANCES ARE BEYOND PL'S CONTROL. (CHCF) MAILROOM STAFF D. POTTS OBSTRUCT WITH THE DELIVERY OF PL'S "LEGAL MAIL". GRIEVANCE STAFF AT (CHCF) DESTROY "LEGAL MAIL" WITH APPEALS ENCLOSED THEREIN. A CLAIM PL. CAN PROVE WITH 100% CERTAINTY. IT HAS OCCURED OVER SIX TIMES. (CHCF) IS A CAMERA FACILITY, PL. HAS RECIEPTS AND LEGAL MAIL LOG SHEETS SIGNED BY OFFICER'S, AND THE LEGAL MAIL IS ELECTRONICALLY RECORDED IN PL'S CDC 119 LEGAL MAIL HISTORY LOG. DESTRUCTION OF LEGAL MAIL IN U.S. MAIL THAT CONTAINS APPEALS IS UNCONSTITUTIONAL AND CRIMINAL, U.S. CONST., 1ˢᵗ AMEND. & TIT. 18 U.S.C. §1702. PL'S ACTUAL DEADLINE IS FEB. 21, 2023 BUT DUE TO POTENTIAL FOULPLAY PL. SEEKS A 7-DAY EXTENSION OF UP TO AND INCLUDING FEB. 28, 2023 TO FILE PL'S "FAC".

1    PL.'S AMENDED COMPLAINT WILL RAISE CONTINUED CONSTITUTIONAL VIOLATIONS AT (CHCF) THAT REMAIN ONGOING AND ARE INTERTWINED

2    WITH CRIMINAL CONDUCT TO DEPRIVE PL. OF CONSTITUTIONAL RIGHTS AND CONCEAL THE DEPRIVATION OF THOSE RIGHTS WITH UNLAWFUL

3    CONDUCT AS RECENTLY AS JAN. 28, 2023 (16) DAYS AGO

4

5        3.    "COURTS MUST, WHEN POSSIBLE INTERPRET EACH WORD OF A LAW, SO AS TO GIVE IT MEANINGFUL EFFECT", SILVIERA V. LOCKER, 312 F. 3d.

6    1052 (9th CIR 2002).    ON JUNE 10, 2022 PL. ACQUIRED IRREFUTABLE EVIDENCE THAT CDCR STAFF AT (CHCF) AND (PBSP) CRIMINALLY FALSIFIED INVESTIGATION

7    RECORDS IN VIOLATION OF CAL.PEN.COD. § 118.1 (a) ; § 132 ; § 134 ; AND CDCR (c) (a) TO DEPRIVE PL. EQUAL PROTECTION OF LAW AND CONCEAL

8    UNCONSTITUTIONAL / CRIMINAL SEXUAL ABUSE OF PL. BY A CDCR PSYCHOLOGIST. CRIMINAL VIOLATIONS OF CAL.PEN.COD. § 118.1 (a) ; § 134 ; § 122 CAN

9    BE PROSECUTED WHEN DISCOVERED, CAL.PEN. COD. § 803 (c) (a). THUS, THE STATE AND STATE AGENTS AT HEADQUARTERS AND AT (CHCF) ARE RETALIATING

10   AGAINST PL. TO SILENCE PL.

11

12       4.    ON JUNE 22, 2022 PL. FILED A STAFF COMPLAINT ASKING TO BE INTERVIEWED BY THE OFFICE OF INTERNAL AFFAIRS (OIA) TO REPORT

13   THE UNCONSTITUTIONAL VIOLATIONS THAT MORPHED INTO FELONIOUS CONDUCT UNDER COLOR OF LAW. THE APPEAL WAS ASSIGNED HEALTH CARE LOG #

14   CHCF-HC-22001253, SEE EX. A-004 ; A-005.   LOG # CHCF-HC-22001253 WAS PROCESSED AS ROUTINE, CONVERTED TO HEALTH CARE, AND REJECTED

15   TO RETALIATE AGAINST PL. AND CHILL PL.'S 1st AMEND RIGHTS.   THEN, AN UNIDENTIFIED EMPLOYEE FALSIFIED INSTITUTIONAL RECORDS THAT CAN BE VIEWED

16   BY THE (OIG) TO SHOW LOG # CHCF-HC-22001253 IS AGAINST A NURSE OVER A DISAGREEMENT, SEE AUG. 09, 2022 LETTER, A-006. THIS IS CRIMINAL

17   FALSIFICATION TO DEPRIVE PL. CONSTITUTIONAL RIGHTS.   PL. DID NOT USE HEALTH CARE FORMS.  PL.'S APPEAL SHOULD HAVE BEEN REFERED FOR EXAMINATION

18   i.e. A STAFF MISCONDUCT INVESTIGATION PER CAL.COD. REG. TIT.15 § 3483 (a) (a).  SEE ALSO: TIT.15 § 3486 (a)(b)(a) : "STAFF MISCONDUCT 'SHALL' BE

19   THOROUGHLY INVESTIGATED, DISCIPLINE IMPOSED, OR REFERED FOR CRIMINAL PROSECUTION."  "SHALL" MEANS MANDATORY, CCR. TIT. 15 § 3000.5 (c).

20

21       5.    PL. RESUBMITTED LOG # CHCF-HC-22001253 ON AUG. 25, 2022 IN "LEGAL MAIL", PER CCR. TIT.15 § 3141 (c)(8). SEE LEGAL MAIL LOG

22   SHEET SIGNED BY STAFF ON AUG. 25, 2022, EX. A-007. SEE CDCR 22 FORM RECIEPT SIGNED BY STAFF ON AUG. 25, 2022, EX. A-008.  IT WAS ELECTRONICALLY

23   RECORDED ON PL.'S CDC 119 ON AUG. 26, 2022, SEE EX. A-009.  ANTICIPATING CORRUPTION PL. RESUBMITTED AN IDENTICAL COPY OF LOG # CHCF-HC-

24   22001253 IN "LEGAL MAIL" ON SEP. 01, 2022.  SEE LEGAL MAIL LOG SHEET SIGNED BY STAFF ON 09/01/22, EX. A-010.  SEE CDCR 22 FORM SIGNED BY STAFF ON

25   SEP. 01, 2022, EX. A-011. IT WAS ELECTRONICALLY RECORDED ON PL.'S CDC 119 ON SEP. 02, 2022, EX. A-012.  EACH ARTICLE OF LEGAL MAIL IN U.S. MAIL WITH

26   LOG # CHCF-HC-22001253 ARRIVED TO (CHCF) I/m APPEALS OFFICE BY WAS DESTROYED AND VANISHED. APPEALS STAFF AT (CHCF) WONT EVEN REPLY TO

27   PL.'S REQUEST SENT IN "LEGAL MAIL" INQUIRING ABOUT LOG # CHCF-HC-22001253. DESTRUCTION OF LEGAL MAIL W/ GRIEVANCES IS UNCONSTITUTIONAL

28   AND CRIMINAL. U.S. CONST. 1st AMEND. ; TIT. 18 U.S.C.S 1702. "LOSS OF FIRST AMEND. FREEDOMS, FOR EVEN MINIMAL PERIODS, UNEQUIVOCALLY

1  CONSTITUTES IRREPARABLE INJURY". ELROD V. BURNS, 427 U.S. 347, 373, S.CT. 2673 49 L. Ed. 2d 547 (1976).   THE DEPTH OF UNCONSTITUTIONAL

2  AND CRIMINAL CORRUPTION TO EXTINGUISH PL'S CONSTITUTIONAL RIGHTS DOES NOT END THERE, SEE E-MAIL TO (CHCF) WARDEN GENA JONES

3  DATED AUG. 31, 2022, EX. A-001 THRU A-003.   "THE COURT DEFINED CLEAR AND CONVINCING EVIDENCE AS FACTUAL CONTENTIONS WHICH ARE

4  "HIGHLY PROBABLE". COLORADO V. NEW MEXICO, 467 U.S. 310, 316, 104 S.CT. 33, 81 L. Ed. 2d 247 (1984).

5

6       6.   PL. FILED A GRIEVANCE ARGUING UNCONSTITUTIONAL CORRUPTION BY WARDEN R. BELL, IT WAS ASSIGNED LOG # 283564 BUT REJECTED

7  ON AUG. 12, 2022 TO PREVENT AN INTERNAL AFFAIRS INVESTIGATION, SEE EX. B-013.   ON SEP. 06, 2022 PL. SUBMITTED LOG # 283564 TO HEADQUARTERS

8  DISPUTING THE REJECTION, SEE EX. B-014.   ON NOV. 10, 2022 LOG # 283564 WAS GRANTED AUTHORIZING A INVESTIGATION UNDER A NEW LOG #,

9  THE NEW LOG # ASSIGNED IS # 337999, SEE EX. B-015.   LOG # 337999 WAS NOT REFERED FOR EXAMINATION PER CCR. TIT. 15 § 3483 (9)(9) TO

10 PREVENT AN (OIA) INVESTIGATION.   REFERED FOR EXAMINATION IS THE OFFICIAL PROCEDURE FOR STAFF MISCONDUCT INVESTIGATIONS, ADDITIONALLY,

11 THE (LDI) INVESTIGATOR "SHALL' BE AT LEAST ONE RANK ABOVE WARDEN R. BELL. CCR. TIT. 15 § 3486.2 (C)(2).   SINCE LOG # 337999 IS AGAINST

12 WARDEN R. BELL AND THE APPEAL'S COORDINATOR THAT CONSPIRED WITH R. BELL, WARDEN R. BELL CANNOT PARTICIPATE IN LOG # 337999,

13 CCR. TIT. 15 § 3483 (f). -- ON JAN. 28, 2023 WARDEN R. BELL WAS THE REVIEWING AUTHORITY THAT DENIED LOG # 337999, SEE EX. B-016;

14 B-017.   WARDEN R. BELL ACTED AS THE REVIEWING AUTHORITY DURING A SHAM INVESTIGATION INTO WARDEN R. BELL'S OWN

15 UNCONSTITUTIONAL/CRIMINAL CONDUCT AND CLEARED HIMSELF.  R. BELL IS OF EQUAL RANK OF HIMSELF i.e., A WARDEN, ONLY A CHIEF DEPUTY

16 COUNSEL IS ABOVE THE RANK OF WARDEN.  THIS IS UNCONSTITUTIONAL FIRST AMEND. RETALIATION AND CRIMINAL.  WARDEN R. BELL COULD NOT

17 ACHIEVE THIS CRIMINAL FEAT TO DEPRIVE PL. OF CONSTITUTIONAL RIGHTS WITHOUT A COORDINATED EFFORT WITH OTHER STATE AGENTS. "TO

18 STATE A CLAIM FOR CONSPIRACY, PLAINTIFF MUST PLEAD AN AGREEMENT TO PARTICIPATE IN AN UNLAWFUL OVERT ACT THAT IS PERFORMED IN

19 FURTHERANCE OF AN AGREEMENT," FACEBOOK, INC. V. MAXBOUNTY, INC., 2011 WL 4346514 (N.D. CAL. 2011).   " 'DIRECT EVIDENCE OF A

20 CONSPIRACY.' MUST BE EVIDENCE THAT'S EXPLICIT AND REQUIRES NO INFERENCES TO ESTABLISH THE PROPOSITION OR CONCLUSION BEING

21 ASSERTED", CITY OF TUOLUMNE V. SONORA COMM. HOSP., 236 F. 3d. 1148, 1155, (9TH CIR. 2001).

22

23      7.   A BLATANT CIVIL/CRIMINAL CONSPIRACY IS AT PLAY TO DEPRIVE PL. OF CONSTITUTIONAL RIGHTS AND CONCEAL THE DEPRIVATION

24 OF THOSE RIGHTS THRU UNLAWFUL CONDUCT.  (CDCR) SECRETARY JEFF MACOMBER AND ATTORNEY GENERAL ROB BONTA HAVE ABSOLUTE

25 KNOWLEDGE VIA A MULTITUDE OF E-MAILS FROM PL'S PRIMARY NEXT OF KIN, HAD MACOMBER OR BONTA TAKEN ACTION IT WOULD

26 HAVE BEEN IMPOSSIBLE FOR WARDEN R. BELL TO COMMIT UNCONSTITUTIONAL VIOLATIONS (16) DAYS AGO ON JAN. 28, 2023.  PL.

27 STATED IN LOG # 283564 THAT WARDEN R. BELL HAS PL'S APPEALS ASSIGNED/ROUTED TO R. BELL TO CONCEAL DEPRIVATIONS OF PL'S CIVIL RIGHTS,

28 EX. B-013.  A SHAM UNOFFICIAL INVESTIGATION WAS GRANTED AGAINST WARDEN R. BELL, EX. B-014; B-015.  THE ALLEGED INVESTIGATION AGAINST

1  WARDEN R. BELL WAS ASSIGNED ROUTINE LOG # 337999 AND NOT REFERED FOR EXAMINATION WHICH IS THE PROCEDURE FOR STAFF MISCONDUCT

2  CLAIMS. CAL. GOD. REG. TIT. 15 § 3483 (9)(9). WARREN R. BELL HAD LOG # 337999 ASSIGNED TO HIMSELF AS REVIEWING AUTHORITY AND DENIED IT

3  CLEARING HIMSELF. EX. B-016; B-017. THE PRECISE UNCONSTITUTIONAL CORRUPTION/FELONIOUS CONDUCT PL. IS ADAMANT IS OCCURING TO VIOLATE

4  HIS CIVIL RIGHT. THE DISTRICT COURT CANNOT IGNORE BLATANT CONSTITUTIONAL/CRIMINAL VIOLATIONS. THIS IS 1ST AMEND. RETALIATION. ITS A

5  FELONY TO FALSIFY A INVESTIGATION RECORD/DOCUMENT. CAL. PEN. COD. §118.1 (8); § 132; § 134. SEE ALSO; TIT. 18 U.S.C. § 1001 (8)(1) (CONCEALMENT):

6  "APPLIES TO ANYONE WHO FALSIFIES, CONCEALS, OR COVERS UP ANY TRICK, SCHEME, OR DEVICE, A MATERIAL FACT". "TO PROVE CONCEALMENT UNDER SUB. § 1001 (8)(1) THE

7  PROSECUTOR MUST PROVE THE EXISTENCE OF A DUTY OR LEGAL OBLIGATION NOT TO CONCEAL". U.S. V. WHITE EAGLE. 721 F. 3d. 1108, 111-118 (9TH CIR. 2013). " PRISONER'S

8  RETALIATION CLAIM STATED WHEN OFFICIALS EFFECTIVELY 'CHILLED' HIS 1ST AMEND. RIGHT TO FILE PRISON GRIEVANCES; SUFFICIENT UNDER § 1983",

9  BRUCE V. YLST, 351 F. 3d. 1283 (9TH CIR. 2003). "1ST AMEND. PROTECTS THE PURSUANCE OF GRIEVANCES", DAVIS V. GOORD, 320 F. 3d. 346 (2ND CIR. 2003).

10

11  8.  PL. DOES NOT RAISE SEXUAL ABUSE IN THE PRESENT CASE BUT THERE IS A NEXUS TO THE SEXUAL ABUSE AND CLAIMS RAISED HEREIN. (CDCR)

12  PSYCHOLOGIST HANNAH E. BUSH SEXUALLY ABUSED PL. WHILE TREATING PL.'S SUICIDALITY. BUSH ADMITS TO UNCONSTITUTIONAL SEXUAL ABUSE THAT COULD

13  HAVE ONLY OCCURED AT THERAPY SESSIONS. EX. C-018. BUSH MANIPULATED PL. TO CUT OFF HIS FINGER WHILE TREATING HIS SUICIDALITY BUSH ADMITS THIS

14  IN TWO LETTERS. EX. C-019; C-020. BUSH ADMITS PL. WAS SUICIDAL. THEY WERE IN AN ILLEGAL UNCONSTITUTIONAL RELATIONSHIP AND BUSH DID NOT WANT PL.

