IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VERDUZCO, | No. 2:22-CV-0569-TLN-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| B. JAO, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint. See ECF No. 16.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

# I. BACKGROUND

### A. **Procedural History**

Addressing Plaintiff's original complaint, which alleged violations of Plaintiff's Eighth Amendment rights related to medical treatment, the Court determined as follows:

> The Court finds that Plaintiff has failed to state cognizable claims for the violation of his Eighth Amendment rights.  Plaintiff asserts the violation of his Eighth Amendment rights in three claims.  On his first claim, the Court finds that he has not stated a cognizable claim against Defendants Doe I and Jao due to the lack of supervision during his Suicide Watch because they lacked a sufficiently culpable mind.  Following the same reasoning, Plaintiff has failed to assert a cognizable claim against Defendant Areja for the same allegations in his second claim.  In Plaintiff's second claim, he has failed to state a cognizable claim against Defendants Mohammed and Ojagwu for the alleged delay of medical assistance.  Lastly, in his third claim, Plaintiff has failed to state a cognizable claim against Defendants Ferrera, Morashige, Folorunso, Rosenof, Trinidad, Rasool-Vali, Housain, Sill, Sandy, Recarey, and Pesanti for vague and conclusory allegations.

ECF No. 12, pg. 6.

Plaintiff was provided leave to amend and timely filed the currently pending first amended complaint.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**B.      Plaintiff's Allegations**

The events alleged in the amended complaint occurred while Plaintiff was housed at the California Health Care Facility (CHCF).[1] Plaintiff brings suit against the following named defendants: (1) B. Jao, Psychiatric Technician; (2) L. Areja, Certified Nurse Assistant; (3) Z. Mohammed, Psychiatric Technician; (4) A. Ojagwu, Registered Nurse; (5) A. Ferrera, Respiratory Therapist; (6) K. Sill, Registered Nurse; (7) J. Rosenof, Respiratory Therapist; (8) J. Tran, Registered Nurse; (9) R. Recarey, Chief Executive Officer; (10) M. Lowe, Registered Nurse; (11) A. Prasad, Registered Nurse; (12) J. Brunner, Sergeant; (13) E. Martinez, ISU; (14) D. Yang, Officer; (15) P. Blumenthal; (16) Gena Jones; Warden; (17) Purtie, Sergeant; and (18) Singh, Sergeant.[2] See ECF No. 16.

Plaintiff alleges violations of his Eighth and First Amendment rights in the following claims.[3]

First Claim

In his first claim, Plaintiff alleges the violation of his Eighth Amendment rights because he was not properly supervised during Suicide watch which ultimately led to self-harm and the amputation of his fingers. See id. at 1. Plaintiff asserts that prior to the incidents discussed below, Plaintiff had a significant history of suicide attempts and self-harm. See id. at 4. Additionally, Plaintiff claims that he has filed multiple complaints at CHCF regarding deliberate indifference during suicide watch and no action has been taken to correct the discrepancies.

///

///

---

[1] Plaintiff is currently housed at the California Medical Facility.
[2] The following individuals were named in the original complaint but not in the amended complaint: L. Taylor; R. Morashige; Z. Rasool-Vali; N. Pensanti; M. Folorunso; J. Trinidad; M. Sandy; M. Taye; C. Bidad; and B. Housain. Because the amended complaint supersedes the original, the Clerk of the Court will be directed to terminate these individuals as defendants. The following individuals are named in the amended complaint but were not named in the original complaint: J. Brunner; E. Martinez; D. Yang; P. Blumenthal; Gena Jones; Purtie; and Singh. The Clerk of the Court will be directed to update the docket to reflect these individuals are named as defendants in the operative amended complaint.
[3] No First Amendment claims were alleged in the original complaint.

3

1          According to Plaintiff, in August 2019, Plaintiff was on suicide watch. Defendant J. Tran (Registered Nurse) was Plaintiff's suicide watch observer. See id. Plaintiff asserts that he began to cut off his finger in plain sight of Defendant Tran while Tran was distracted using a state issued laptop. See id. Plaintiff contends that simply placing a patient on suicide watch does not satisfy the standards set for suicide procedures. See id. at 5. Plaintiff asserts Tran's training regarding suicide watch made Tran aware of the risks of harm to the patient by disregarding suicide watch protocols. See id. Plaintiff asserts that he self-reported the injuries sustained to a different staff member due to Tran's indifference. See id.