15  TO TRANSFER TO CONTINUE THE UNCONSTITUTIONAL SEXUAL VICTIMIZATION OF PL.; BUSHS MENTAL HEALTH PATIENT. EX. C-021. "PHYSICAL EVIDENCE INCLUDES A

16  PERSONS HANDWRITING". U.S. V. VELARDE-GOMEZ, 269 F. 3d. 1023 (9TH CIR. 2001). THERAPY NEVER INCLUDES SEXUAL BEHAVIOR. EX. C-022; C-023. PL. WAS

17  GROOMED. EX. C-024.

18

19  9.  ON MARCH 04, 2020 PL. WAS NOTIFIED AT (CHCF) THAT BUSH WAS CLEARED OF ALL CLAIMS AGAINST BUSH BY PL. THAT TRIGGERED TWO CLAIMS

20  THAT IMMEDIATELY FOLLOWED THAT NEWS. PL. ENTERED PSYCHOLOGICAL DECLINE AND DECOMPENSATED WHILE IN A MENTAL HEALTH FACILITY. CUT OFF THE

21  TIP OF HIS FINGER AND SNAPPED THE BONE HIMSELF WHILE IN A STATE OF DECOMPENSATION. PL. WAS NOT ON SUICIDE WATCH BUT AT SOME TIME PL.

22  SHOWED HIS HAND WITH THE MISSING DIGIT TO NURSE K. GILL WHOM WALKED AWAY. PL. THEN FILED A HEALTH CARE APPEAL STATING PL. IS INDIVISIBLE

23  AND DESCRIBED IN DETAIL HOW HE CUT OFF HIS FINGER SNAPPED THE BONE AND TOLD K. GILL WHO SHOWED NO CONCERN. PL.'S APPEAL WAS

24  ASSIGNED LOG # CHCF-HC-20001234 AND REVIEWED BY (CHCF) NURSE M. LOWE WHOM DETERMINED IT WAS NOT URGENT i.e., NOT AN EMERGENCY,

25  SEE LOG # CHCF-HC-20001234. EX. D-025; D-026. THUS, NO 7219 INJURY ASSESSMENT WAS PERFORMED. PL. WAS LEFT TO HIS OWN DETRIMENT

26  IN PSYCHOLOGICAL DECOMPENSATION AND CUT OFF A SECOND FINGER TIP (12) DAYS LATER. PL. MAILED BOTH DIGITS OUT IN LEGAL MAIL ON

27  SEPARATE DATES BEGGING FOR HELP. ONCE THE DECOMPOSED FINGER TIPS ARRIVED TO THE (OIG), A 7219 INJURY ASSESSMENT WAS DONE AND PL.

28  HAD (2) MISSING FINGER TIPS.

4

10.   On April 18, 2022  (CHCF) Sgt. J. Brunner endorsed self-mutilation of PL. and told PL., "I don't give a f#@k if you cut your fingers off", "I don't give a f#@k if you cut your head off and mail it out". Multiple staff witnessed it and Sgt. J. Brunner denied it. PL. filed appeal Log # 250224 over it on April 24, 2022, see Ex. E-D27; E-D28. During the inquiry staff did not want to admit witnessing it, however, one officer with integrity would not lie and said the truth which substantiated the allegation. Prior to Aug. 18, 2021 PL. had never interacted with Sgt. J. Brunner, Brunners immediate statements suggest the Brunner knew PL. cut off fingers while at (CHCF) and mailed them out. The officer that did not compromise his integrity was called a snitch. PL. has not been provided the finding which will state "substantiated" or "unsubstantiated". PL. knows it was substantiated and believes (CHCF) is allowing the one year statutute of limitation to impose employee discipline to expire so (CHCF) Sgt. J. Brunner cannot be disciplined which is retalitory to deprive PL. an effective appeal remedy. A guard informed PL. that Sgt. J. Brunner was asking guards to lie for him about the April 18, 2022 incident. PL. filed a complaint within 24 hours against Brunner for asking guards to lie, the grievance was destroyed. Surmising this PL. resubmitted an identical copy within time constraints, it was destroyed too when there is video footage of PL. depositing it into the locked 'ln Appeals Box. PL. then started filing appeals in "legal mail" (CHCF) appeals staff simply destroyed the legal mail sent in U.S. mail services.

ARGUMENT II

PL. is not required to demonstrate a likelihood of success on each claim for injunction relief only a likelihood on some unconstitutional claims and irreparable injury without injunction relief

II.

"1st Amend. deprivations, regardless of how short the duration, constitute irreparable injury", Elrod v. Burns, 427 U.S. 347, 96 S.Ct 2673, 49 L.Ed. 547 (1976). "A PL. is required to show an irreparable injury as a prerequisite for obtaining injunctive relief", Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed. 2d 566 (1974). PL. has provided clear and convincing evidence that "legal mail" with appeals is destroyed, evidence that headquarters staff falsified loggings that can be viewed by the (oig) to decieve the (oig) and conceal deprivation of PL.'s constitutional rights. HIPPA confidentially restricts access to health care records so some of PL.'s appeals reporting corruption are converted to health care directed to medical so they are hidden under disguise of HIPPA and rejected. These are overt acts to deprive PL. of constitutional rights, conceal those deprivations through unlawful acts in the furtherance of a civil criminal conspiracy. As recent as Jan. 25, 2023 Warden R. Bell had a inquiry alleging feldivious conduct by R. Bell, assigned to himself, acted as the reviewing authority against himself, and cleared himself (R. Bell), Ex. B-D13 thru B-017. Def.'s cannot provide evidence to refute these claims. Def.'s cannot dispute that PL. cut off a finger tip, filed a grievance describing it, no action was taken, PL. cut off another finger, mailed both out, and the (oig) told (CHCF) they recieved the fingers. (CHCF) nurse M. Lowe stated that

1  PL'S APPEAL REPORTING THE AUTO-AMPUTATION IS NOT URGENT. EX. D-025 ; D-026 . THIS DOES NOT ADDRESS THE TOTALITY OF PL'S LEGAL MAIL

2  DESTROYED AT (CHCF) THAT WILL BE RAISED IN THE FIRST AMENDED COMPLAINT .

3

4      12.     THE BOMBARDMENT OF CORDINATED RETALIATION IS DESIGNED AS PSYCHOLOGICAL TORTURE TO INDUCE THOUGHTS OF SUICIDE AND

5  SELF HARM . ITS HAVING THE DESIRED EFFECT . PL. CAN SUPPRESS THE URGES ON MOST DAYS BUT IS REACHING HIS PSYCHOLOGICAL THRESHOLD

6  AND CANNOT CONTROL OR PREDICT WHEN THOUGHTS WILL MANIFEST INTO SELF-HARM BEHAVIOR . PL'S EVIDENCE WILL SEND MULTIPLE STAFF TO PRISON

7  WHEN INCORRUPTIABLE FEDERAL PROSECUTORS GET INVOLVED THIS WILL NOT REMAIN HIDDEN FOREVER . THE NOTION THAT PL. WILL NOT BE MURDERED

8  OR SET UP TO BE MURDERED IS NOT FAR FETCHED , SEE EX. F-029 ; F-030 . PL. PLEADS WITH THIS COURT FOR INJUNCTIVE RELIEF TO PREVENT

9  CONTINUED RETALITORY HARM AND CONSTITUTIONAL VIOLATIONS THAT CANNOT BE REVERSED ONCE COMMITTED BUT CAN BE PREVENTED IF

10  RELIEF IS GRANTED AND (CDCR) KNOWS THE COURT IS WATCHING . THE REALITY OF PL'S PLIGHT HAS DEPRIVED HIM OF CIVIL LIBERTIES .

11

12      13.     PL. IS A PATIENT ADMITTED INTO A MENTAL HEALTH FACILITY AT THE PSYCHIATRICT INPATIENT PROGRAM (PIP) LEVEL OF CARE . "JUST

13  AS A SERIOUS MEDICAL NEED MAY EXIST FOR A PHYSICAL CONDITION , SO MAY A SERIOUS NEED EXIST FOR PSYCHOLOGICAL OR PSYCHIATRIC TREATMENT ;

14  DOMINO V. TEXAS DEPT. OF CRIMINAL JUSTICE, 239 F. 3d. 752 (5T CIR. 2001) . SEE ALSO ; U.S. US. EX REL SCHUSTER VS. HEROLD , 410 F. 2d. 1070

15  1084 (2nd CIR. 1969) : "HOLDING THAT BEFORE A PRISONER MAY BE TRANSFERED TO A MENTAL HEALTH FACILITY, IT MUST BE SHOWN THAT HE SUFFERS

16  FROM A MENTAL DISEASE THAT REQUIRES CARE AND TREATMENT ." PATIENTS ADMITTED INTO (PIP) ARE LEGALLY DEFINED AS DISABLED FOR

17  MENTAL HEALTH LEVEL OF CARE , CAL. COD. REG. TIT. 15 § 3486 (b)(13) .     "STATE REGULATIONS INCLUDING PRISON REGULATIONS HAVE THE FORCE

18  OF LAW"; MADRID V. GOMES , 889 F. SUPP. 1146 , 1127 AT f.n. 219 (N.D. CAL. 1995) . PL. HAS CUT OFF THREE FINGER TIPS AT (CHCF) SNAPPING

19  THE BONE ON THREE OCCASSIONS HIMSELF .

20

21  "THERE IS A OBLIGATION WHERE THE PETITIONER IS PRO SE , PARTICULARLY IN CIVIL RIGHT CASES , TO CONSTRUE THE PLEADINGS LIBERALLY AND TO AFFORD

22  THE PETITIONER THE BENEF IT OF ANY DOUBT "; BYRD V. PHOENIX POLICE DEPT., 885 F. 3d. 639 , 641 (9th CIR. 2018)

23                              ARGUMENT III

24      ON FEBRUARY 14, 2023 PL. WAS SERVED NOTICE OF A CAL. PEN. COD § 2602 PETITION DECLARING THAT PETITIONER SUFFERS

25  FROM A SERIOUS MENTAL ILLENESS , IS A DANGER TO HIMSELF , AND IS SCHEDULED TO APPEAR BEFORE AN ADMINISTRATIVE LAW

26  JUDGE ON MARCH 23, 2023 .

27

28      14.     THE DECLARATION IN SUPPORT OF THE CAL. PEN. COD. § 2602 PETITION IT DECLARES THAT PL. HAS A SERIOUS MENTAL ILLEGAL AND IS

1  A DANGER TO HIMSELF, SEE NO. 5, EX. G-033.  THE PETITION, HOWEVER, OMITS THAT PL. WAS REPEATEDLY SEXUALLY ABUSED BY (CDCR)

2  PSYCHOLOGIST HANNAH E. BUSH WHICH MULTIPLE MENTAL HEALTH STAFF AT (CHCF) HAVE ABSOLUTE KNOWLEDGE THAT IT OCCURED, SEE EX.

3  A-001 THRU A-003. THE PETITION OMITS THAT BUSH MANIPULATED PL. TO CUT OFF A FINGER MULTIPLE (CHCF) MENTAL HEALTH HAVE SEEN

4  DIRECT EVIDENCE IN BUSHS PENMANSHIP THAT PROVE IT BEYOND ANY DOUBT, SEE EX. C-019 . THE AUTHOR OF THE PETITION HAS SEEN EX. C-019

5  HERETO.  THE PETITION OMITS THE FACT THAT ALL THE UNCONSTITUTIONAL RETALIATION BY (CHCF), (PBSP), AND HEADQUARTER'S STAFF IS A

6  SIGNIFICANT CONTRIBUTING FACTOR TO PL.'S DECLINE AND DETERIORATING MENTAL HEALTH.  ON JAN. 25, 2023 AT 4:30 P.M.  PL. GAVE

7  PSYCHOLOGIST D. HARRISON A GA-22 ¹/m REQUEST FOR INTERVIEW FORM EXPRESSING HOW PL.'S CLINICIANS AND SUPERVISOR'S ARE

8  ELECTING TO REMAIN SILENT BY-STANDER'S, SEE EX. G-036; G-037.   PL. HAD THE GA-22 FORM NOTARIZED ON FEB. 03, 2023, EX. G-035.

9

10       15.     WHAT'S MOST TROUBLING IS THAT THE PETITION MISREPRESENTS MATERIAL FACTS AT ISSUE IN THIS CASE IN AN ENDEAVOR TO DOWN

11  PLAY BLATANT 8ᵀᴴ AMENDMENT CONSTITUTIONAL VIOLATIONS . THE PETITION ACKNOWLEDGES THAT PL. CUT OFF A FINGER TIP IN APRIL 2020 AT

12  (CHCF), SEE SECTION (C) LINE 6, EX. G-032. THAT'S AN ADMISSION THAT (CHCF) HAD ABSOLUTE KNOWLEDGE THAT PL. CUT OFF THE TIP OF HIS

13  FINGER WHICH WAS OVER AN INCH IN LENGTH IN APRIL 2020 YET PL. WAS NOT ELEVATED TO SUICIDE WATCH , NO INJURY ASSESSMENT WAS

14  COMPLETED IN APRIL 2020 DOCUMENTING THE MISSING DIGIT, NO CELL SEARCH WAS CONDUCTED TO RETRIEVE AMPUTATED DIGIT, AND NO 7219

15  EXIST FOR THIS INJURY ᴰᴬᵀᴱᴰ ᴬᴾᴿᴵᴸ ²⁰²⁰ WHICH SUPPORT PL'S CLAIM THAT STAFF KNEW BUT TOOK NO ACTION. THE PETITION ALLEGES PL. LACERATED HIS LEFT MIDDLE

16  FINGER IN MAY 2020. REOPENED THE WOUND AND CUT OFF THE FINGER TIP JUNE 2020, SEE § C LINE 6-7, EX. G-032. THIS IS IMPOSSIBLE

17  BECAUSE PL. WOULD HAVE BEEN RECEIVING WOUND CARE IN MAY 2020 YET ON MAY 10, PL. FILED LOG # CHCF- HC- 20001234 SAYING

18  HE CUT OFF HIS FINGER IN APRIL 2020 AND IS INVISIBLE YET ON MAY 13, 2020 RN LOWE ,m DEEMED THE CRY FOR HELP AS NOT URGENT

19  NURSE M. LOWE CHECKED "NO" TO EXPEDITE i.e., NOT A EMERGENCY, EX. D- D25. THERE IS NO 7219 FOR MAY 2020 DOCUMENTING A

20  WOUND TO PL.'S LEFT MIDDLE FINGER WHICH THE PETITION CLAIMS PL. REOPENED AND CUT JUNE 2020, THAT'S IMPOSSIBLE

21  BECAUSE PL. MAILED OUT THE INDEX FINGER ON MAY 25, 2020 .  PL. MAILED OUT THE MIDDLE FINGER MAY 28, 2020 . THE INDEX FINGER

22  ARRIVED TO (OIG) JUNE 01, 2020 AND (OIG) NOTIFIED (CHCF) TO CONDUCT A 7219 TO DOCUMENT THE MISSING FINGER , PL. HAD 2

23  MISSING .  (CHCF) HAD KNOWLEDGE, TOOK NO ACTION, REFUSED TO DOCUMENT THE INJURIES , AND ARE FALSELY CLAIMING UNDER OATH

24  THEY DID TO CONCEAL THE CONSTITUTIONAL VIOLATIONS OF DELIBERATE INDIFFERENCE BEING ALLEGED IN THIS CASE. (CHCF) FILED A

25  FALSE PETITION , THAT'S A FELONY, CAL. PEN. COD. §132; §134 .   (CHCF) WARDEN GENA JONES TOLD PL.'S PRIMARY NEXT OF KIN THAT ALLEGATIONS

26  ARE BEING LOOKED INTO ON AUG. 31, 2022, IF TRUE , HOW CAN GENA JONES EXPLAIN THE UNLAWFUL CONDUCT SINCE AUG. 31, EX. A-001.