          Plaintiff asserts that he later succeeded in cutting off his finger in plain sight of Defendant Jao – another observer for Plaintiff's suicide watch. See id. Plaintiff asserts that as he was removing his finger, bleeding profusely, and audibly expressing the pain he was experiencing for one to two hours. See id. Plaintiff contends, as with Tran, that Jao was distracted using the state issued laptop. See id. According to Plaintiff, once he snapped his finger bone, he banged on the door to get the attention of a staff member walking by while Defendant Jao continued to browse through the state issued laptop. See id. The employee saw the missing finger in the window and immediately called staff. See id.  Plaintiff contends that Jao was trained in suicide watch prevention procedures and understood the risk of harm to the patient by disregarding suicide watch protocols. See id. at 6. In addition to always keeping eyes on the patient, Jao was required to check Plaintiff's fingers every fifteen minutes and make a record of the checks. See id. Plaintiff asserts that there was ample time to detect Plaintiff's conduct and prevent the self-amputation from taking place. See id.

          Second Claim

          Plaintiff's second claim alleges the violation of his Eighth Amendment rights because of the deliberate indifference toward his medical and mental needs. See id. at pg. 6. According to Plaintiff, on October 17, the Inspector General notified CHCF staff that Plaintiff intended to cut off his finger again due to severe anxiety and paranoia. See id. Plaintiff was then placed on an increased level of suicide watch. See id. The suicide watch observers at the time were Defendants Areja and Mohammed. See id.

4

1  Plaintiff alleges that during the suicide watch, Defendant Areja failed to properly supervise Plaintiff, as Areja was falling asleep on watch. See id. At 4:00 a.m., Plaintiff began to cut off his finger with a razor blade. See id. According to Plaintiff, Areja was required to check Plaintiff's fingers every 15 minutes during observation. See id. Plaintiff claims that he was able to cut through his finger in plain sight for over an hour without intervention. See id. at 7. Plaintiff further alleges that before 4:00 a.m., Plaintiff had already begun the removal process and that Defendant Areja saw blood on Plaintiff but did not take any action to prevent further harm. See id.

At around 5:00 a.m., Areja was relieved by Defendant Mohammed. Plaintiff asserts that Mohammed also drifted in and out of sleep while Plaintiff was removing his finger. See id. Plaintiff asserts that he later requested medical assistance from Mohammed, showing Mohammed the bloody finger that was severely cut. See id. According to Plaintiff, upon finding that a patient has injured themselves, the observer is required to activate the alarm and declare a medical emergency. See id. The authorized staff is required to enter the room and remove foreign objects the patient has used for self-mutilation. See id.

Next, Plaintiff asserts that Defendant Ojagwu was informed of Plaintiff's injury, but Ojagwu failed to declare a medical emergency consistent with suicide watch protocol. See id. Plaintiff claims that Ojagwu additionally neglected to have staff remove the blade from plaintiff's room. See id. Instead, Ojagwu only slid gauze underneath Plaintiff's door. See id. Ojagwu informed Plaintiff that he would be examined by a physician around 8 a.m. See id. Plaintiff thus continued cutting his fingers and claims that Defendant Mohammed continued to drift in and out of sleep. See id.

According to Plaintiff, Defendant's refusal to act resulted in Plaintiff's continued removal of another finger while on suicide watch. See id. Plaintiff claims that the blade was not removed from his room, nor was any action taken to remove the blade. See id. Plaintiff claims that Defendants Mohammed and Ojagwu were aware Plaintiff was cutting off his finger and that their delay in care led to gangrene and later partial amputation. See id.

///

5

Third Claim

In his third claim, Plaintiff alleges the violation of Eighth and First Amendment rights based on the blatant disregard for Plaintiff's medical and mental health needs. See id. at 9. On March 4, 2020, Plaintiff was notified by CDCR that they did not find Plaintiff was sexually abused by CDCR Psychologist Bush. See id. The sexual abuse had allegedly been occurring since 2017. See id. As a result, Plaintiff began to experience self-harm ideation including the urge to cut off his fingers. See id. Somehow, Plaintiff cut off the tip of his index finger again on April 12. See id. Plaintiff informed Defendant Ferrera on April 12 and April 23 that he was having these urges. See id. On April 29, 2020, Plaintiff informed Defendant Rosenof that Plaintiff was going to act on his thoughts of self-harm. See id. Plaintiff was then placed back on suicide watch.