27  TO DENY PL. OF CONSTITUTIONAL RIGHTS , SINCE AUGUST 31, 2022 LEGAL MAIL HAS BEEN DESTROYED (5) TIMES THAT CONTAINED

28  APPEALS .

CONCLUSION

1   PL. SEEKS INJUNCTION RELIEF TO CEASE ANY AND ALL RETALIATION AND UNCONSTITUTIONAL VIOLATIONS AT (CCHCF).

2   (CHCF) IS RETALIATING FOR THIS SUIT AND BECAUSE PL. DISCOVERED THAT (CHCF) CONSPIRED WITH (PBSP) TO CONCEAL THE

3   SEXUAL UNCONSTITUTIONAL CRIMINAL ABUSE. PL'S FIRST AMENDED COMPLAINT WILL INCLUDE ALL THE RETALIATION THAT

4   HAS ENSUED AT (CHCF) SINCE FILING THIS SUIT. SUIT WAS E-FILED ~~MAY~~ MARCH 30, 2022 PL. HAD TO SUBMIT IN INSTITUTION

5   MAIL AVAILABLE TO STAFF. (18) DAYS LATER SGT. J. BRUNNER TOLD PL. HE DOES NOT GIVE A F#@K IF PL. CUTS

6   HIS FINGERS OFF OR CUTS HIS HEAD OFF AND MAILS IT OUT. EX. E-027; E-028. ON MAY 24, 2022 PL. PUT A

7   GRIEVANCE IN THE LOCK APPEALS BOX IT VANISHED. IT WAS AGAINST BRUNNER AFTER A GUARD TOLD PL. BRUNNER

8   IS ASKING STAFF TO LIE ABOUT APRIL 18, 2022. ANOTHER ABBRD APPEAL PUT IN THE APPEAL BOX IN JUNE 2022

9   VANISHED. PL. MAILED APPEALS IN LEGAL MAIL COMMENCING JUNE 30, 2022 THEY WERE DESTROYED. PL. HAS BEEN II

10  CHCF 3½ YEARS YET APPEALS DID NOT START BEING DESTROYED UNTIL E-FILING THIS CASE MARCH 30, 2022.

11  ON JULY 01, 2022 THERE IS VIDEO OF PL. AT THE OFFICER STATION, THE VIDEO WILL DEPICT A GUARD AT 12:45 P.M.

12  READ A CDCR 22 FORM ATTACH TO A APPEAL, SIGN IT, HAND HAD IT BACK TO PL, PL. REMOVE HIS CARBON COPY.

13  WALK TO THE APPEAL BOX THATS ~~LOCKED~~ AND DROP IT INSIDE. IT VANISHED PL. FILE A APPEAL OVER IT IN LEGAL MAIL

14  IT WAS DESTROYED. ANTICIPATING THAT PL. MAILED A COPY TO ANOTHER PRISON SO IT GOT A LOG #. BUT WHEN (CHCF)

15  DESTROYED THE LEGAL MAIL, CHCF HAD NO IDEA PL. MAILED A COPY TO ANOTHER PRISON. HOWEVER, WHEN THE APPEAL

16  WAS REASSIGNED TO CHCF FROM THAT PRISON (SGT) R. SINGH FALSIFIED THAT APPEAL INQUIRY AND SAID PL. NEVER PUT A

17  GRIEVANCE IN THE APPEAL BOX AT (CHCF) ON JULY 01, 2022 WHEN ITS ON VIDEO AND A GUARD SIGNED A CDCR 22 FORM THAT PROVES IT.

18  SGT. R. SINGH AN (CHCF) COMMITTED A FELONY AND COMMITTED 1ST AMEND CONSTITUTIONAL VIOLATIONS TO CONCEAL CONSTITUTIONAL VIOLATIONS.

19  PL. SHOULD BE GRANTED ALL RELIEF INCLUDING A (7) DAY EXTENSION OF TIME OF UP TO AND INCLUDING FEB. 28, 2023 TO FILE THE

20  FIRST AMENDED COMPLAINT UNDER THE MAILBOX RULE. PL. IS ON THE VERGE OF A MENTAL CRISIS/MELTDOWN NO ONE SHOULD BE

21  TREATED LIKE A ANIMAL. PL. IS AT IMMINENT RISK, SEE EX. G-034

22                                    VERIFICATION

23  I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. IF CALLED UPON TO DO SO, I CAN

24  TESTIFY TO THIS MATTERS. THIS DECLARATION WAS EXECUTED ON THE ~~22ND DAY OF JANUARY~~ 15 DAY OF FEBRUARY

25  AT STOCKTON CA.

26  _[signature]_

27

28

## RE: Criminal activity

Jones, Gena@CDCR <Gena.Jones@cdcr.ca.gov>
Wed 2022-08-31 6:15 PM
To: Alma pineda <alma_pineda@hotmail.com>

Good afternoon Ms. Pineda,
I take all allegations very seriously, your concerns are being looked into.

Gena Jones
Warden (A)
California Health Care Facility
Cell: 209.623.3146
Office: 209.467.2511

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Alma pineda <alma_pineda@hotmail.com>
**Sent:** Wednesday, August 31, 2022 2:46 PM
**To:** Jones, Gena@CDCR <Gena.Jones@cdcr.ca.gov>
**Subject:** Fw: Criminal activity

CAUTION: This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon Gena,

Thank you for getting back to me.

ISU at CHCF are promoting a criminal conspiracy. During IDTT, on August 10th 2022, Verduzco gave C. Martincek, E. Edgar, D. Minor, Ben Bessee and Todd Lieberg a 24 page packet of direct evidence of criminal sexual abuse and criminal activity by CDCR employees. Dom chapter 5 article 44 section 54040.7 states: "each employee that is provided a report by the victim must complete required reports." ISU told these employees not to file reports. That's a violation of CDCR policy and criminal. ISU told staff that Verduzco claims were already raised. That was half true because ISU at PBSP at CHCF committed felonies to cover it up.

Obstruction of justice can be prosecuted on date of discovery. California penal code section 803 (e) (1) (2). Assuming for the sake of argument that there was no criminal cover up, DOM chapter 3 article 22 section 33030.12.1 states: " an investigation can be reopened if significant new evidence is discovered that is likely to affect the outcome of the investigation."

The 24 page packet is direct evidence that will change the outcome but ISU does not want it reported to conceal their own criminal activity. That's why Verduzco's grievances submitted at CHCF are vanishing despite being sent a legal mail and put into the B6A locked appeal box.

EXHIBIT A-001

You have a responsibility to instruct each employee that was provided a 24 page packet of direct evidence on August 10th 2022, to prepare official PREA reports. Regardless of classification, each employee has to report misconduct. Chapter 3 article 14 section 31140.5 states: "any act or coordinated effort to prevent the reporting of misconduct is grounds for dismissal. DOM chapter 3 article 22 section 33030.19 (b) (3) (4) (5). The email that follows was sent on August 15th 2022 to CDCR headquarters.

Thank you,

Alma

---

**From:** Alma pineda <alma_pineda@hotmail.com>
**Sent:** August 15, 2022 10:19 PM
**To:** Neill, Jennifer@CDCR <Jennifer.Neill@cdcr.ca.gov>
**Subject:** Re: Criminal activity

Dear Jennifer,

A criminal sexual abuse investigation is a lawful investigation, California penal code section 2639 (e) it's a felony to falsify any record or report during a lawful investigation California penal code section 118.1 (a) penal code section 132, penal code section 134, it's a felony to conceal criminal activity, California penal code section 32 title 18 U.S.C. section 1.0.0.1. (a) CDCR have to investigate criminal activity by CDCR employees DOM chapter 3 article 14 section 31140.20. All CDCR employees receive the employee discipline matrix (California Penal code section 50 8.4 (a) (d) through 1-5. All CDCR employees receive PREA training.

You have access to Daniel Verduzco's central file. Review appeal log number PBSP-0-19-0-1532 and read side two of the CDCR 602 form section E. K. Royal, and R. Bell criminally falsified section E documenting that K. Royal interviewed Verduzco on July 11th, 2019. They criminally falsified the PREA record because Verduzco's actual PREA interview was on July 10th, 2019. During the July 10th interview, Verduzco named ISU lieutenant R. Basso and hiring authority DOE as concealing criminal sexual abuse and criminal negligence to cause great bodily harm by CDCR psychologist H. Bush. Verduzco, can prove the actual PREA interview was conducted on July 10th, 2019. Read memo dated July 25th, 2019, appeal log number CHCF-A-19-02880 first level review. ISU lieutenant B. Pinneo was involved in log number CHCF -A-19-02880, but he has not disclosed that to Internal Affairs to protect corrupt ISU members.

Review grievance decision log number 243046 dated May 24th, 2022. R. Bell would not provide the name of the second warden because it's the same warden "J.Roberston". R. bell was concealing a criminal conspiracy by J. Robertson, R.Bell, R. Basso, K. Royal and others. Look at grievance decision 243046. Review grievance decision log number 226790. R. Bell rendered that decision to and was evasive to conceal criminal activity and further a criminal conspiracy by multiple CDCR employees including R. Bell. You can review these appeals.

Criminal activity by CDCR employees remain actively in progress and no one will interview Verduzco or collect his evidence because CDCR as a whole want to conceal criminal activity by its employees.

on June 30th, 2022, Verduzco submitted a staff complaint that was filed within 60 days of learning of the criminal conspiracy that is still in progress. CST staff at headquarters issued it a routine healthcare log number CHCF-HC-22001252 to conceal criminal activity and prevent an Internal Affairs investigation.

On July 19th, 2022, Ombudsman Eric Joe interviewed Verduzco for over one hour. Verduzco gave Eric Joe a copy of the staff complaint dated June 30th, 2022, but Eric Joe refused to take 138 pages of evidence, although he read

**EXHIBIT A-002**

Case 2:22-cv-00569-TLN-DMC   Document 16   Filed 02/22/23   Page 43 of 86

some of it during the interview. This is a headquarters representative. Eric Joe's inactions has allowed criminal activity by CDCR employees to actively remain in progress in violation of DOM chapter 3 article 14 section 31140.5. DOM chapter 5 article 44 section 54040.7 DOM chapter 3 article 14 section 33030.19 (d) (3) (4) ((5). I'm Daniel Verduzco's (T-44537) primary next of kin. I want to know why no immediate action has been taken within 5 business days under PREA policy.

The objective of grievance decision log number 243046 and log number 226790 by R.Bell was to conceal criminal activity . That it's a crime- Penal code section 32 title 18 U.S.C section 1001 (a) (1).

The crimes committed cannot be undone. However, the crimes actively in progress can be stopped and you must accept that this cannot be covered up further. CDCR employees that continue to engage in criminal activity to obstruct justice and conceal criminal activity by CDCR employees are choosing to go down with a sinking ship.

Criminal activity has zero immunity protections and there is no life vest for the guilty. Staff misconduct is any violation of law or policy CCR.  Title 15 section §38.: (a) (14). Employees at CST have violated CCR title 15 section 3084 (a) (4) in an effort to conceal criminal sexual abuse, criminal activity by various CDCR employees and to further an active criminal conspiracy by CDCR employees. ISU at CHCF is informing staff not to write official PREA reports. This violates DOM chapter 5 article 44 section 54040.7 which states: "Each employee that is provided a report by the victim must complete required report." Not only is this staff misconduct, witness tampering is criminal- California penal code section 136.1. This constitutes as witness tampering because during Verduzco's IDTT on August 10, 2022, at 12pm, Verduzco gave five CHCF employees a 24-page packet of direct evidence of criminal sexual abuse, criminal negligence to cause great bodily harm, criminal correspondence and a criminal coverup by CDCR employees.  This direct evidence requires these employees to prepare official PREA reports. Ben Bessee took this evidence to CHCF ISU, ISU rejected this evidence and told Ben Bessee to tell Verduzco to put it in a 602. ISU already knows that headquarters CST will not issue Verduzco a staff complaint log number as is the case with log number CHCF-HC-22001252.  Besides, how can ISU discourage staff from writing official PREA reports when provided with direct evidence by the victim? The base penalty for preventing the reporting of misconduct is dismissal DOM chapter 3 article 22 section 33030.19 (b) (3) (4) (5). The crimes actively in progress is continued criminal and constitutional violation which makes you liable and culpable for refusing to take reasonable action to stop it.

Verduzco is in a camera facility.On May 25th 2022 at 12:45pm, he put a staff complaint into the B6A appeal box dated May 24th 2022- it vanished.  Only the office technician for the captain had access to that locked appeal box. That's the depth of retaliation and corruption being incorporated to silence Verduzco.

Thank you for your time.

Alma

---

**From:** Neill, Jennifer@CDCR <Jennifer.Neill@cdcr.ca.gov>
**Sent:** July 25, 2022 10:48 PM
**To:** Alma pineda <alma_pineda@hotmail.com>
**Subject:** RE: Criminal activity

I write to let you know that I received your message and will look into this matter.

Respectfully,                                      EXHIBIT A-003

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

CHCF HC 22001253    IAB USE ONLY   Institution/Parole Region:   Log #    Category:

**TREAT AS ORIGINAL**

273702

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): DANIEL VERDUZCO | CDC Number: T-45537 | Unit/Cell Number: B6A 126 | Assignment: |

**State briefly the subject of your appeal** (Example: damaged TV, job removal, etc.):
EMERGENCY APPEAL SEND TO HEAD QUARTERS INTERNAL AFFAIRS IMMEDIATELY

**A. Explain your issue** (If you need more space, use Section A of the CDCR 602-A): ON 06/15/2022 I MET WITH
(AW) C. MARTINCEK, CAPTAIN VALASQUES, AND LT. BESTOLARIDES, A. I DISCLOSED INFORMATION RE: A MASS
CRIMINAL CONSPIRACY REGARDING CRIMINALLY CORRUPT (CHCF) STAFF. CRIMES THAT WILL SEND HIGH RANKING
CDCR STAFF TO PRISON. I DID NOT WANT (ISU) AT (CHCF) NOTIFIED BECAUSE A. ALI (IS INVOLVED IN THE

**B. Action requested** (If you need more space, use Section B of the CDCR 602-A):
I BELIEVE UNLESS THE RETALIATION IS NOT STOPPED IMMEDIATELY IT WILL SNOW BALL. THE FACT THAT
D. POTIS AND C. DAVIS ARE USING POLICIES THAT HAVE NOTHING TO DO WITH THE MAILROOM WILL
COME OUT, IT'S NOT SOME HONEST MISTAKE. IF THEY ARE UNFAMILIAR WITH THE APPLICATION OF CHCF

**Supporting Documents:** Refer to CCR 3084.3.
☑ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
PROOF THAT I SENT (AW) MARTINCEK A CDCR 22 FORM 06/04/22
PROOF THAT I SENT CCII E. TAKEHARA A CDCR 22 FORM 06/20/22
PROOF THAT I TOLD (ISU) TO COORDINATE W/ LAW ENFORCEMENT PER. CCR TIT. 15 § 3291 (e) (4).
☐ No, I have not attached any supporting documents. Reason: _____

Inmate/Parolee Signature: _____    Date Submitted: 06-23-2022

☐ **By placing my initials in this box, I waive my right to receive an Interview.** JUNE 23, 2022

RECEIVED CHCF   JUL 13 2022   REJECTED   HCGO

JUN 29 2022

RECEIVED   F U S E   O N L Y

**C. First Level - Staff Use Only**    Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes  ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter) Date: ____
☐ Accepted at the First Level of Review.
Assigned to: ____ Title: ____ Date Assigned: ____ Date Due: ____
**First Level Responder:** Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: ____ Interview Location: ____
Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other:
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: ____ (Print Name)   Title: ____ Signature: ____ Date completed: ____
Reviewer: ____ (Print Name)   Title: ____ Signature: ____
Date received by AC: ____

EXHIBIT A-004

AC Use Only
Date mailed/delivered to appellant ___/___/___

**TREAT AS ORIGINAL**

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (REV 07/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

CHCF HC 22001253

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded. WRITE, PRINT, w/ TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number | Unit/Cell Number | Assignment |
|---|---|---|---|
| MADDOX, J | T95537 | N/A | IPS |

A. Continuation of CDCR 602, Section A only (Explain your issue): ...

ST/KFF USE ONLY

CHCF  JUN 23 2023  HCGO

Inmate/Parolee Signature: _____  Date Submitted: 06/23/2022

B. Continuation of CDCR 602, Section B only (Action requested): ...

Inmate/Parolee Signature: _____  Date Submitted: 06/23/2022

**STATE of CALIFORNIA**

OIG | OFFICE *of the*
     | INSPECTOR GENERAL

Amarik K. Singh, Inspector General
Neil R. Robertson, Chief Deputy Inspector General

Independent Prison Oversight

Regional Office:

Sacramento
Bakersfield
Rancho Cucamonga

August 9, 2022

Daniel Verduzco, T45537
California Health Care Facility
P.O. Box 213040
Stockton, CA 95213

Dear Daniel Verduzco,

The Office of the Inspector General has received your correspondences.