On May 2, 2020, Plaintiff was in major distress and covered all his windows and began reporting nurse misconduct to Defendant Sill (Senior Nurse). See id. Plaintiff additionally claims that he showed his hand to Sill to show that a finger was missing that was not completely healed. See id. According to Plaintiff, Sill took no action to report that Plaintiff was missing another finger or to locate the missing finger. See id. On May 3, 2020, Plaintiff mailed the CEO R. Recarey forms in legal mail reporting Defendant Sill about the incident previously discussed. See id.

Plaintiff informed Defendant Ferrera on May 18, 2020, that Plaintiff did not feel safe. See id. at 10. Defendant Ferrera asked Plaintiff whether he had any objects that he could harm himself with. See id. Plaintiff informed her that he did have something he could use. Ferrera questioned Plaintiff more about the item in his possession. See id. On May 22, Plaintiff was placed on suicide watch again. See id. Plaintiff refused meals for multiple days and wore the decomposed finger as a necklace. See id. Plaintiff later sent the decomposed finger through legal mail to the Law Office of Rosen, Bien, Galvan, and Grunfeld LLP, which was processed by staff at Plaintiff's door. See id.

///

///

///

As part of his third claim, Plaintiff next discusses various health care appeals submitted following the incidents outlined above. On May 5, 2020, Plaintiff submitted a health care appeal regarding his interaction with Sill. See id. at 10. Plaintiff asserts that the appeal was assigned a log number and that Defendant Prasad revised the appeal and determined it was not urgent. See id. Plaintiff asserts that no actions were taken to locate the missing digit or to put Plaintiff on suicide watch. See id. Plaintiff asserts that he was instead left to his own devices in a state of psychological deterioration. See id.

On May 10, 2020, Plaintiff filed another health care appeal stating that he was continuing to experience severe self-harm ideation with an urge to cut off his fingers. See id. On May 13, 2020, the appeal was logged and assigned to Defendant Lowe. Lowe reviewed the appeal and determined it was not urgent. See id. Plaintiff asserts that no actions were taken to locate the missing digit or to put Plaintiff on suicide watch. See id. Plaintiff again states that he was subsequently left to his own detriment in psychological deterioration. See id.

On May 28, 2020, Plaintiff cut off the tip of his middle finger and broke the bone. See id. Plaintiff subsequently mailed the amputated finger to the Office of the Inspector General in legal mail, pleading for help. See id. at 11. As a result, the Inspector General sent one of their staff to perform a wellness check on Plaintiff on June 1. See id. Plaintiff alleges that his records were falsified to show Plaintiff was receiving wound care in May 2020, reopened the injury, and cut off an additional finger in June 2020. See id. Plaintiff asserts that these records were false and impossible because fingers were mailed out in May 2020. See id. Plaintiff claims that he did not receive care despite filing multiple appeals in May 2020. See id. Plaintiff claims he was not aware of the falsified medical records until February 14, 2023.

          Fourth Claim

In his fourth claim, Plaintiff alleges the violation of his First Amendment rights based on staff concealment and falsification of Plaintiff's grievances. See id. at 11. According to Plaintiff, immediately after filing this case on March 30, 2022, the staff retaliated against Plaintiff. See id. On April 18, 2022, Sergeant J. Brunner came to Plaintiff's door without provocation. See id. Sergeant Brunner began to berate Plaintiff stating, "I don't give a fuck if you

cut your finger off, I don't give a fuck if you cut your head off." Id. Plaintiff contends that he made no indication that he was experiencing suicidal ideation or self-harm ideation during this incident. See id.  According to Plaintiff, Sergeant Brunner had to have learned about the e-filing of a lawsuit to make these statements. See id.

According to Plaintiff, on May 24, 2022, a guard approached Plaintiff and told Plaintiff that Sergeant Brunner asked staff members to lie about the incident that took place on April 18, 2022. See id. at 12. On May 25, 2022, Plaintiff submitted a grievance against Sergeant Brunner for promoting the code of silence and retaliating against Plaintiff. Plaintiff asserts that he submitted the complaint into the facilities lockbox. See id. Plaintiff asserts that the grievance was never processed and was never issued a log number as protocol requires. See id. Plaintiff attempted to file an identical complaint on June 22, 2022, and the grievance was again never processed or issued a log number. See id.