According to institutional records, you have a grievance (22001253) regarding disagreement with treatment / nursing staff within the California Correctional Health Care Services unit. This grievance is due for a response by September 15, 2022.

If you would like to file a staff complaint through the Office of Grievances (OOG), please file a CDCR Form 602-1 (Grievance) or CDCR Form 1824 (Request for Reasonable Accommodation) with your institution's OOG. Please contact your correctional counselor for advice and assistance regarding the process or the status of your complaint.

Please submit a CDCR Form 7362 (Health Care Services Request Form) if you have a medical or mental health request.

Thank you for bringing your concerns to our attention.

INTAKE AND REVIEW UNIT
Office of the Inspector General

BL: 22-0044046-PI

*Gavin Newsom, Governor*                    EXHIBIT A-006



10111 Old Placerville Road, Suite 110
Sacramento, California 95827
Telephone: (916) 255-1102
www.oig.ca.gov

Legal log sheet will be placed in the locked legal bags with the legal mail. Accepting correctional officer will sign the letters on the seal. At no time will outgoing legal mail be placed in the bag without being logged in.

C/O signature & date: [signature] 8/25/22

Legal mail clerk & date:

AUG 2 6 REC'D

Please circle proper facility: 3rd Watch

A   B   C   D   E   ADSEG

| DATE | INMATE NAME | CDCR# | LEGAL/CONFIDENTIAL OUTGOING TO: | ADDRESS OUTGOING MAIL BEING SENT TO: | INMATE SIGNATURE & DATE |
|---|---|---|---|---|---|
| 8/25/2022 | VERDUZCO, D | T-45537 | K.TROMMELL, CHSA II (THE) GRIEVANCE OFFICE LEGAL, TIT. 15 § 3141 (c)(1)(a) | CALIFORNIA HEALTH CARE FACILITY STOCKTON, CAL. 95213 | |
| 8/25/2022 | VERDUZCO, D | T-45537 | 4th GRIEVANCE OFFICE (PRSP) LEGAL, TIT. 15 § 3141 (c)(1)(a) | 5405 LAKE EARL DRIVE CRESCENT CITY, CALIFORNIA 95532 | |
| 08/25/2022 | VERDUZCO, D | T-45537 | GENE VETILLE, SUPERVISOR OFFICE OF INTERNAL AFFAIRS (CDCR) LEGAL, TIT. 15 § 3141 (c)(1)(a) | 9035 HAVEN AVENUE, SUITE # 105 RANCHO CUCAMONGA, CA. 91730 | |
| 08/25/2022 | VERDUZCO, D | T-45537 | MARK K. SINGH, INSPECTOR GENERAL | 10111 OLD PLACERVILLE ROAD, SUITE # 110 SACRAMENTO, CA. 95827 | |
| 08/25/2022 | VERDUZCO, D | T-45537 | SUPERIOR COURT OF CALIFORNIA | 180 E WEBER AVE. SUITE 202 STOCKTON, CA. 95202 | |

RECORD MONEY ORDER 401'S BELOW — THE ENVELOPE MONEY ORDER ARRIVED IN MUST ACCOMPANY MONEY ORDER AND PAPERWORK (CDC FORM 401).

| INMATE NAME | CDCR# | DORM/HOUSING | MONEY ORDER # | AMOUNT $ | MONEY ORDER # | SENDER'S RTN ADDRESS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit A-007

ANY ACT OR COORDINATED EFFORT THAT PREVENTS THE REPORTING OF MISCONDUCT IS GROUNDS FOR DISMISSAL.

Case 2:12-cv-00601-JJT-DMF Document 4632 Filed 08/23/24 Page 48 of 86

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

REFUSAL TO ANSWER CDCR 22 FORMS IS GROUNDS FOR DISCIPLINE, (CCR) 54090.4.3.

### SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print): (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| VERDUZCO, | D | T-45537 | |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM_____ TO_____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| 86A 126 | | | RESUBMITTING APPEAL |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: (CHCF) HC GRIEVANCE OFFICE, I'm RESUBMITTING
LOG # CHCF HC 22001253, THE APPEAL CONSIST OF 26 PAGES, RETURN THIS
CDCR 22 FORM ACKNOWLEDGING THAT YOU RECEIVED THIS APPEAL THAT
SHOULD HAVE BEEN PROCESSED AS A STAFF COMPLAINT AND SENT TO (OIA).
THE TRUTH OF YOUR CORRUPTION WILL COME OUT EVENTUALLY, I MAILED A COPY
OF THIS EXACT APPEAL AND IN RESPONSE TO SPECIAL AGENT GENE PETTIIE OF
INTERNAL AFFAIRS TO PROVE THE DEPTH OF CORRUPTION BY CHCF AND PBSP.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☐ SENT THROUGH MAIL: ADDRESSED TO: LEGAL MAIL TIT. 15 § 3141 (c) (7) (8)      DATE MAILED: 08.25.2022
☑ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE)

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| | 08/25/22 | | (CIRCLE ONE) YES NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| K. TRAMMELL, CHSA II (HC) GRIEVANCE | AUG. 25, 2022 | (CIRCLE ONE) IN PERSON BY US MAIL |

### SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

### SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

### SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

EXHIBIT A-008

## OUTGOING CONFIDENTIAL/SPECIAL PURPOSE MAIL LOG

| DATE SENT | INMATE NAME | CDCR# | SENT TO | CITY/STATE |
|---|---|---|---|---|
| 8/5/2022 | VERDUZCO | T45537 | SUPERIOR COURT | STOCKTON, CA |
| 8/5/2022 | VERDUZCO | T45537 | INSPECTOR GENERAL | SACRAMENTO, CA |
| 8/5/2022 | VERDUZCO | T45537 | PUBLIC DEFENDER | EUREKA, CA |
| 8/5/2022 | VERDUZCO | T45537 | LEGAL AFFAIRS | SACRAMENTO, CA |
| 8/5/2022 | VERDUZCO | T45537 | CDCR ASSISTANT SECRETARY | SACRAMENTO, CA |
| 8/5/2022 | VERDUZCO | T45537 | CDCR SECRETARY | SACRAMENTO, CA |
| 8/5/2022 | VERDUZCO | T45537 | STATE BAR OF CA | SAN FRANCISCO, CA |
| 8/11/2022 | VERDUZCO | T45537 | ROSEN BIEN GALVAN & GRUNFIELD LLP | SAN FRANCISCO, CA |
| 8/11/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/11/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/12/2022 | VERDUZCO | T45537 | ROSEN BIEN GALVAN & GRUNFIELD LLP | SAN FRANCISCO, CA |
| 8/12/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | SACRAMENTO, CA |
| 8/12/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | SACRAMENTO, CA |
| 8/12/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | SACRAMENTO, CA |
| 8/18/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/18/2022 | VERDUZCO | T45537 | INSPECTOR GENERAL | SACRAMENTO, CA |
| 8/18/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | SACRAMENTO, CA |
| 8/18/2022 | VERDUZCO | T45537 | ROSEN BIEN GALVAN & GRUNFIELD LLP | SAN FRANCISCO, CA |
| 8/18/2022 | VERDUZCO | T45537 | SUPERIOR COURT | CRESENT CITY, CA |
| 8/19/2022 | VERDUZCO | T45537 | ATTORNEY GENERAL | SAN FRANCISCO, CA |
| 8/19/2022 | VERDUZCO | T45537 | US DISTRICT COURT | OAKLAND, CA |
| 8/19/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | SACRAMENTO, CA |
| 8/24/2022 | VERDUZCO | T45537 | CHCF GRIEVANCE COORDINATOR | STOCKTON, CA |
| 8/24/2022 | VERDUZCO | T45537 | SUPERIOR COURT | STOCKTON, CA |
| 8/25/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/25/2022 | VERDUZCO | T45537 | PBSP GRIEVANCE COORDINATOR | CRESENT CITY, CA |
| 8/26/2022 | VERDUZCO | T45537 | PBSP GRIEVANCE | CRESENT CITY, CA |
| 8/26/2022 | VERDUZCO | T45537 | INSPECTOR GENERAL | SACRAMENTO, CA |
| 8/26/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/26/2022 | VERDUZCO | T45537 | SUPERIOR COURT | STOCKTON, CA |
| 8/26/2022 | VERDUZCO | T45537 | CHCF GRIEVANCE | STOCKTON, CA |
| 8/26/2022 | VERDUZCO | T45537 | COPY OF OUTGOING LEGAL MAIL LOG FROM JUNE 1 2022 TO PRESENT | |

EXHIBIT A-009

Page 3 of 5

10/12/2022

Legal log sheet will be placed in the locked legal bags with the legal mail. Accepting correctional officer will sign the letters on the seal. At no time will outgoing legal mail be placed in the bag without being logged in.

C/O signature & date:

Legal mail clerk & date:

Please circle proper facility 3rd Watch

A   B   C   D   E   ADSEG

| DATE | INMATE NAME | CDCR# | LEGAL/CONFIDENTIAL OUTGOING TO: | ADDRESS OUTGOING MAIL BEING SENT TO: | INMATE SIGNATURE & DATE |
|---|---|---|---|---|---|
| EP.01.2022 | VERDUZCO, D | T-41527 | TIMOTHY BARKRIDER, ATTORNEY AT LAW | 455 CAPITAL MALL, UNIT 802 SACRAMENTO, CA. 95814 | 09/01/2022 |
| EP.01.2022 | VERDUZCO, D | T-41527 | K. TRAMMELL, CHSA II, GRIEVANCE COORDINATOR UOA #CHCF-HC-02001253, LEGAL MAIL | CALIFORNIA HEALTH CARE FACILITY STOCKTON, CALIFORNIA 95215 | 09/01/2022 |
| EP.01.2022 | VERDUZCO, D | T-41527 | OFFICE OF THE INSPECTOR GENERAL | 10111 OLD PLACERVILLE ROAD, SITE #110 SACRAMENTO, CALIFORNIA 95827 | 09/01/2022 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

RECORD MONEY ORDER 401'S BELOW – THE ENVELOPE MONEY ORDER ARRIVED IN MUST ACCOMPANY MONEY ORDER AND PAPERWORK (CDC FORM 401).

| INMATE NAME | CDCR# | DORM/HOUSING | AMOUNT $ | MONEY ORDER # | SENDER'S RTN ADDRESS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

SEP 02 REC'D

EXHIBIT A-010

STATE OF CALIFORNIA                                                                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)   (LAST NAME)       (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|
| VERDUZCO, D | T-45537 | David |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM____ TO____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| B6A   126 | | | LOG # CHCF HC 22001253 |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: (CHCF) HCGO, I'M RESUBMITTING LOG # CHCF HC 2200125
THAT CONSIST OF (26) PAGES. I RESUBMITTED THIS APPEAL ON 08/25/2022 IN LEGAL MAIL.
BUT YOU HAVE NOT ACKNOWLEDGED ME. SO I'M SUBMITTING IT AGAIN SO YOU CANNOT
ALLEGE THAT I DID NOT RESUBMIT IT WITHIN (30) DAYS OF 08/18/2022. PLEASE PROCESS
MY APPEAL AND STOP PROMOTING THE CODE OF SILENCE. THIS IS BEING PROCESSED
IN LEGAL MAIL ON CAMERA.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☐ SENT THROUGH MAIL:  ADDRESSED TO: LEGAL MAIL TIT 15 & 3141 (C) (7) (8)            DATE MAILED: 09/01/2022
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| MEDEIRUS | 09/01/2022 | | (CIRCLE ONE)   (YES)   NO |

| IF FORWARDED - TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| K. TRAMMELL, CMSA II (HO) GRIEVANCE CORD. | | (CIRCLE ONE)  IN PERSON   BY US MAIL |

## SECTION B:  STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

## SECTION C:  REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY
COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D:  SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

EXHIBIT A-011

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.

# OUTGOING CONFIDENTIAL/SPECIAL PURPOSE MAIL LOG

| DATE SENT | INMATE NAME | CDCR # | SENT TO | CITY/STATE |
|---|---|---|---|---|
| 8/30/2022 | VERDUZCO | T45537 | GRIEVANCE COORDINATOR | STOCKTON, CA |
| 8/30/2022 | VERDUZCO | T45537 | KAPLAN AND GRADY | CHICAGO, IL |
| 8/30/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | RANCHO CUCAMONGA, CA |
| 8/30/2022 | VERDUZCO | T45537 | GRIEVANCE COORDINATOR | CRESENT CITY, CA |
| 9/2/2022 | VERDUZCO | T45537 | TIMOTHY WARRINER | SACRAMENTO, CA |
| 9/2/2022 | VERDUZCO | T45537 | HEALTH CARE GRIEVANCE | STOCKTON, CA |
| 9/2/2022 | VERDUZCO | T45537 | INSPECTOR GENERAL | SACRAMENTO, CA |
| 9/9/2022 | VERDUZCO | T45537 | HOWARD KAPLAN | CHICAGO, IL |
| 9/9/2022 | VERDUZCO | T45537 | INSPECTOR GENERAL | SACRAMENTO, CA |
| 9/16/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/16/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | SACRAMENTO, CA |
| 9/16/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/21/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/21/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | OAKLAND, CA |
| 9/21/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | SACRAMENTO, CA |
| 9/21/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | CRESCENT CITY, CA |
| 9/21/2022 | VERDUZCO | T45537 | INTERNAL AFFAIRS | SACRAMENTO, CA |
| 9/21/2022 | VERDUZCO | T45537 | OFFICE OF APPEALS | STOCKTON, CA |
| 9/21/2022 | VERDUZCO | T45537 | COPY OF OUTGOING LEGAL MAIL LOG FROM AUGUST 26, 2022 TO PRESENT | |
| 9/23/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/26/2022 | VERDUZCO | T45537 | GRIEVANCE COORDINATOR | STOCKTON, CA |
| 9/26/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/26/2022 | VERDUZCO | T45537 | GRIEVANCE COORDINATOR | CRESCENT CITY, CA |
| 9/30/2022 | VERDUZCO | T45537 | OFFICE OF INTERNAL AFFAIRS | SACRAMENTO, CA |
| 9/30/2022 | VERDUZCO | T45537 | US DISTRICT COURT | OAKLAND, CA |
| 9/30/2022 | VERDUZCO | T45537 | ATTORNEY GENERAL | SAN FRANCISCO, CA |
| 9/30/2022 | VERDUZCO | T45537 | ATTORNEY AT LAW | CHICAGO, IL |
| 9/30/2022 | VERDUZCO | T45537 | STATE BAR OF CA | SAN FRANCISCO, CA |
| 10/6/2022 | VERDUZCO | T45537 | US DISTRICT COURT | OAKLAND, CA |
| 10/6/2022 | VERDUZCO | T45537 | DEPUTY ATTORNEY GENERAL | SAN FRANCISCO, CA |
| 10/7/2022 | VERDUZCO | T45537 | US DISTRICT COURT | OAKLAND, CA |
| 10/11/2022 | VERDUZCO | T45537 | PBSP INMATE APPEALS | CRESCENT CITY, CA |

EXHIBIT A-012

10/12/2022

EXHIBIT " B "

CALIFORNIA DEPARTMENT OF
Corrections and Rehabilitation

PELICAN BAY STATE PRISON

DEC 07 2022

# OFFICE OF APPEALS DECISION

GRIEVANCE OFFICE

**Offender Name:** VERDUZCO, DANIEL

**Date:** 11/10/2022

**CDC#:** T45537

**Current Location:** CHCF-Facility B

**Current Area/Bed:** B 306A1 - 126001L

**g #:** 000000283564

**aim #** 001

**eceived at Institution/Parole Region:** Pelican Bay State Prison

**ubmitted to Facility/Parole District:** Pelican Bay State Prison

**ousing Area/Parole Unit:**

**ategory:** Offender Resources          **Sub-Category:** Other Resources - NOS

## . ISSUE ON APPEAL

: is the appellant's position that this claim was inappropriately rejected as grieving the grievance and appeal process itself.