On June 23, 2022, Plaintiff filed a grievance after disclosing evidence that CHCF staff had covered up the unconstitutional sexual abuse, retaliated against Plaintiff, and chilled Plaintiff's First Amendment rights. See id. The grievance was then converted to health care, health care assigned a log # CHCF-HC-22001253 and rejected. See id. Plaintiff claims that staff then falsified loggings to show the grievance was a health care appeal against a nurse. See id. Plaintiff asserts that the grievance identifies CHCF (ISU) A. Ali as criminally corrupt and identifies no nurse. See id. Plaintiff contends that the staff converted the grievance to medical and those who falsified the lodging's effectively chilled Plaintiff's first amendment rights in retaliation. See id.

On June 30, 2022, Plaintiff filed a staff complaint through legal mail at CHCF, identifying CHCF in the coverup of Plaintiff's records. See id. Plaintiff asserts that in retaliation the legal mail along with the grievances were destroyed by CHCF inmate appeals staff. See id. Plaintiff did not receive a log number from CHCF and there is no record of the mail. See id. Plaintiff asserts that destruction of legal mail with appeals is unconstitutional and criminal under the First Amendment.

///

On June 1, 2022, Plaintiff filed another staff complaint identifying CHCF in the cover up and had an officer at the officer station sign a CDCR 22 Form with the appeal. See id. at 13. Plaintiff submitted this complaint with the signed form into the lockbox. See id. Again, the appeal was not processed, and Plaintiff did not receive a log number. See id.

On July 5, 2022, Plaintiff's family emailed headquarters a complaint regarding the missing appeals. See id. Headquarters emailed CHCF instructing CHCF to send staff to Plaintiff to retrieve the grievances and take it to inmate appeals for processing. See id. At approximately 2:00 p.m. that day, ISU E. Martinez approached Plaintiff's door, retrieved the grievances, and told Plaintiff he would receive a log number and return once the paperwork was filed with inmate appeals. See id. Plaintiff claims that instead, ISU Martinez took the grievances to the ISU office, read the grievances, and saw that the grievances identified multiple acts of misconduct at CHCF. See id. On July 13, 2022, Martinez gave the appeals to Plaintiff's floor staff to return to Plaintiff. See id. According to Plaintiff, the grievances were not filed despite headquarters requirement to do so. See id. Plaintiff contends that Martinez retaliated to chill Plaintiff's First Amendment rights because the complaint identified ISU from CHCF. See id. According to Plaintiff, Martinez knew if Plaintiff submitted the appeal in the appeal box or legal mail appeals staff would destroy the documents in furtherance of a cover up. See id.

On July 13, 2022, Plaintiff filed a copy of the complaint into BGA locked appeals box with a 22-form signed by Officer Yang. Plaintiff asserts that only the O.T. or inmate appeal staff could destroy the documents to retaliate against Plaintiff by chilling his First Amendment rights. The grievances again were not processed and were not issued a log number. See id.

Plaintiff next outlines a series of grievances he submitted which Plaintiff claims were not processed as a means of retaliating against Plaintiff and denying Plaintiff his First Amendment rights. On August 25, 2022, Plaintiff resubmitted the logged healthcare grievance log # CHCF. HC-22001253 to CHCF appeals and legal mail. See id. On August 25, 2022, Plaintiff filed a grievance in legal mail for missing/destroyed appeals. See id. Plaintiff did not receive a log number from CHCF and there is no record of the mail. See id. On August 29, 2022, Plaintiff filed a grievance in legal mail against ISU Martinez and Pinneo at CHCF for retaliation

9

by refusing to process grievances. See id.  Plaintiff did not receive a log number from CHCF and there is no record of the mail. See id.  On September 1, 2022, Plaintiff resubmitted the logged healthcare grievance log # CHCF-HC-22001253 to CHCF appeals and legal mail. See id.  On September 20, 2022, Plaintiff filed a grievance in legal mail for missing/destroyed appeals. See id.  On October 10, 2022, Plaintiff filed a grievance in legal mail against CHCF Warden Gena Jones for allowing constitutional violations by CHCF staff. See id.  Also on October 10, 2022, Plaintiff filed a grievance in legal mail against CHCF ISU Sergeant Bruns for falsifying investigation findings to conceal deprivation of constitutional rights. See id. at 14.  Plaintiff asserts that, in retaliation, these grievances were all destroyed by CHCF inmate appeals staff. See id.