## I. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

California Code of Regulations, Title 15, section 3487

### B. DOCUMENTS CONSIDERED

CDCR Form 602, Log #283564

## II. REASONING AND DECISION

ppellant asserts in this claim that appellant's previous grievance was assigned to an inappropriate person that conceals criminal activity. This claim is not isputing the regulatory framework of the grievance process but rather disputing how a previous grievance was handled. Therefore, this claim is granted.

## V. REMEDY

elican Bay State Prison shall open a new grievance log number, gather and preserve all relevant evidence, and answer this claim on the merits.

## ecision: Granted

fter a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is ranted. This decision exhausts the administrative remedies available to the claimant within CDCR.

| Staff Signature | Title | Date/Time |
|---|---|---|
| C. Rojas [ROCY016] | Reviewing Authority | 11/09/2022 |

EXHIBIT B-015

CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# OFFICE OF GRIEVANCES DECISION

**Offender Name:** VERDUZCO, DANIEL                    **Date:** 01/28/2023
**CDC#:** T45537

**Current Location:** CHCF-Facility B                    **Current Area/Bed:** B 306A1 - 126001L

**Log #:** 000000337999

---

**Claim #: 001**

**Received at Institution/Parole Region:**    Pelican Bay State Prison
**Submitted to Facility/Parole District:**    Pelican Bay State Prison
**Housing Area/Parole Unit:**
**Category:**    Offender Services                    **Sub-Category:**    Other Services - NOS

**I. CLAIM**

The Claimant asserts in this claim that the Claimant's previous grievance was assigned to an inappropriate person that conceals criminal activity.

**II. RULES AND REFERENCES**

    **A. CONTROLLING AUTHORITY**

      ~~California Code of Regulations (CCR), Title 15, Section 3483 (a) and (b).~~

    **B. DOCUMENTS CONSIDERED**

      Strategic Offenders Management System (SOMS), Grievance Log Number 337999;
      SOMS, Grievance Log Number 283564.

**III. REASONING AND DECISION**

The Office of Grievances (OOG) follows CCR, Title 15, Section 3483 (a) and (b), which states in part "The Reviewing Authority over each OOG shall designate at least one official to assess each written grievance within one business day of receipt to determine if it contains information concerning an imminent risk to personal safety, to institutional security or of sexual abuse." It further states "The Grievance Coordinator shall ensure that the intake process is completed and each grievance is referred to the Centralized Screening Team within three business days of receipt of the grievance."

All grievances received in the OOG are reviewed by the Correctional Counselor II, upon initial receipt. All grievance responses are reviewed and signed off by the Reviewing Authority, Reviewing Authority does not receive any grievances upon initial receipt in order to control information; therefore, after a thorough review of all documents and evidence available at the time of this written decision, it is the order of the OOG the claim at the Institution Level of Review is DENIED.

**IV. Comments**

**Decision: Denied**

After a thorough review of all the documents and evidence presented to the Office of Grievances, it is the order of the Office of Grievances to DENY this claim.

EXHIBIT B-016

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

| Staff Signature | Title | Date/Time |
|---|---|---|
| R. Bell [BERO007] | Reviewing Authority | 01/27/2023 |

EXHIBIT B-017



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# OFFICE OF GRIEVANCES DECISION

**Offender Name:** VERDUZCO, DANIEL                    **Date:** 08/12/2022

**CDC#:** T45537

**Current Location:** CHCF-Facility B              **Current Area/Bed:** B 306A1 - 126001L

**Log #:** 000000283564

---

**Claim #:  001**

**Received at Institution/Parole Region:**    Pelican Bay State Prison

**Submitted to Facility/Parole District:**    Pelican Bay State Prison

**Housing Area/Parole Unit:**

**Category:** Offender Resources            **Sub-Category:**   Other Resources - NOS

The California Department of Corrections and Rehabilitation received your grievance on 07/22/2022 which you submitted on 07/18/2022. This claim has not been assigned for review or response because it is being handled as specified below.

Claim # 001:
Your claim concerning Offender Resources;Other Resources - NOS is rejected for the reason or reasons indicated below:

Your claim disputes or contravenes the regulatory framework for the grievance and appeal process itself which is not permitted under the California Code of Regulations, title 15.

---

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

**Decision: Rejected**

ANY ACT OR COORDINATED EFFORT THAT PREVENTS OR INTERFERS WITH THE REPORTING OF MISCONDUCT IS GROUNDS FOR DISMISSAL [DOM] CH. 3 ART. 22 § 33030.19 (b)(3)(4)(5).

R. BELL (A WARDEN AT PBSP) CRIMINALLY FALSIFIED THE (PREA) RECORD DURING A LAWFUL INVESTIGATION IN LOG # PBSP-C-19-01532. LOG # 242046 WAS ASSIGNED TO R. BELL, R. BELL WAS EVASIVE IN GRIEVANCE DECISION # 243046 TO CONCEAL THOSE CRIMES. APPEAL LOG # 226790 WAS ASSIGNED TO R. BELL, R.BELL WAS INDIRECT/EVASIVE IN GRIEVANCE DECISION # 226790 TO CONCEAL CRIMES BY (ISU) LT. R. BASSO WHICH R. BELL HELPED TO CONCEAL IN LOG # PBSP-D-19-01532, THESE APPEALS WERE ASSIGNED TO R. BELL BY DESIGN AND NOT BY CHANCE. THIS APPEAL DECISION (#283564) MISCHARACTERIZES MY CLAIM TO CONCEAL THE CIVIL AND CRIMINAL CONSPIRACY. HOW IS IT POSSIBLE THAT THIS STAFF COMPLAINT WAS REJECTED BY THE (OST) A 10 MILLION DOLLAR UNIT SPECIFICALLY CREATED TO ROOT OUT CORRUPT STAFF. I ALREADY MAILED SPECIAL AGENT GENE PETTITE OF INTERNAL AFFAIRS A COMPLETE COPY OF THIS GRIEVANCE TO PROVE CRIMINAL CORRUPTION ALREADY EXIST AT (OST) (CDCR) HEADQUARTER'S. GENE PETITE FORWARDED MY GRIEVANCE DIRECTLY TO (OIA) HEADQUARTERS AND BY-PASSED THE NORTHERN REGIOION WHICH HAS JURISDICTION OVER (PBSP) AND (CHCF).

EXHIBIT B-013

REC BY CCA

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (03/20)

SEP 08 2022

DEPARTMENT OF CORRECTIONS AND REHAB LT1

Page 1

| **STAFF USE ONLY** | Appeal #:_____ | Date Received:_____ |
| | Date Due:_____ | |
| | Categories:_____ | |
| | Grievance #: 283564 | |

Claimant Name: VERDUZCO, D                     CDCR #: T-45537

Current Housing/Parole Unit: CHCF _____   Institution/Facility/Parole Region: CHCF

☐ There are no claims that can be appealed.

☐ The following claims cannot be appealed:

Claim #s:

_____

_____

_____

*This is the process to appeal the decision made regarding a claim that is not listed above.*

Claim #: 1

THIS GRIEVANCE SHOULD BE RETURNED TO (OST) AND PROCESSED AS A STAFF COMPLAINT
Explain the reason for your appeal of any claims not listed above. Be as specific as you can.

I am dissatisfied with the response I was given because STAFF MISCONDUCT IS ANY VIOLATION OF LAW OR (CDCR) POLICY, CCR TITLE § 3435(a)(4).   " DIRECT EVIDENCE OF A CONSPIRACY MUST BE EVIDENCE THAT IS EXPLICIT AND REQUIRES NO INFERENCES TO ESTABLISH THE PROPOSITION OR CONCLUSION BEING ASSERTED ", CITY OF TUOLUMNE Vs. SONORA COMMUNITY HOSPITAL, 236 F. 3d. 1148 1153 (9TH CIR 2001) (CDCR) HAS TO INVESTIGATE CRIMINAL ACTIVITY BY (CDCR) EMPLOYEE(S), (DOM) CH.3 ART.14 § 31140.20. THIS GRIEVANCE CLEARLY ALLEGES CRIMINAL ACTIVITY.  R. BELL CRIMINALLY FALSIFIED AN INVESTIGATION RECORD IN LOG # PBSP-D-19-01532.  GRIEVANCE LOG # 243046 REQUESTED THE IDENTITY OF THE HIRING AUTHORITY THAT FINALIZED LOG # PBSP-D-19-01532, R. BELL REFUSED TO PROVIDE THAT INFORMATION, SEE GRIEVANCE DECISION # 243046 DATED 05/24/2022.  R.BELL REFUSED TO PROVIDE INFORMATION FROM AN INVESTIGATION THAT R. BELL WAS INVOLVED IN.  SINCE R. BELL WAS INVOLVED IN LOG # PBSP-D-19-01532 R. BELL WAS BARRED FROM ANY INVOLVEMENT IN LOG # 243046, CCR TIT. 15 § 3634.7 (d)(D)(A).  AND IT'S THAT'S A VIOLATION OF CDCR POLICY i.e., "STAFF MISCONDUCT".  FURTHERMORE, GRIEVANCE LOG # 243046 WAS ASSIGNED IN VIOLATION OF (CDCR) POLICY TO R. BELL BY DESIGN TO CONCEAL CRIMINAL ACTIVITY IN THE FURTHERANCE OF A CONSPIRACY.  NO OTHER CONCLUSION CAN BE REACHED.  R. BELL REFUSED TO THE HIRING AUTHORITY THAT FINALIZED LOG # PBSP-D-19-01532 TO CONCEAL CRIMES, THAT'S A CRIME IN ITSELF, CAL PEN. COD. § 32.  IF STAFF VIOLATE GRIEVANCE POLICIES TO FURTHER A CRIMINAL CONSPIRACY THAT IS APPEALABLE. THIS GRIEVANCE WAS REJECTED TO CONCEAL CRIMES AND TO PROMOTE THE CODE OF SILENCE.

(in left margin:) FACE TO IDENTIFY

Are there documents that would be helpful to support your position? Attach copies of those documents, if you don't ha the documents, identify them as best you can below:
(CDCR) 22 FORM SUBMITTED W/ THIS GRIEVANCE 07/18/22 THAT CLEARLY ALLEGES CRIMINAL ACTIVITY. ; EOG DECISIONS DATED 08/12/2022 # 283564 ; CDCR 22 FORM SENT IN LEGAL MAIL TO CONNIE GIPSON ON 07/14/22 ; CDCR 22 FORM SENT TO OMBUDSMAN ERIC JOE ON 07/13/22 GRIEVANCE DECISION # 243046 WITH NOTATIONS BY APPELLANT. ; APPEAL LOG # 243046 ON CDCR 602 AND CDCR 602-A DATED 04/09/22 WITH LETTER TO (ISU) LT. J. ANDERSON DATED 02/22/2022 ; CDCR ZERO TOLERANCE RE: CODE OF SILENCE. ____ LETTER MAILED TO CONNIE GIPSON ON 07/17/2022, EX."A".  (CDCR) 22 FORM WITH (19) PG'S OF EVIDENCE MAILED TO (DIA) SPECIAL AGENT F. ARRELLANO ON 08/11/22, EX.

(in left margin:) "B".
E-MAIL SENT ON 08/15/22 TO: KATHLEEN.ALLISON@CDCR.CA.GOV. ; JENNIFER.NEILLE@CDCR.CA.GOV.; CONNIE.GIPSON@CDCR.CA.GOV. ; PAULA. 3HOLBERZ@CDCR.CA.GOV. ; AND KRISTA.DUNZIWEILER@CDCR.CA.GOV., EX."C"   CDCR 22 FORM MAILED TO (DIA) SPECIAL AGENT GENE PETITE ON 08/24/2022 PROVING I MAILED THIS GRIEVANCE # 283564 TO (DIA), EX."D".

DISTRIBUTION     Original: Claimant's File     Copies: DAI, DAPO, and Claimant

EXHIBIT B-014

EXHIBIT " C "

~~BUSH INCORPORATED VALIDATION TO REINFORCE THE GROOMING i.e., "I'M PROUD OF YOU", "YOU ARE SPECIAL" etc...~~

Allen ( makes me think of our conjugal visits) and "Every Little Thing" by Carly Pearce when I'm missing you soo much - and "No Such Thing as a Broken Heart" by Old Dominion (cuz it reminds me of your amazing, positive attitude). Oh my goodness, I couldn't even listen to any of these songs over the last few days without talking to you but your letters did wonders for my spirits. ♡ Thank you.

The other thing I really want to make sure to talk about is I don't think I have said enough how proud I am of you for fighting for me and the sacrifices you have made to prove your love and to be with me. I constantly think of your facial expression when you walked back into that hospital the day they tried to take you. I've never been more proud and more in love. I was like, "Wow, this guy is amazing!!" You have the heart of a lion, Daniel Verduzco! I know you are Special! I think that one boss guy could like see the glee on my face when you kept coming back. Ha! By the way, if we were to add Juni to your visiting list, soon do you think that could backfire and make them re-look at me, post the ~~IDOC~~ decisions? Just a thought. But yeah and the fact that you ~~literally cut off~~ your finger to prove your love to me - you are just beyond amazing and I cannot

EXHIBIT C-019

will still not be able to pay for
everything myself, I want him out
so I can BREATHE and maybe there
will be nights where he has Juniper
at his place and momma can light
some candles? Did I tell you I
used to have a dildo called the rabbit?
It went inside and moved in circles
and then had bunny-ears that
vibrated for the clit. I loved all my
sex stuff but I got rid of it for dumb
fuck cuz he couldn't handle the competition
in his mind. But I'm becoming more of
myself again and I love that you
want me to have pleasure and play.
Doing this letter I want to say when
I talked about why I love you so
much it's so much more than sex
but it's just amazing discovering the
love and sex! I guess this is
what being in love is and I am
now convinced I've never been in
love in my life - because nothing
I've felt has ever come close to

EXHIBIT C-018

know we can get through another transition and hopefully we will eventually get to visit every weekend! Wouldn't that be divine?! Heaven on earth. ♡♡ I keep seeing your face against the window - or with the window behind you during our last visit - you had the sun just casting this angelic glow on your face and it made you look like an angel. You are my angel, my sweet baby. You make my heart skip a beat almost every time I think of you. & Thank you

SHE'S THANKING ME FOR MY FINGER HERE

for everything you've done for me in moving all these places and going SHU and giving me your finger and making sacrifice after sacrifice. I love you so much and admire you so much. Don't let yourself think I ever thought of you as a common criminal and I'm sorry I even put it like that - you are a dream come true and don't ever forget that. Nothing is tainted. I've never been disappointed in you - scared, but not disappointed. It would have been hugely disappointing if you had chosen writing other girls

EXHIBIT C-02D



2:06

Metro by T-Mobile   4:29

← **Hannah**
Active Now

Is he suicidal now?