In response to the multiple missing grievances Plaintiff filed, Plaintiff would mail copies of the appeals to another unidentified prison through legal mail. See id. According to Plaintiff, CHCF was not aware Plaintiff was sending the mail to another prison. See id. The other prison redirected Plaintiff's appeals to CHCF regarding destruction of legal mail (log # 303558 and 301219). See id.  Plaintiff claims that, in retaliation, Warden Jones allowed CHCF Warden Schultz, Segreant Purtie, and R. Singh to cover up the destruction of legal mail with appeals. See id. Sergeant Purtie and Sergeant Singh were assigned to investigate. See id. According to Plaintiff, these two Sergeants are outranked by the appeals staff and therefore, they cannot investigate the appeals staff. See id. Plaintiff asserts that upon investigation, Purtie and Singh falsely reported that no legal mail was destroyed. Plaintiff claims that Singh said that Plaintiff never submitted an appeal in the locked appeal box on July 1, 2022. Warden Schultz concluded that there was no evidence of misconduct at CHCF. See id. Plaintiff asserts that these falsified findings were unconstitutional and criminal in retaliation against Plaintiff.

Plaintiff alleges on December 3, 2022, in retaliation against Plaintiff, Sergeant Singh approved a false Rules Violation Report (RVR) against Plaintiff. See id. Plaintiff asserts that video footage of the incident at issue will show the RVR was falsified. See id. According to Plaintiff, P. Blumenthal prepared the false RVR which involves Singh. See id. at 16. Plaintiff reported Singh for falsifying an RVR in retaliation.

## II. DISCUSSION

The Court finds that Plaintiff's first amended complaint states cognizable Eighth Amendment claims against Defendants Tran and Jao in his first claim alleging deliberate indifference during suicide watch and Plaintiff's self-injury in August 2019. The Court also finds that Plaintiff's first amended complaint states cognizable Eighth Amendment claims against Defendants Areja, Mohammed, and Ojagwu in his second claim alleging deliberate indifference during suicide watch and Plaintiff's self-injury in October 2019. Plaintiff's first amended complaint further states a cognizable Eighth Amendment claim against Defendant Sill in his third claim alleging deliberate indifference to Plaintiff's self-injury in May 2020. The Court is prepared to order service on Defendants Tran, Jao, Areja, Mohammed, Ojagwu, and Sill.

Plaintiff has not, however, stated cognizable Eighth Amendment claims as against Defendants Ferrera or Rosenof in Plaintiff's third claim because the facts alleged do not show a culpable state of mind.

The Court also finds that Plaintiff has failed to state any cognizable claims arising under the First Amendment in his third or fourth claims. To the extent Plaintiff claims retaliation, the facts alleged fail to satisfy the elements of a retaliation claim. To the extent Plaintiff claims denial of access to the courts or interference with his legal mail, the facts alleged do not show an actual injury.

Finally, as discussed below, Plaintiff cannot state a stand-alone claim against any defendant arising from handling of the inmate appeals and grievance process.

### A. **Eighth Amendment**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." Id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from harm. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

As indicated above, the Court finds that Plaintiff has stated cognizable Eighth Amendment claims against Defendants Tran, Jao, Areja, Mohammed, Ojagwu, and Sill. Plaintiff has not, however, alleged facts sufficient to sustain Eighth Amendment claims against Defendants Ferrera or Rosenof.

///

///

///

Plaintiff alleges that he cut off the tip of his index finger for a second time on April 12. Plaintiff informed Defendant Ferrera on April 12 and April 23 that he was having self-harm urges and that he cut off the tip of his index finger for a second time on April 12. On April 29, 2020, Plaintiff informed Defendant Rosenof that Plaintiff was going to act on thoughts of self-harm. Plaintiff states that he was then placed back on suicide watch. According to Plaintiff, after this, he was asked by Defendant Ferrera whether Plaintiff had any objects that he could use to harm himself and Plaintiff informed Ferrera that he did have something he could use for that purpose. Ferrera questioned Plaintiff more about the item he had, and Plaintiff was placed on suicide watch again. These facts do not indicate deliberate indifference. To the contrary, they show that Defendants Ferrera and Rosenof responded to Plaintiff's complaints by having Plaintiff placed on suicide watch. Based on the facts alleged, Plaintiff cannot state cognizable Eighth Amendment claims against Defendants Ferrera or Rosenof.

### B. First Amendment

In Plaintiff's third and fourth claims, Plaintiff alleges violations of his rights under the First Amendment. In some instances, Plaintiff's allegations suggest retaliation; in others, Plaintiff's allegations suggest a denial of access to the courts. Plaintiff's allegations also suggest interference with Plaintiff's legal mail.