Is he wanting me to testify? What does he want me to do exactly?

I remember that Mickey Price didn't want him to go to the clinic because he would cut his tongue there. And it was a way for him to stay at Pelican Bay. They did want him to go EOP but honestly, he did need to go because he was saying he was suicidal. I didn't want him to go because we were in a relationship at the time and I wanted him to stay at Pelican Bay.



So I tried to advocate for him to stay at PB.

EXHIBIT C-021

2

# THERAPY NEVER INCLUDES SEXUAL BEHAVIOR

California's lawmakers and licensing boards want the public to know that professional therapy never includes sexual contact between a therapist and a client. It also never includes inappropriate sexual suggestions, or any other kind of sexual behavior between a therapist and a client. Sexual contact of any kind between a therapist and a client is unethical and illegal in the State of California. Additionally, with regard to former clients, sexual contact within two years after termination of therapy is also illegal and unethical. It is always the responsibility of the therapist to ensure that sexual contact with a client, whether consensual or not, does not occur.

EXHIBIT C-022

# COMMON REACTIONS TO SEXUAL MISCONDUCT BY A THERAPIST

If a therapist has engaged in any sexual behavior or contact with you, you may experience some or all of the following feelings or reactions:



- Intimidated or threatened.
- Guilt and responsibility—even though it is the therapist's responsibility to keep sexual behavior out of therapy.
- Mixed feelings about the therapist—e.g., protectiveness, anger, love, betrayal.
- Isolation and emptiness.
- Distrust of others' feelings or intentions, or your own feelings.
- Fearful that no one will believe you.
- Feeling victimized or violated.
- Experiencing traumatic symptoms, e.g., anxiety, nightmares, obsessive thoughts, depression, or suicidal or homicidal thoughts.

EXHIBIT C-023

# What does 'grooming' mean in sexual abuse cases?

 **By Anne Barnard**

Dec. 2, 2021

Grooming is not codified in law as a crime, but it is at the center of the sex-trafficking charges against Ghislaine Maxwell: "Grooming," "groom" and "groomed" appear nine times in the federal indictment charging her of conspiring with her longtime companion, Jeffrey Epstein, to sexually exploit vulnerable girls.

Grooming, legal experts say, is a gradual process whereby an abuser wins the trust and cooperation of a potential victim, starting with interactions that seem normal and benign, like paying special attention or offering compliments and gifts.

Next the abuser acclimates the victim to physical touching and sexual references, breaking down ordinary boundaries. Gradually, the predator exposes the victim to sexual behaviors, like light touching, to desensitize them. The process is aimed at breaking down resistance and making the victim feel complicit or responsible when the activities escalate to sexual abuse or assault, so the victim is less likely to recognize the abuse or report it.

"A predator grooms their victims in order to earn their trust," William F. Sweeney Jr., the head of the F.B.I.'s New York office, said in September after charging Robert A. Hadden, a former Manhattan gynecologist, in the sexual abuse of six female patients, including one minor.

The former film producer Harvey Weinstein and the former gymnastics doctor Larry Nassar were also accused of grooming their victims as a way to coerce sexual acts without necessarily using physical force: Mr. Weinstein dangled hopes for movie stardom and Dr. Nassar suggested to young gymnasts that his assaults were part of routine exams.

The concept of grooming in sexual abuse cases is only the word's latest meaning, giving a dark, duplicitous connotation to a word whose usual meaning is tending to one's personal appearance or hygiene.

In the 13th century, grooms were male servants who helped their employers with dressing and daily activities. By the 1600s, the word came to mean a worker who takes care of horses. In 1887, according to the Oxford English Dictionary, the word was first used to mean coaching someone, as in "grooming a successor."

The first published use of the term in a sexual abuse context was in 1985, when the Chicago Tribune described "friendly molesters" who gained trust while "secretly grooming the child as a sexual partner."

That use of the word has become more widespread in recent years with high-profile cases of Catholic priests who approached vulnerable families as helpers or mentors before sexually abusing children, and with the wave of #MeToo accusations of sexual assault, harassment and abuse in the workplace.

EXHIBIT c-024

EXHIBIT " D "

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☑ No | Tracking #: | CHCF HC 20001234 |
|---|---|---|---|

**M. LOWE, RN**

Signature _____  Date 5/13/2020

Staff Name and Title (Print)

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): VERDUZCO, D | CDCR #: T-45537 | Unit/Cell #: A2A 105 |
|---|---|---|

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

IN LATE FEBRUARY 2020, MY DEPRESSION BEGAN TO DECLINE AND I ISOLATED MYSELF. I STOPPED PARTICIPATING IN THERAPY SESSIONS AND ALL ACTIVITY OUTSIDE MY CELL. ON MARCH 04, 2020, I RECEIVED SOME UNSETTLING NEWS REGARDING A STAFF COMPLAINT I HAD PENDING AT PBSP. I WAS NOTIFIED THAT MY ALLEGATIONS AGAINST THE EMPLOYEE IN THAT COMPLAINT COULD NOT BE SUBSTANTIATED WHICH DEVASTATED ME BECAUSE IT FELT LIKE I DID NOT MATTER. MY DEPRESSION SPIRALED AND I JUST STOPPED CARING, THIS MANIFESTED INTO LOW SELF-ESTEEM AND NO SELF-WORTH. I BEGAN TO EXPERIENCE INTENSE THOUGHTS OF SELF-HARM WHICH I WAS ABLE TO SUPPRESS ON MOST DAYS, I FELT INVISIBLE. ON SUNDAY APRIL 12, 2020, I FINALLY COULD NOT TAKE IT NO MORE AND I CUT THE TIP OF MY FINGER OFF BELOW THE NAIL, SNAPPING THE BONE MYSELF. I MADE NO EFFORT TO HIDE MYSELF, I DID NOT CARE WHO SEEN ME. I ACTUALLY DON'T EVEN REMEMBER THE EXACT TIME, I JUST KNOW IT WAS EASTER SUNDAY. THE PAIN WAS SO INTENSE THAT IT'S ALL I REALLY REMEMBER FROM THAT

Supporting Documents Attached. Refer to CCR 3999.227 ☐ Yes ☑ No

| Grievant Signature _____ | Date Submitted: MAY 10, 2020 |
|---|---|

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL. _____

| SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☑ Yes ☐ No |
|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: ___ Date: ___

☐ Withdrawn (see section E)

☑ Accepted   Assigned To: MH   Title: CMH   Date Assigned: 7/10/2020   Date Due: 7/16/2020

Interview Conducted? ☑ Yes ☐ No   Date of Interview: 7/10/2020   Interview Location: ON the UNIT

Sign for _____

Interviewer Name and Title (print): H. Pearson, PsyD, Supervisor, Sr. Psychologist   Signature: _____ Date: 7/16/20

Reviewing Authority Name and Title (print): J. Aref, MD, MPH, CCHP, REHS, CEO   Signature: _____ Date: 7/15/20

Disposition: See attached letter   ☑ Intervention error NC   ☑ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: JUL 16 2020

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH☐ DPV☐ LD | ☐ Equipment☐ SLI | ☐ Patient summed information |
| ☐ DPS☐ DNH | ☐ Louder☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic☐ Transcribe | ☐ Not reached☐ Reached |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments: _____

RECEIVED CHCF MAY 12 2020 HCGO

COMPLETED CHCF STAFF USE JUL 16 2020 HCGO

RECEIVED CHCF ONLY AUG 03 2020

COMPLETED HCARB OCT 13 2020

EXHIBIT D-025

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**HEALTH CARE GRIEVANCE ATTACHMENT**
Page 1 of 2
CDCR 602 HC A (10/18)

**STAFF USE ONLY**

Tracking #:   CHCF HC 20001234

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| VERDUZCO, D | T-45537 | A2A 105 |

**SECTION A:** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

DAY. THIS WAS A FORESEEABLE INCIDENT BECAUSE I HAD COMPLETELY SHUT DOWN, I STOPPED
SHAVING, I WAS NOT MED COMPLIANT ON AND OFF, AND VERY DEPRESSED. ALL THE SIGNS WERE
OBVIOUS. HOW CAN SOMEONE JUST FADE INTO THE BACKGROUND IN AN ACUTE SETTING. THE SYSTEM
IS FLAWED AND NEEDS TO CHANGE. THE FAILURE TO HOLD STAFF ACCOUNTABLE, SETS THE TONE, AND
STAFF FEEL BEYOND REPROACH. SUPERVISORS DON'T CARE EITHER, ON MAY 02, 2020, I
ADDRESSED THIS INCIDENT WITH (SRN) C. SEAL AND I TOLD HER HOW DOES SHIT LIKE THIS
HAPPEN IN AN ACUTE SETTING, SHE SHOWED NO CONCERN.

ACTION REQUESTED; FOR FULL COMPLIANCE OF CCR 3391 (a); 3271; 3004 (a); 3265; MHSDS VOL12 CH.10
PAGES 7, 10, 21, 18. A JURY TRIAL SHOULD THIS NOT BE RESOLVED ADMINISTRATIVELY.

Grievant Signature: _____   Date Submitted: MAY 10, 2020

**SECTION B:** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name of Interviewer: _____   Signature: _____   Date: _____

RECEIVED
CHCF
MAY 1 2 2020
HCGO

COMPLETED
CHCF
JUL 1 6 2020
HCGO

RECEIVED
HCCO AUG 0 3 2020 CHCCAB

STAFF USE ONLY

OCT 1 3 2020

EXHIBIT "E"

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)                                                                                        Side 1

| IAB USE ONLY | Institution/Parole Region | Log #: | Category |
|---|---|---|---|
| | | 2S0224 | |
| | | FOR STAFF USE ONLY | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**                    **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| VERDUZCO, D | T-45537 | BGA   126 | |

**State briefly the subject of your appeal** (Example: damaged TV, job removal, etc.):
UNPROFESSIONAL CONDUCT AND ENDORSING SELF-MUTILATION

**A. Explain your issue** (If you need more space, use Section A of the CDCR 602-A): ON APRIL 18, 2022, I
BOARDED UP AT 10:20 A.M. THRU 11:05 A.M. NO ONE ASKED OR CARED IF I WAS OKAY AND
(PT) ROUNDS CONTINUED. I COULD HAVE BEEN DEAD FOR (45) MINUTES AND NO ONE WOULD
NOTICED OR CARED. FINALLY WHEN THE ALARM WAS ACTIVATED. SGT. J. BRUNNER RESPONDED

**B. Action requested** (If you need more space, use Section B of the CDCR 602-A):
IS THE RESOLUTION #: 1) A COMPLETE AND THROUGH INVESTIGATION 2) TO BE
ALLOWED TO EXHAUST THIS APPEAL TO THE THIRD LEVEL. 3) I AM OPEN TO
RESOLVE THIS MATTER ADMINISTRATIVELY OUTSIDE COURT FILINGS.

**Supporting Documents: Refer to CCR 3084.3.**
☐ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
_____
_____

☐ No, I have not attached any supporting documents.  Reason : _____
_____
_____
_____

Inmate/Parolee Signature: _____     Date Submitted: 04-24-2022

☐ **By placing my initials in this box, I waive my right to receive an interview.**

**C. First Level - Staff Use Only**                         Staff – Check One:  Is CDCR 602-A Attached?  ☐ Yes  ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review.
Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____
First Level Responder: Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.
          Date of Interview: _____  Interview Location: _____
Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____
          See attached letter.  If dissatisfied with First Level response, complete Section D.
Interviewer: _____ (Print Name)  Title: _____  Signature: _____  Date completed: _____
Reviewer: _____ (Print Name)  Title: _____  Signature: _____
Date received by AC: _____

EXHIBIT E-027

AC Use Only
Date mailed/delivered to appellant ____/____/____

STAFF USE ONLY
APR 24 2022

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A   (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

IAB USE ONLY | Institution/Parole Region | Log # | Category

Side 1

Attach this form to the CDCR 602, only if more space is needed.   Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number | Unit/Cell Number | Assignment |
|---|---|---|---|
| VERBOZCO, D | T-45537 | BCA   126 | |

**A.** Continuation of CDCR 602, Section A only (Explain your issue) I ASKED TO SPEAK TO CAPTAIN
MARTINICEK. WITHOUT PROVOCATION SGT. J. BRUNNER TOLD ME, "YOU'RE NOT TALKING TO NO
F#CKEN CAPTAIN. I DON'T GIVE A FU#K IF YOU CUT YOUR FINGERS OFF", I DON'T GIVE A
IF YOU CUT YOUR HEAD OFF AND MAIL IT OUT. SGT. J. BRUNNER WAS KNOWLEDGE THAT I
PREVIOUSLY CUT OFF TIPS OF MY FINGERS AND MAILED THEM OUT. SGT. J. BRUNNER'S
COMMENTS TO ME ON APRIL 18 - 2022 WERE ENDORSING SELF MUTILATION AND MULTIPLE (CDCR)
STAFF WERE PRESENT, HEARD IT, AND NONE DID NOTHING. SGT. J. BRUNNER CONTINUES TO
YELL I DON'T GIVE A FU#CK WHAT THE CAPTAIN TOLD YOU. THE VIDEO MAY HAVE NO
AUDIO BUT THE FOOTAGE WILL SUPPORT MY VERSION. On APRIL 19.2022 SGT. J. BRUNNER
ENTERED MY ROOM, HE WAS IN BY AT LEAST 4 FEET, OUT OF CAMERA RANGE SGT. J.
BRUNNER TOLD ME HE NEVER ADVOCATES TO INMATES SO HIS APOLOGY SHOULD BE
GOOD ENOUGH. I TOLD HIM I APPRECIATE THE APOLOGY BUT I STILL INTEND TO WRITE
HIM UP AND SUE. HE TOLD ME, "ARE YOU READY GOING TO HOLD A GRUDGE FOR WHAT
HAPPENED. AND GET ME AN "ADL" (SOMETHING TO THAT AFFECT). SGT. J. BRUNNER
THEN SAID, I WANT TO RESOLVE IT WITH YOU NOW, WHAT CAN I GET YOU. I ASKED
WHAT DO YOU MEAN. SGT. J. BRUNNER SAID, CANTEEN, ITEMS FROM PKG. HE THEN
TOLD ME YOU NEED TO CALL YOUR SISTER AND TELL HER WE RESOLVED IT. I
AGREED THE TERMS INSTEAD OF SUING. THIS RESOLUTION WAS TO SGT. J. BRUNNERS
BENEFIT THERE WAS MULTIPLE WITNESSES. HE IS ON VIDEO ...

Inmate/Parolee Signature: _____   Date Submitted: 04-24-22

**B.** Continuation of CDCR 602, Section B only (Action requested) 4) PRESERVE ALL FOOTAGE FOR 4-18-22 AND
4-22-2022. YOU HAVE A DUTY TO PRESERVE SINCE I'm PUTTING (CDCR) ON NOTICE OF MY
INTENT TO SUE. 5) SGT. J. BRUNNER CANNOT AVOID DISCIPLINARY ACTION BY CLAIMING,
IT WAS RESOLVED BETWEEN US. IF THE AGREEMENT HE PROPOSED WAS NOT HONORED, THERE IS
NO RESOLUTION AND THE ISSUE IS NOT RESOLVED. 6) PRESERVE FOOTAGE FOR 4-18-22 AND
4-22-2022. WHERE A LETTER CLEARLY THREATENS LITIGATION, THE DUTY TO PRESERVE IS TRIGGERED
GOODMAN V. PRAXAIR SERVICES, INC. 632 F. SUPP. 2d, 494, 511 (D. md 2009).

Inmate/Parolee Signature: _____   EXHIBIT E-026   Date Submitted: 04-29-2020

STAFF USE ONLY

EXHIBIT " F "

# Investigations Into the Deaths of Several Prisoners and Two Guards Reveal Rampant Corruption, Cover-ups in California Prison

## by Keith Sanders

WHEN BRANT DANIEL FOUND HIMSELF in one of California's most violent and corrupt prisons, the California State Prison (CSP) in Sacramento, known as New Folsom, he knew he was in trouble. Daniel, a member of the Aryan Brotherhood prison gang, potentially faces the death penalty for the October 2016 murder of fellow prisoner Zachary Scott at the Salinas Valley State prison, so he is no stranger to trouble or violence. But Daniel's attorneys, John Balazs and Timothy Warriner, are asking a federal court to move him to a different prison for his protection. From whom? Guards employed by the California Department of Corrections and Rehabilitation (CDCR), who have allegedly harassed him and even planted a knife in his cell.

In filings entered on December 28, 2021, the lawyers also claim that two guards wrote replies to notes from Daniel, admitting they could hear his privileged phone conversations with counsel. It is the latest attempt in a year to move Daniel out of CSP-Sacramento since their January 2021 court filings claiming that "rogue" guards "have planted weapons and drugs in inmates' cells in order to obtain more overtime, have spread false rumors and relayed confidential information from inmates' files to other inmates in violation of CDCR policy, and on at least two occasions have been directly involved in the killing of a CSP-Sacramento inmate."

With a staff of 2,500, CSP-Sacramento houses almost 2,200 prisoners. A security-level 4 facility, the highest in the California prison classification system, it is home to the state's most violent and dangerous prisoners, as well as patients so mentally ill that they are too dangerous to be housed in mental hospitals.

Daniel is one of several Aryan Brotherhood members locked up at the prison facing charges stemming from a June 2019 racketeering indictment against the group. But prisoner assaults on guards are also rampant, where prison staff allegedly face "gassing"—when prisoners throw feces and urine on them—almost daily.

As an anonymous guard told the *Sacra-*mento Bee, "[Y]ou have to be hard. You have to know when to flip that switch and get crazy. Because if you don't fight that crazy individual with a crazy mentality, you're going to lose."

Yet much of that "crazy mentality" at New Folsom by guards is also corrupt and illegal.

In their court filing, Daniel's attorneys also revealed that a New Folsom guard provided much of the information for their suit. That was Sergeant Kevin Steele, who began his career as a prison guard in 2001 at San Quentin State Prison. In 2008, he was promoted to sergeant and transferred to New Folsom where he eventually joined the Investigative Services Unit (ISU) in 2015.

As a member of ISU, a detective unit inside the prison, the 56-year-old sergeant acted as the unit's criminal prosecution coordinator and facilitated investigations involving outside agencies like the FBI, local law enforcement, and the Sacramento County District Attorney's office. Steele also trained in-coming guards on how to collect evidence and conduct investigations.

As an investigator, Steele had expertise and knowledge about prisoner investigations. And what he saw in the course of his work caused him concern, sufficiently so to write several memos to CSP-Sacramento Warden Jeffery Lynch and the state corrections secretary detailing how other ISU member were falsifying documents, planting evidence on prisoners, and even conspiring to murder prisoners. Guards who spoke anonymously with the *Sacramento Bee* described Steele as a "meticulous professional."

In one memo, Steele wrote that at "every single juncture where I discovered something that resembled corruption, wrongdoing, exploitation, fraudulency and/ or breeches of trust, I ALWAYS alerted supervisory staff and institutional leadership, as that is what I thought was the desire of both the administrative staff and [CDCR]," and adding "it would appear that is NOT the desire of either entity."

Tragically, Steele committed suicide on August 20, 2021. Why? Once other guards and members of ISU discovered that one of their own was a "snitch," they harassed Steele mercilessly, and even mistreated and threatened him. Eventually, Steele was forced to take a leave of absence in February 2021 and, amazingly, on February 12, 2021, he was barred from returning to the prison.

CDCR's press secretary, Dana Simas, refuted Steele's claims of harassment and noted in an email that the investigator was "banned due to a misconduct investigation," though she declined to clarify the nature of the misconduct, adding only that it was not the "result of whistleblower retaliation."

Yet Steele was the second ISU whistleblower to die after being mistreated and harassed. In 2020, guard Valentino Rodriguez, 30, was found dead of an accidental fentanyl overdose at his home. Relatives and friends reported that he was "throwing up all the time at work and hyperventilating" because he was suffering from PTSD and depression. He gained 45 pounds and began seeing a therapist. Rodriguez took a leave of absence on January 28, 2020, and died soon after.

The relatives of Rodriguez filed a complaint with the Office of Internal Affairs alleging racial and anti-gay slurs from his fellow guards had contributed to Rodriguez's decline in mental health. After an initial investigation, an internal affairs officer concluded that a "reasonable belief was established to allege serious misconduct occurred." Ten guards were disciplined for Rodriguez's hazing and mistreatment, and CDCR moved on December 28, 2021, to fire two more. None was identified.

The corrupt and abusive culture inside New Folsom reflects a larger trend for the health of prison guards. In 2017, a study by the University of California, Berkeley, found that guards are "exposed to violence at rates comparable to military veterans, and that the job is linked to health problems, depression and suicidal thoughts." According to the California Correctional Peace Officers Association, nine guards committed suicide in 2020.

Yet the mental health of guards should not detract from the misconduct they direct

toward prisoners at New Folsom. Steele was threatened primarily because he blew the whistle on corrupt guards and cover-ups involving two prisoner deaths where guards played a role.

Attorneys for one of the dead men, Luis Giovanny Aguilar, 29, claim in a civil rights lawsuit that prison guards "via their willful indifference" to prevent and their actual facilitation of the murder of Mr. Aguilar conspired to cause" the prisoner's death in December 2019.

Three other prisoners, Dion Green, Anthony Rodriguez and Cody Taylor, were restrained with metal cuffs in chairs along with Aguilar. Video of the incident shows that after Taylor and Rodriguez slipped free from their restraints they went to the second floor to grab a weapon. When they returned, they attacked Aguilar, who remained cuffed to his chair.

Ultimately, Taylor pleaded no contest and was sentenced in May 2021 to 100 years to life, plus two years. Charges were still pending against Rodriguez and Green on December 10, 2021, when Aguilar's mother filed a federal lawsuit alleging that video evidence showed guards let the prisoners who killed him make a "practice run" a week before the murder. Although CDCR insists that no staff was involved with Aguilar's murder, the incident took place in full view of guards on the first floor.

Steele had also provided information to an attorney for 29-year-old Milton Beverly, who was found dead in his cell in 2016. Disputing prison staff's claim that Beverly had hanged himself alone in his cell, Steele told the lawyer, Steven Glickman, that another prisoner had confessed, both in writing and on video, to killing Beverly in a fight over the telephone. Yet when Glickman reviewed the documents relating to his client's alleged suicide the "confessions were missing," he noted. Steele notified Warden Lynch of the missing documents and indicated to Glickman that he would publicly testify to their existence, but his subsequent suicide prevented that from happening.

In November 2020, guards Ashley Marie Aurich, 32, and Arturo Pacheco, 38, were indicted after the death of an unnamed 65-year-old prisoner in 2016. Aurich was charged with Falsification of Records in a Federal Investigation (18 U.S.C. §1519) and pleaded guilty in January 2021. Pacheco's indictment listed two counts under the same charge and two more counts of Deprivation of Rights Under Color of Law (18 U.S.C. §242), for which he is still awaiting trial.

The charges stemmed from an incident in which Aurich, Pacheco, and at least three other guards were escorting a handcuffed prisoner from one cell to another. According to Pacheco's indictment, he released his grip on the prisoner's arm during the escort and then wrapped his arms around the prisoner's legs, causing him to land face first on the floor. The prisoner was taken to the hospital where he died two days later. The indictment also alleged that Pacheco falsely stated he used "immediate force" because he was trying to stop the prisoner "from self-harming himself and causing serious bodily injury or death to himself."

As for Aurich, her indictment alleged she "knowingly and falsely stated that the only witnesses to the assault...were Correctional Officer 1, Correctional Officer 3, and Correctional Officer 4, intentionally concealing the presence of Correctional Officer 2," which was Pacheco.

To date, the corruption and mistreatment of both staff and prisoners at New Folsom continue unabated. Officials are quick to insulate many of the guards from administrative or legal consequences for their actions by claiming no wrongdoing or putting the blame on prisoners. Moreover, promises of investigating misconduct by guards are minimized by having investigations performed by ISU, the very same unit that saw two of its members hazed, threatened and harassed to the point of death for uncovering the misconduct of others in the unit. This is nothing new and has been the norm in CDCR for at least a half century if not longer. ◼

Sources: *AP News, Sacramento Bee*

EXHIBIT "G"

STATE OF CALIFORNIA
**INVOLUNTARY MEDICATION PETITION (PENAL CODE 2602)**
CDCR MH-7363-1 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 1
Instructions: Page 2

| Involuntary Medication Petition |
|---|

Patient Name (Last): VERDUZCO          (First): DANIEL          CDCR #: T45537          PID #:

Date: February 14, 2023   Institution: CHCF-Stockton          Bed/Cell/Dorm: CHCF B 306A1-126001L

Age: 42     Gender: ☒Male ☐Female     Interpreter: ☐Yes ☒No     Language: English

### NOTICE OF INTENT TO SEEK INVOLUNTARY MEDICATION

The clinical staff at the institution shown above alleges that you have a serious mental illness and are unwilling or unable to take psychiatric medication necessary to treat your condition. As a result, you are a danger to self, a danger to others, or gravely disabled. A hearing has been scheduled in front of an Administrative Law Judge, who will decide if you must take psychiatric medication. You have a right to attend.

**HEARING TYPE** (Choose one):

☒ NON-EMERGENCY (Hearing within 21-30 days of this notice, no interim medications allowed)

☐ EMERGENCY (Hearing within 21 days of this notice, interim medications allowed)

Date and Time Medication Started: _____

Hearing Date and Time: March 16, 2023 @ 0900          Hearing Institution: CHCF

**Initiating Psychiatrist:**

Name and Title (Print):   E. CHICA, MD

### ATTORNEY

If the Department is seeking an emergency petition, you or your attorney have two business days from the date you were served to file a response with the Office of Administrative Hearings. You have been appointed an attorney who has been given a copy of this paperwork. The attorney information is as follows:

Attorney Name:  Rodney Simmons          Attorney Address  10824 Olson Drive, Ste. C126

Attorney Phone:  916-591-1784                              Rancho Cordova, Ca 95670

### SERVICE

I declare under penalty of perjury that I delivered a copy of this notice, a copy of the form CDCR MH-7366 "Inmate Rights to Notice - Involuntary Medication", and any related paperwork to the attorney listed above and to the inmate named in this document on the date shown below. In the event of an emergency petition, I further declare that the inmate and Office of Administrative Hearings were served with this notice within 72 hours of the start of involuntary medication.

**Person Delivering Petition:**

Name and Title (Print): S. Mora, MCA          Signature:          Date: 02/14/2023

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | | |
|---|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☐ Patient asked questions | CDCR #: | T45537 |
| ☐ DFH  ☐ DPV  ☐ LD | ☐ Equipment  ☐ SLI | ☐ Patient summed information | | |
| ☐ DPS  ☐ DNH | ☐ Louder  ☐ Slower | | Last Name:  VERDUZCO  MI: | |
| ☐ DNS  ☐ DDP | ☐ Basic  ☐ Transcribe | Please check one: | First Name:  DANIEL | |
| ☒ Not Applicable | ☐ Other* | ☐ Not Reached*  ☐ Reached | | |
| | | *See chrono/notes | DOB:  07/25/1980 | |
| 4. Comments:   TABE: N/A; NDD | | | | |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

**DISTRIBUTION:** Original: Health Records Copies: Patient, MCA, patient's attorney, OLA, OAH
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other; 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT G-031

STATE OF CALIFORNIA
**DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION**
CDCR MH-7363-2 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 3
Instructions: Page 4

| Declaration in Support of Initial Involuntary Medication |
|---|

| Patient Name (Last): Verduzco | (First): Daniel | CDCR #: T45537 | PID #: |
|---|---|---|---|

| Date: Feb 03, 2023 | Institution: CHCF-STOCKTON | Bed/Cell/Dorm: B6A-126 |
|---|---|---|

| Age: 42 | Gender: ☒Male ☐Female | Interpreter: ☐Yes ☒No | Language: English |
|---|---|---|---|

1. I am a licensed psychiatrist employed by the State of California to treat patients sentenced to imprisonment or housed in a California state prison, including facilities operated by the Department of State Hospitals to treat California Department of Corrections and Rehabilitation patients.

2. In my professional opinion, the patient listed above exhibits symptoms of a serious mental illness requiring psychiatric medication.

3. Based on my interaction with the patient and my review of the chart and materials gathered by the clinical team, I have made a working psychiatric diagnosis of: Major Depressive Disorder, Adjustment reaction with anxious mood, Adjustment diosrder with disturbance of ocnduct, Borderline (BPD)

4. The basis for the above diagnosis is as follows:

a. What are the general (textbook) symptoms of the serious mental illness in the diagnosis?

Major Depression is a disorder characterized by feelings of worthlessness, hopelessness or guilt, fixating on past failures or self-blame, trouble thinking, concentrating, making decisions and remembering things, irritability, poor impulse control. Frequent or recurrent thoughts of death and suicidal thoughts.

b. Which of these symptoms or behaviors have clinical staff observed in the patient, and when?

Mr. Verduzco has been at CHCF since 11/18/2020, ever since clinical staff have observed "on and off" symptoms of Mood lability/instability, depression, agitation, anxiety, impulsivity, threaths of self injurious behaviour, occasional paranoid beliefs (often about custody), impaired frustration tolerance, poor coping skills, non-compliance with treatment, poor insight. These symptoms have worsened since he stopped taking his meds regularly on Dec 21,2022

c. Did you rely upon historical information supporting the above diagnosis for this patient? If so, please specify what you relied upon (first onset, historical course of mental disorder, prior hospitalizations, prior medication history, etc.):

1  This is 42 years old Hispanic Male with Psychiatric history Major Depressive Disorder, Adjustment reaction with anxious mood, Adjustment disorder with
2  disturbance of conduct, Borderline (BPD). with prior hospitalizations, Acute on 9/13/16-11/8/16, 7/19/19-10/7/19, 10/29/19-1/14/20, 2/13/20-11/18/20. PIP
3  level of care at CHCF since 7/19/19, starting at Acute and now at ICF since 11/18/2020. He was initially referred for attempting to cut off a finger, as well as
4  on-going threats to engage in SIB. Mr. Verduzco has long history of self-injurious behavior (self-amputation cut tongue in half 4/2016, OD on sleeping pills
5  4/2017, bit tongue 4/2017, lacerations X two 5/2017 of left fifth finger, necrosis and partial amputation, pulled out sutures 5/2017, laceration to left 4th finger
6  7/2019, 10/2019 over several acts cut off left 4th finger, cut off tip of left second finger 4/2020, laceration 5/2020 reopened wounds and cut tip off left middle
7  finger 6/2020). On Dec 2022 patient reported recurrent threats to staff that he was going to amputate another finger in the month of January 2023, he did
8  not engage in SIB however continues to report that it is a matter of time to next self-injurious behavior, Since Dec, 2022 he has been refusing most psych
9  meds, regularly fails to comply with safety checks of his extremities requiring enhanced observation either Q 11 or SW from Dec 29, 2022- Feb 01,2023.

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
|---|---|---|---|
| ☐TABE score ≤ 4.0 | ☒Additional Time | ☒Patient asked questions | CDCR #: T45537 |
| ☐DPH ☐DPV ☐LD | ☐Equipment ☐SLI | ☒Patient summed information | Last Name: Verduzco   MI: |
| ☐DPS ☐DNH | ☐Louder ☒Slower | Please check one: | First Name: Daniel |
| ☐DNS ☐DDP | ☒Basic ☐Transcribe | ☐Not Reached* ☒Reached | DOB: 07/25/1980 |
| ☒Not Applicable | ☐Other* | *See chrono/notes | |

4. Comments:

*Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*
DISTRIBUTION: Original: Heath Records Copy: MCA
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other: 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT G-032

STATE OF CALIFORNIA
**DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION**
CDCR MH-7363-2 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 2 of 3
Instructions: Page 4

| d. | What did the patient do or say as a result of their serious mental illness that supports your assertion that the patient is a danger to self, a danger to others, or gravely disabled? |
|---|---|

Danger to self:
MHPC note 11/25/2022: IP reported he had an increase of suicidal ideation last week.
MHPC note 11/25/2022-12/06/2022: IP reported that cutting a finger is still on the table and a desire to engage in self-injurious behavior.
MHMD note 12/07/2022 IP reporteed " I'm not going to hurt myself at the moment but I can't guarantee that something could happen in the near future".
MHPC RVR assessment 12/10/2022. IP verduzco boarded up twice on 12/03/2022.
MHPC note 12/29/2022:  IP has made several statements that he is planning to cut off his finger sometime in January.
MHMD note 01/31/2023 IP said I'm not saying that I couldn't hurt myself at some point "

| 5. | Based on my knowledge of the patient and their medical records, I believe that as the result of a serious mental illness, the patient is (mark all that apply): |
|---|---|

☒ Danger to self      ☐ Danger to others      ☐ Gravely disabled and lacking capacity to accept or refuse medications

| 6. | Please articulate how the patient's mental health history and the acts and behaviors in questions 3, 4, and 5 (above), are a result of the patient's serious mental illness (i.e., how the acts or behaviors align with the diagnosis, etc.). |
|---|---|

Patient has shown symptoms  of mood lability/instability, depression, agitation, anxiety, impulsivity, threaths of self injurious behaviour (several times) he has strong history of SIB (self amputation), occasional paranoid beliefs (often about custody), impaired frustration tolerance, poor coping skills, non-compliance with treatment, refusing medicaton for mental health,  poor insight. All contributing to high risk of danger to self.

| 7. | On   02/03/2023   \ I have recommended to the patient one or more psychiatric medications for the treatment of the patient's serious mental illness, have considered the risks, benefits, and treatment alternatives to involuntary medication, and have determined that the treatment alternatives to involuntary medication are unlikely to meet the needs of the patient. |
|---|---|
| 8. | I have advised the patient of the risks and benefits, and treatment alternatives to involuntary medication. The patient refused, does not have the capacity, or could not accept psychiatric medications. |
| 9. | The expected benefits of this medication to the patient are: |

Use of psychotropics medication can be used as first line treatment of chronic depression, and to reflief associated symptoms by reducing depressed/labile mood, anxiety, poor self-control, paranoid thinking, promote sleep and also can reduce impulses to self harm.

**Declaration in Support of Initial Involuntary Medication**
CDCR MH-7363-2 (03/17)

| CDCR #: | T45537 | |
|---|---|---|
| Last Name: | Verduzco | MI: |
| First Name: | Daniel | |
| DOB: | 07/25/1980 | |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

DISTRIBUTION: Original: Heath Records  Copy: MCA
eUHR SCANNING LOCATION: MHChrono/Misc-Legal/Other; 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation > Legal

EXHIBIT G-033

STATE OF CALIFORNIA
**DECLARATION IN SUPPORT OF INITIAL INVOLUNTARY MEDICATION**
CDCR MH-7363-2 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 3 of 3
Instructions: Page 4

| | |
|---|---|
| 10. Potential risks and side effects of providing this medication to the patient are:<br><br>The Psychotropic medications may have following side effects with second and first generations anti Psychotics;<br>Weight gain,<br>EPS, dystonia, tremors, shakes, muscle stiffness, rigidity.<br>Metabolic syndrome: Weight gain, Hyperglycemia, High Cholesterol, Dyslipidemia increase in waist measurement. increase BMI,<br>Neuroleptic Malignant syndrome (NMS).<br>Sedation, tiredness. | |

11. Based on the facts and diagnosis indicated above, as well as my review of documents both in the treatment team profile of this patient and in the chart, it is my opinion the patient requires psychiatric medication to treat their illness. Without medication, the patient would present as an elevated chronic risk, an imminent risk, or both.

12. If this petition is based on a threat of harm to self or others, please state upon what basis you believe the threat is credible.

Mr. Verduzco has strong history of self injurious behaviour (self amputation multiple times- see above.) and poor impulse control
He has repeatedly declined medications when offered since Dec 21, 2022, ever since his symptoms have gradually worsened including  mood lability, poor impulse control, poor engagement with clinicians, fragmented sleep, isolation, poor tolerance to stress.

Without the medication, he is likely to deteriorate further and possibly to engage in self injurious behavior.

13. In my opinion there is no less restrictive alternative than to seek a court order to administer psychiatric medication.

14. I am initiating this matter on the following basis:

[X] Non-emergency (no medications prior to Administrative Law Judge hearing)      [ ] Emergency (ex-parte application for medication attached)

I declare under penalty of perjury that the foregoing is true and correct.

Date: 02/03/2023     , in the City of Stockton         , California, in the County of San Joaquin

Print Name and Title:  Edgar Andres Chica, MD, Psychiatrist                    Signature:

| | |
|---|---|
| **Declaration in Support of Initial Involuntary Medication**<br>CDCR MH-7363-2 (03/17) | CDCR #:     T45537<br>Last Name:  Verduzco                    MI:<br>First Name:  Daniel<br>DOB:        07/25/1980 |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.
**DISTRIBUTION:** Original: Heath Records  Copy: MCA
**eUHR SCANNING LOCATION:** MHChrono/Misc-Legal/Other; 7363 Notice of Certific  n for Involuntary Medication
**EHRS LOCATION:** Mental Health Documentation > Legal

EXHIBIT B- 034

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____San Joaquin_____ )

On ___February 03, 2023___ before me, ___Chanda Hai, Notary Public___
                                               (insert name and title of the officer)

personally appeared ___Daniel Verduzco_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

CHANDA HAI
Notary Public - California
San Joaquin County
Commission # 2420143
My Comm. Expires Oct 9, 2026

Signature _____ **(Seal)**

EXHIBIT B- 035

**DECLARATION**

1. DANIEL VERDUZCO, DECLARE THE FOLLOWING :

1. THAT (CHCF) IS A CAMERA FACILITY AND ON JANUARY 25, 2023 AT 4:30 P.M. I CAME THE BELOW GA-22 FORM DATED JAN. 25, 2023 TO BCA PSYCHOLOGIST D. HARRISON AT MY CELL FRONT WHICH INCLUDED A COMPLETE COPY OF CDCR ZERO TOLERANCE REGARDING THE CODE OF SILENCE. SEE PG. 2 OF 2 ATTACHED .

STATE OF CALIFORNIA
GA-22 (Rev. 2013-10)

DEPARTMENT OF CORRECTIONS & REHABILITATION

# INMATE REQUEST FOR INTERVIEW

| DATE | TO | FROM (LAST NAME) | | CDCR NUMBER |
|---|---|---|---|---|
| JAN. 25, 2025 23 | PSYCHOLOGIST D. HARRISON | VERDUZCO D. | | T-45537 |
| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER | |
| BCA | 116 | | FROM . | TO |
| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | | | ASSIGNMENT HOURS | |
| | | | FROM | TO |

Clearly state your reason for requesting this interview.
You will be called in for interview if the matter cannot be handled by correspondence.

DR. HARRISON ALTHOUGH YOU ARE DUTY BOUND TO WRITE AN OFFICIAL RVR REPORT, I ACKNOWLEDGE THAT ITS UNFAIR TO PLACE THAT ENTIRE BURDEN ON YOU. SUPERVISORS SET THE TONE AND THE TONE BEING SET BY CHCF OTHER OF MENTAL HEALTH STAFF MINDER IS THAT ITS ACCEPTABLE NOT TO REPORT SEXUAL ABUSE BECAUSE "I'M LIVES DON'T MATTER. ANY EMPLOYEE THAT BECOMES AWARE OF MISCONDUCT HAS TO REPORT IT THAT INCLUDES RVR CODER UP'S ... EVERYONE THAT HAS SEEN THE FORFEITURE EVIDENCE AND CHOOSES TO DO NOTHING DESPITE LAW AND TRAINING, i.e. RVR TRAINING, IS CONTRIBUTING TO THOUGHTS OF MY SELF-WORTH AND THAT MY EXISTENCE AS A HUMAN BEING HAS ZERO VALUE. I'M BEING REVICTIMIZED BY CALLOUS MENTAL HEALTH PROFESSIONALS. I'M NOT ENDEAVORING TO RID ELICIT PITY OR SYMPATHY. I'M CALLING A SPADE, A SPADE... AND I KNOW YOU GUYS DON'T GIVE A DAMN! ... I'M AN INMATE ; NOTHING MORE, NOTHING LESS. I'M NOT GRIEVING OR THE DENY OF BE BY CHCF MENTAL HEALTH. I'M NOT ASKING ANYONE TO FEEL SORRY FOR ME. I'M ASKING PEOPLE TO COMPLY WITH RVR TRAINING AND STOP BEING SILENT BY STANDERS - ALTHOUGH ADDRESSED TO YOU THIS IS INTENDED FOR MY ENTIRE MENTAL HEALTH TEAM AND CHCF. (MY) SUPERVISOR'S INDULGENCE OF SILENT MINOR .

INTERVIEWED BY

DATE

Do NOT write below this line—If more space is required, write on back.

DISPOSITION

Picked up by
Psychologist D. Harrison
@ 4:30 P.M. At Cell Front
On Camera On 01/25/2023.

I DECLARE THE FOREGOING IS TRUE AND CORRECT . IF CALLED UPON TO DO SO, I CAN TESTIFY TO THESE MATTERS. THIS DECLARATION WAS EXECUTED ON THE 26TH OF JANUARY 2023 AT STOCKTON CALIFORNIA .

D.

_signature_  02/03/23
12:43 P.M.
Notarized
(PAGE 1 OF 2)

DANIEL VERDUZCO, T-45537

RIGHT THUMB PRINT
02/03/2023
12:43 P.M.

EXHIBIT G-036

## California Department of Corrections and Rehabilitation
### *Zero Tolerance Regarding the "CODE OF SILENCE"*

The California Department of Corrections and Rehabilitation (CDCR) is only as strong as the values held by each of its employees, sworn and non-sworn. How we conduct ourselves inside our institutions and in the Central Office is a reflection of those values.

The "Code of Silence" operates to conceal wrongdoing. One employee, operating alone, can foster a Code of Silence. The Code of Silence also arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those employees who report wrongdoing. Fostering the Code of Silence includes the failure to act when there is an ethical and professional obligation to do so.

Every time a correctional employee decides not to report wrongdoing, he or she harms our Department and each one of us by violating the public's trust. As members of law enforcement, all Correctional Officers must remain beyond reproach. The public's trust in this Department is also violated by retaliating against, ostracizing, or in any way undermining those employees who report wrongdoing and/or cooperate during investigations. There is no excuse for fostering a Code of Silence.

Your hard fought efforts to protect the public deserve recognition and the public's trust must be maintained while we take steps to ensure the Department exemplifies integrity and instills pride. Part of this effort is the immediate implementation of a zero tolerance policy concerning the Code of Silence. We will not tolerate any form of silence as it pertains to misconduct, unethical, or illegal behavior. We also will not tolerate any form of reprisal against employees who report misconduct or unethical behavior, including their stigmatization or isolation.

Each employee is responsible for reporting conduct that violates Department policy. Each supervisor and manager is responsible for creating an environment conducive to these goals. Supervisors are responsible for acquiring information and immediately conveying it to managers. Managers are responsible for taking all appropriate steps upon receipt of such information, including initiating investigations and promptly disciplining all employees who violate Department policy.

Any employee, regardless of rank, sworn or non-sworn, who fails to report violations of policy or who acts in a manner that fosters the Code of Silence, shall be subject to discipline up to and including termination.

EXHIBIT G- 037

# PROOF OF SERVICE BY MAIL
## [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF   SAN JOAQUIN

I am a citizen of the County of   SAN JOAQUIN   , State of California. I am a citizen of the United States of America. I am over the age of eighteen (18) and not a party to this action. I am a resident of the County of San Joaquin, CDCR# T-45537 .

My address is:   DANIEL VERDUZCO # T- 45537

California Health Care Facility

P.O. BOX 32110

Stockton, CA 95213

On   FEB 15   , 2023, I served via United States Mail a copy of the following document(s):   PL SEEKS A 7-DAY EXTENSION OF TIME TO FILE FIRST AMENDED COMPL. INJUNCTION

The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013. I placed the envelope or package in a mailbox or other like facility addressed to:   U.S. DISTRICT COURT

501 I STREET, SUITE 4-200
SACRAMENTO  CA  95814 - 2322

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on   FEB. 15   , 2023  in San Joaquin County, California.

DANIEL VERDUZCO
_____
Type or Print Name

_____
Signature

# PROOF OF SERVICE BY MAIL
# [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF ___San Joaquin___

    I am a citizen of the County of ___San Joaquin___, State of California. I am a citizen of the United States of America. I am over the age of eighteen (18) and not a party to this action. I am a resident of the County of San Joaquin, CDCR# _T-45537_.

    My address is: _David Verduzco # T-45537_

              California Health Care Facility

              _P.O. Box 32110_

              Stockton, CA 95213

    On ___Feb. 20___, 2023, I served via United States Mail a copy of the following document(s): _First Amended Complaint._

    The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013. I placed the envelope or package in a mailbox or other like facility addressed to:

              _U. S. District Court_
              _501 I Street, Suite 4-200_
              _Sacramento, Ca. 95814- 2322_

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on ___Feb. 20___, 2023 in San Joaquin County, California.

_David Verduzco_

Type or Print Name

                            Signature

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)   (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| VERDUZCO , D | | T- 45537 | |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM_____ TO_____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| B6A  126 | (PIP) | | LEGAL MAIL |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: TODAY IS 02/20/2023, I AM RELINQUISHING MY
FIRST AMENDED COMPLAINT TOTALING 84 PG.S FOR FILING CASE. No. 2:22-CV-0569-TLN-DMC-P.
NORTHERN DISTRICT COURT. "PRO SE PLEADINGS DEEMED FILED ON DATE PLACED IN LEGAL MAIL NOT
DATE OF RECEIPT BY COURT CLERK", DILS V. SMALL, 260 F. 3d. 984 (9TH CIR. 2001). "MAILBOX RULE
APPLIES TO PRO SE & 1983 CLAIMS", SULIK V. TANLEY COUNTY, 316 F. 3d. 813 (8TH CIR. 2003)

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☑ SENT THROUGH MAIL: ADDRESSED TO: LEGAL MAIL PER CCR. TIT. 15 § 3141 (c)(8)_____ DATE MAILED: 02/20/2023
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| J. Headwca | FEB. 20, 2023 | | (CIRCLE ONE)  (YES)   NO |

| IF FORWARDED - TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| COURT CLERK , U.S. DIST. COURT. | FEB. 20, 2023 | (CIRCLE ONE)  IN PERSON   (BY US MAIL) |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.