#### 1. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must

establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate which is more than minimal; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

In his fourth claim, Plaintiff contends that Defendant Brunner retaliated against him after he filed this action. According to Plaintiff, on April 18, 2022, Defendant Brunner came to Plaintiff's door without provocation and stated: "I don't give a fuck if you cut your finger off, I don't give a fuck if you cut your head off." Later, on May 24, 2022, a guard approached Plaintiff and told Plaintiff that Brunner asked staff members to lie about the incident that took place on April 18, 2022. On May 25, 2022, Plaintiff submitted a grievance against Brunner for promoting a code of silence and retaliating against Plaintiff. Plaintiff asserts that he submitted the complaint into the facilities lockbox but that the grievance was never processed and was never issued a log number as protocol requires. Plaintiff attempted to file an identical complaint on June 22, 2022, and the grievance was again never processed or issued a log number.

These facts fail to state a retaliation claim against Defendant Brunner. As to the April 18, 2022, incident, the alleged statements by Defendant Brunner do not amount to adverse action which is more than minimal. As to Plaintiff's allegation that Brunner asked staff members to lie about the April 18, 2022, incident and the subsequent disappearance of Plaintiff's grievances, Plaintiff has not alleged that Defendant Brunner was personally involved in a retaliatory interference with the grievance process.

Plaintiff also appears to allege generally in his fourth claim that various inmate grievances he submitted after this lawsuit was filed were not processed in retaliation for Plaintiff pursuing his rights in court. Plaintiff does not, however, link these allegations to specific named defendants. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). Vague and conclusory allegations concerning the involvement of official personnel in civil rights

violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff will be afforded leave to amend as to his newly asserts retaliation claims.

### 2.   Access to the Courts

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege

that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

In Plaintiff's fourth claim, he generally asserts a denial of access to the courts by way of interference with the inmate appeals and grievance process. To the extent Plaintiff intends to pursue this theory, Plaintiff's claims fail because he has not identified an actual injury, such as prejudice with respect to actual or contemplated litigation. In this regard, Plaintiff's allegations of interference with his right of access to the courts in this case are premature in that he clearly has been able to pursue the case and as yet no defendant has asserted the affirmative defense of failure to exhaust remedies through the prison appeal process.

///
///
///
///

16

    3.  <u>Legal Mail</u>

    Prisoners have a First Amendment right to send and receive mail. <u>See</u> <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974); <u>see also</u> <u>Witherow</u>, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. <u>See</u> <u>Ex Parte Hull</u>, 312 U.S. 546, 549 (1941). Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail." <u>See</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1094 (9th Cir. 1996), <u>amended by</u> 135 F.3d 1318 (9th Cir. 1998).

    Here, Plaintiff alleges that he placed various inmate appeals in "legal mail" for delivery to the prison appeals division. There is no allegation that mail to the courts, or to or from counsel, was opened or censored. Rather, Plaintiff appears to claim these mailings were destroyed.

    On the facts alleged, the Court does not see a stand-alone claim based on interference with legal mail. To the extent Plaintiff asserts that interference with the exhaustion process so as to deny him access to the Courts, as discussed above such a claim is not cognizable or premature for lack of an actual injury. While it does not appear that Plaintiff has intended a claim based on interference with legal mail, in the interest of justice the Court will permit Plaintiff leave to amend this newly asserted claim as well.

  **C.**  **Grievance Process**

    Prisoners have no stand-alone due process rights related to the administrative grievance process. <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion.

See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).  Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Plaintiff's fourth claim asserts interference with the inmate grievance and appeals process.  As explained above, such allegations do not support a stand-alone due process claim.  As also explained above, to the extent Plaintiff asserts interference with the grievance process resulting in a violation of his rights under the First Amendment with regard to access to the courts, the claim is either not cognizable or premature.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable Eighth Amendment claims against Defendants Tran, Jao, Areja, Mohammed, Ojagwu, and Sill as alleged in the first and second claims.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Clerk of the Court is directed to terminate the following individuals as defendants: L. Taylor; R. Morashige; Z. Rasool-Vali; N. Pensanti; M. Folorunso; J. Trinidad; M. Sandy; M. Taye; C. Bidad; and B. Housain.

2. The Clerk of the Court is directed to update the docket to reflect the following individuals are named defendants: J. Brunner; E. Martinez; D. Yang; P. Blumenthal; Gena Jones; Purtie; and Singh.

3. Plaintiff may file a second amended complaint within 30 days of the date of this order.

Dated:  May 13, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE